# EXHIBIT A
# PART 1

## RESOLUTION OF THE HOSPITAL AUTHORITY
## OF ALBANY-DOUGHERTY COUNTY, GEORGIA
## AUTHORIZING THE EXECUTION AND DELIVERY OF
## AN AMENDMENT TO LEASE AND TRANSFER AGREEMENT
## BETWEEN THE AUTHORITY AND PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.

WHEREAS, the Hospital Authority of Albany-Dougherty County, Georgia (the "Authority") is engaged in the issuance of new revenue anticipation bonds in connection with certain capital improvement projects being undertaken by Phoebe Putney Memorial Hospital, Inc. (the "Bond Financing"), all as is more particularly described in a separate Resolution of this Board of even date herewith; and

WHEREAS, the parties to that certain Lease and Transfer Agreement, dated as of December 11, 1990 (as same may have been subsequently amended, the "Lease") have determined to amend the Lease in order to accommodate the parameters of the Bond Financing; and

WHEREAS, the Authority has found that so amending the Lease in connection with the Bond Financing will further facilitate the provision of adequate and improved healthcare for the citizens of Albany-Dougherty County, Georgia and surrounding areas, and that it is necessary and appropriate for the Authority to provide for the amendment of the Lease.

NOW THEREFORE, BE IT RESOLVED BY THE HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA, AND IT IS HEREBY SO RESOLVED, AS FOLLOWS:

1. Approval of Amendment to Lease. The execution and delivery of the Amendment to Lease and Transfer Agreement between Hospital Authority of Albany-Dougherty County, Georgia and Phoebe Putney Memorial Hospital, Inc. (the "Amendment"), which Amendment shall be substantially in the form attached hereto as Exhibit "A", subject to such minor changes, insertions, and omissions as may be approved by the Chairman or Vice-Chairman of the Authority, is hereby authorized, and the execution of said Amendment by the Chairman or Vice-Chairman and Secretary or Assistant Secretary of the Authority shall be conclusive evidence of such approval.

2. Incidental Action. The Chairman or Vice-Chairman and Secretary or Assistant Secretary of the Authority are hereby authorized to take any and all further action and to execute and deliver any and all further documents as may be necessary or appropriate to carry out the purposes of the Amendment. Any actions previously taken in this regard by the above-referenced officers are hereby ratified and approved.

Adopted March 13, 2002

HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA

BY: _____ (SEAL)
Its Secretary

{SEAL}

EXHIBIT "A"

## AMENDMENT TO LEASE AND TRANSFER AGREEMENT
### BETWEEN
### HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA
### AND
### PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.

THIS AMENDMENT (this "Amendment") amends the Lease and Transfer Agreement between the HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA (the "Hospital Authority" or "Transferor") and PHOEBE PUTNEY MEMORIAL HOSPITAL, INC. ("PPMH" or "Transferee") dated as of December 11, 1990.

### WITNESSETH:

WHEREAS, the parties hereto have mutually benefited from the provisions of the Lease and Transfer Agreement and therefore mutually desire to extend the length of such Agreement; and

WHEREAS, it is contemplated that the Hospital Authority, during the term of the Lease and Transfer Agreement, will find it necessary or beneficial to borrow funds for the operation of the Existing Facilities (as that term is defined in the Lease and Transfer Agreement), in addition to those borrowings which are referenced in the current definition of "Bonds" set forth in the Lease and Transfer Agreement;

NOW, THEREFORE, in consideration of the premises set forth herein and in the Lease and Transfer Agreement, it is agreed as follows:

1.    Section 10.23 of the Lease and Transfer Agreement entitled Termination is hereby amended to read as follows: "Unless sooner terminated in accordance with the provisions hereof, this Agreement shall terminate on July 31, 2041."

2.    The definition of the term Bonds in Article I of the Lease and Transfer Agreement is hereby amended to read as follows: "Bonds" means, collectively, the $9,775,000.00 Hospital Authority of Albany-Dougherty County, Georgia Refunding

Revenue Anticipation Certificates Series 1990B, the $29,600,000.00 Hospital Authority of Albany-Dougherty County, Georgia Revenue Anticipation Certificates Series 1990C, and any other Revenue Anticipation Certificates which may hereafter be issued by Transferor during the term of this Agreement, pursuant to the Bond Indentures."

3.      The definition of the term Bond Indentures in Article I of the Lease and Transfer Agreement is hereby amended to read as follows:  "Bond Indentures" means that certain Trust Indenture dated as of October 1, 1990 between Transferor and Trust Company Bank, as Trustee, as supplemented by that certain Supplemental Trust Indenture dated as of November 1, 1990 between Transferor and Trust Company Bank, as Trustee, and any other Trust Indentures which may hereafter be executed by Transferor during the term of this Agreement."

4.      All other provisions of the Lease and Transfer Agreement, to the extent not amended herein, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed under seal as of the 14th day of March, 2002.

HOSPITAL AUTHORITY OF ALBANY-
DOUGHERTY COUNTY, GEORGIA

By: _____ (SEAL)
Title: Vice Chairman

Attest: _____

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission expires: July 5, 2004
(NOTARY SEAL)

[Signatures continued on following page]

Exhibit A 3 of 138

PHOEBE PUTNEY MEMORIAL
HOSPITAL, INC.

By: _____ (SEAL)

Title: _Chairman_

Attest: _____

Signed, sealed and delivered
in the presence of:

_____
Notary Public
My Commission expires: July 5, 2004
(NOTARY SEAL)

LEASE AND TRANSFER AGREEMENT

BETWEEN

HOSPITAL AUTHORITY OF ALBANY-
DOUGHERTY COUNTY, GEORGIA

AND

PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.

DATED AS OF DECEMBER 11, 1990

# TABLE OF CONTENTS

Background . . . . . . . . . . . . . . . . . . . . . . . 1

## ARTICLE I

### DEFINITIONS . . . . . . . . . . . . . . . . . . . . 3

## ARTICLE II

### REPRESENTATIONS . . . . . . . . . . . . . . . . . . 10

SECTION 2.01   Representations and Warranties by Transferor . . . . . . . . . . . . . . . . 10

SECTION 2.02   Representations and Warranties by Transferee . . . . . . . . . . . . . . . . 11

## ARTICLE III

### LEASING OF EXISTING FACILITIES; TRANSFER OF OPERATING ASSETS; ASSUMPTION OF LIABILITIES; TERM AND REQUIRED PAYMENTS . . . . 11

SECTION 3.01   Leasing of Existing Facilities; Quiet Enjoyment . . . . . . . . . . . . . . . . 11

SECTION 3.02   Transfer of Operating Assets and Existing Operations . . . . . . . . . . . . . . . 13

SECTION 3.03   Assumption of Liabilities . . . . . . . . 13

SECTION 3.04   Transfer of the Existing Facilities and Existing Operations . . . . . . . . . . . 13

SECTION 3.05   Required Payments . . . . . . . . . . . . 14

SECTION 3.06   Security Interest . . . . . . . . . . . . 15

SECTION 3.07   Absolute Obligation to Pay Required Payments . . . . . . . . . . . . . . . . 15

SECTION 3.08   Bonds and Bond Indentures . . . . . . . . 16

## ARTICLE IV

### COVENANTS OF TRANSFEROR AND TRANSFEREE . . . . . . . . 16

SECTION 4.01   Maintenance of Existing Facilities . . . . 16

SECTION 4.02   Operation of Hospital . . . . . . . . . . 17

SECTION 4.03   Compliance With Applicable Law . . . . . . 19

SECTION 4.04   Liens and Encumbrances . . . . . . . . . . 19

SECTION 4.05   Payments of Other Obligations . . . . . . 20

SECTION 4.06   Transferor's Performance of Transferee's Obligations . . . . . . . . . . . . . . . 21

SECTION 4.07   Improvements . . . . . . . . . . . . . . . 21

SECTION 4.08   Tax-Exempt Status . . . . . . . . . . . . 21

SECTION 4.09   Regulatory Controls . . . . . . . . . . . 21

SECTION 4.10   License and Accreditation . . . . . . . . 22

SECTION 4.11   Medical Staff . . . . . . . . . . . . . . 22

-i-

Exhibit A 6 of 138

SECTION 4.12 Medicare/Medicaid Filings . . . . . . . . 22
SECTION 4.13 Transfer of Employees; Benefits . . . . . 23
SECTION 4.14 Participation and Reimbursement
Agreements . . . . . . . . . . . . . . . . 23
SECTION 4.15 Articles and Bylaws of Transferee . . . 23
SECTION 4.16 Implementation of Parent Holding Company
Structure . . . . . . . . . . . . . . . . 23
SECTION 4.17 Consents and Notices . . . . . . . . . 25
SECTION 4.18 Indigent Care . . . . . . . . . . . . . 25
SECTION 4.19 Permitted Indebtedness . . . . . . . . 25
SECTION 4.20 Financial Books and Records . . . . . . 26
SECTION 4.21 Competition with Hospital . . . . . . . 26
SECTION 4.22 Eminent Domain . . . . . . . . . . . . 26
SECTION 4.23 Existing Certificates of Need . . . . . 26
SECTION 4.24 Name of the Hospital . . . . . . . . . 26

ARTICLE V

IMPROVEMENTS; DISPOSITIONS OF PROPERTY; ALTERATIONS 27

SECTION 5.01 After-Acquired Property as Part of the
Existing Facilities . . . . . . . . . . . 27
SECTION 5.02 Covenant Against Unauthorized
Disposition . . . . . . . . . . . . . . . 27
SECTION 5.03 Dispositions of Property Without Notice . 27
SECTION 5.04 Dispositions of Property With Notice . . 28
SECTION 5.05 Transfers to Affiliates . . . . . . . . 28
SECTION 5.06 Alterations . . . . . . . . . . . . . . 28
SECTION 5.07 Compliance with Bonds . . . . . . . . . 29

ARTICLE VI

INSURANCE 29

SECTION 6.01 Insurance . . . . . . . . . . . . . . . 29
SECTION 6.02 Insurers and Policies . . . . . . . . . 30
SECTION 6.03 Involuntary Loss; Use of Insurance
Proceeds, Condemnation Awards and
Sale Proceeds . . . . . . . . . . . . . . 31
SECTION 6.04 Failure to Carry Insurance . . . . . . . 32

ARTICLE VII

INDEMNIFICATION 32

SECTION 7.01 Indemnification; No Liability; Damage
Claims . . . . . . . . . . . . . . . . . 32
SECTION 7.02 Reimbursement of Costs and Expenses . . 33
SECTION 7.03 Continuation of Liability . . . . . . . 33

-ii-

Exhibit A 7 of 138

ARTICLE VIII

ASSIGNMENTS; SUBLEASES; OPERATING ARRANGEMENTS

| | | 33 |
|---|---|---|
| SECTION 8.01 | Maintenance of Corporate Existence; Permitted Mergers, Consolidations and Sales . . . . . . . . . . . . . | 33 |
| SECTION 8.02 | Subleases and Operating Contracts . . . . | 33 |
| SECTION 8.03 | Prohibition on Other Assignments and Subleases . . . . . . . . . . . . . . | 34 |

ARTICLE IX

DEFAULT BY TRANSFEREE

| | | 34 |
|---|---|---|
| SECTION 9.01 | Events of Default . . . . . . . . . . . . | 34 |
| SECTION 9.02 | Termination . . . . . . . . . . . . . . . | 36 |
| SECTION 9.03 | Repossession Without Termination . . . . | 36 |
| SECTION 9.04 | Damages . . . . . . . . . . . . . . . . . | 37 |
| SECTION 9.05 | Additional Remedies . . . . . . . . . . . | 37 |
| SECTION 9.06 | No Waiver of Rights . . . . . . . . . . . | 37 |
| SECTION 9.07 | Reversion of Assets . . . . . . . . . . . | 38 |

ARTICLE X

MISCELLANEOUS

| | | 38 |
|---|---|---|
| SECTION 10.01 | Captions . . . . . . . . . . . . . . . . | 38 |
| SECTION 10.02 | Covenants Considered Material . . . . . | 38 |
| SECTION 10.03 | Amendment of Agreement . . . . . . . . . | 38 |
| SECTION 10.04 | Georgia Law Controlling . . . . . . . . | 38 |
| SECTION 10.05 | Consents and Approvals . . . . . . . . . | 38 |
| SECTION 10.06 | Multiple Counterparts . . . . . . . . . | 38 |
| SECTION 10.07 | Severability . . . . . . . . . . . . . . | 38 |
| SECTION 10.08 | Transferee's Remedies . . . . . . . . . | 39 |
| SECTION 10.09 | Assignments . . . . . . . . . . . . . . | 39 |
| SECTION 10.10 | Recording . . . . . . . . . . . . . . . | 39 |
| SECTION 10.11 | Notices; Demands; Requests . . . . . . . | 39 |
| SECTION 10.12 | Validity of Pledge . . . . . . . . . . . | 40 |
| SECTION 10.13 | No Personal Liability . . . . . . . . . | 40 |
| SECTION 10.14 | Payments . . . . . . . . . . . . . . . . | 40 |
| SECTION 10.15 | Survival of Covenants, Representations and Warranties . . . . . . . . . . . . . | 40 |
| SECTION 10.16 | Entire Agreement . . . . . . . . . . . . | 41 |
| SECTION 10.17 | Good Faith . . . . . . . . . . . . . . . | 41 |
| SECTION 10.18 | Relationship of Parties . . . . . . . . | 41 |
| SECTION 10.19 | Brokerage Commission . . . . . . . . . . | 41 |
| SECTION 10.20 | Attorneys' Fees and Costs . . . . . . . | 41 |
| SECTION 10.21 | Time is of the Essence . . . . . . . . . | 41 |
| SECTION 10.22 | Specific Performance . . . . . . . . . . | 41 |
| SECTION 10.23 | Termination . . . . . . . . . . . . . . | 42 |

-iii-

ARTICLE XI

CONDITIONS                                          42


SIGNATURES AND ACKNOWLEDGEMENTS                     42

EXHIBITS A-I

Exhibit A 9 of 138

## LEASE AND TRANSFER AGREEMENT

THIS LEASE AND TRANSFER AGREEMENT (this "Agreement") is made as of the 11th day of December, 1990, between the HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA, a public body corporate and politic and an instrumentality of the State of Georgia (herein called "Transferor"), and PHOEBE PUTNEY MEMORIAL HOSPITAL, INC., a nonprofit corporation organized, existing and in good standing under the laws of the State of Georgia (herein called "Transferee").

### Background

Transferor owns and operates Phoebe Putney Memorial Hospital (the "Hospital"), a 450-bed multi-specialty, general medical and surgical hospital located in Albany, Dougherty County, Georgia. In recognition of the rapidly changing health care environment in which it operates, the Transferor retained a consulting firm in 1987 to prepare a management audit of Hospital operations and to make recommendations regarding how best to improve Hospital operations. The management audit report dated August, 1987, identified, among other things, corporate restructuring through a lease of the Hospital to a new nonprofit corporation exempt from taxation under Section 501(c)(3) of the Internal Revenue Code, and the creation of a parent holding company structure, as high priorities for consideration by the Transferor. Although the Transferor did not pursue restructuring in 1987, the subject continued to be discussed and gained increasing importance due to recent developments and opportunities affecting the ability of the Hospital to remain competitive and to enhance its position as the principal regional provider of specialty health care services in Southwest Georgia.

The plan of restructuring adopted by the Transferor provides the Hospital with a new, flexible structure which will remove various restrictions and limitations imposed upon the Transferor and will allow the Hospital to respond to existing competitive threats and to seize available opportunities both within and outside Dougherty County. The immediacy of both the competitive threats and the available opportunities within and outside Dougherty County compelled the Transferor to adopt a plan of restructuring to be implemented in a multi-phased approach, beginning with leasing of the Hospital by the Transferor to a single nonprofit corporation (the Transferee), with a subsequent adoption of a parent holding company structure to provide additional long-term flexibility for further ventures and activities of the Hospital. The Transferor's adoption of such a plan of restructuring has resulted in the preparation of this definitive agreement to implement such plan.

1

The restructuring plan adopted by the Transferor is authorized under Georgia law. Georgia's Hospital Authorities Law (O.C.G.A. §§ 31-7-70 et seq.), as confirmed by the Georgia Supreme Court's decision in Richmond County Hospital Authority v. Richmond County, 255 Ga. 183, 336 S.E.2d 562 (1985), authorizes a corporate restructuring of a hospital authority through a lease and transfer of hospital assets to a new 501(c)(3), nonprofit corporation, and also authorizes the establishment of a parent holding company structure. In addition, at least eleven other Georgia hospitals owned by hospital authorities have restructured during the past seven years in a manner similar to the plan adopted by the Transferor.

The restructuring plan adopted by the Transferor also retains such public control of the Hospital as is contemplated by the Hospital Authorities Law to ensure continued fulfillment of the Hospital's public mission of providing quality health care at a reasonable cost to the residents of Dougherty County. A substantial inducement for Transferor's approval of the plan of restructuring, implementation of the restructuring of the Hospital and the execution of this Agreement is the promise of Transferee, on behalf of itself and any future affiliated entities including the contemplated parent corporation, that upon the expiration or earlier termination of this Agreement, all assets of Transferee and its parent affiliate, including the assets of their respective affiliates, shall be distributed to Transferor and become Transferor's property absolutely, and Transferee and its parent affiliate and other affiliates shall thereafter be dissolved.

## N O W, W I T N E S S E T H:

WHEREAS, Transferor has determined that this Agreement will promote the public health needs of the community, by making additional facilities available in the community and by lowering the cost of health care in the community, and that this Agreement retains sufficient control by the Transferor over the Hospital as is contemplated by the "Act" (as hereinafter defined);

WHEREAS, Transferor believes that continuation of the high quality and level of health care services currently rendered at the Hospital can best be accomplished by transferring all of the operations, assets and liabilities of the Hospital to a nonprofit corporation;

WHEREAS, to accomplish this end, Transferor wishes to lease the assets of the Hospital, and to transfer all of the operations and liabilities of the Hospital, to Transferee, and Transferee wishes to assume all of the operations, assets and liabilities of

2

the Hospital, all on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises, covenants and agreements set forth herein, the parties hereto agree as follows:

## ARTICLE I

### DEFINITIONS

The following words, terms or phrases, when used in this Agreement, shall have the following meanings unless the context indicates a different meaning:

"**Act**" means the Georgia Hospital Authorities Act (O.C.G.A. §§ 31-7-70 et seq.) as amended.

"**Affiliate**" means a corporation, limited or general partnership, joint venture, association, business trust or similar entity organized under the laws of the State of Georgia or authorized to conduct affairs in the State of Georgia: (a) which controls, or which is controlled, directly or indirectly, by, Transferee; or (b) a majority of the members of the Directing Body of which are also members or directors of the Board of Directors of the Transferee and constitute a majority of the members or directors of the Board of Directors of the Transferee. For the purposes of this definition, control means with respect to: (a) a nonprofit corporation not having stock, the power to elect or appoint, directly or indirectly, a majority of the Directing Body of such corporation; (b) a corporation having stock, the ownership, directly or indirectly, of more than 50% of the securities (as defined in Section 2(1) of the Securities Act of 1933, as amended) of any class or classes, the holders of which are ordinarily, in the absence of contingencies, entitled to elect a majority of the directors of such corporation; (c) a general or limited partnership, the ownership of a majority of the general partners' interest in the partnership; or (d) any other entity, the power to direct the management of such entity through the ownership of at least a majority of its voting securities or the right to designate or elect at least a majority of the members of its Directing Body, by contract or otherwise. For the purposes of this definition, "**Directing Body**" means: (a) with respect to a nonprofit corporation not having stock, such corporation's members if the members have complete discretion to elect the corporation's directors, or the corporation's directors if the corporation's members do not have such discretion; (b) with respect to a corporation having stock, such corporation's board of directors and the owners, directly or indirectly, of more than 50% of the securities (as defined in Section 2(1) of the Securities Act of 1933, as amended) of any class or classes, the holders of which

3

are ordinarily, in the absence of contingencies, entitled to elect a majority of the corporation's directors (both of which groups shall be considered a Directing Body); (c) with respect to a general or limited partnership, the holders of a majority of the general partners' interest in the partnership; and (d) with respect to any other entity, its governing board or body. For the purposes of this definition, all references to directors and members shall be deemed to include all entities performing the function of directors or members however denominated.

"Agreement" means this Lease and Transfer Agreement as from time to time amended or supplemented pursuant hereto.

"Assigned Contracts" means all agreements of Transferor assigned pursuant to this Agreement.

"Assumed Liabilities" means all of the liabilities and obligations of Transferor which were incurred or arose in connection with the Existing Operations, whether known or unknown, contingent or otherwise, including, without limitation, all obligations and liabilities of Transferor in connection with the Bonds, all obligations and liabilities of Transferor under the Assigned Contracts, and all obligations of Transferor to the Medicare and Medicaid programs.

"Bonds" means, collectively, the $9,775,000 Hospital Authority of Albany-Dougherty County, Georgia Refunding Revenue Anticipation Certificates Series 1990A, the $20,225,000 Hospital Authority of Albany-Dougherty County, Georgia Revenue Anticipation Certificates Series 1990B, and the $29,600,000 Hospital Authority of Albany-Dougherty County, Georgia Revenue Anticipation Certificates Series 1990C, issued by Transferor pursuant to the Bond Indentures.

"Bond Indentures" means that certain Trust Indenture dated as of October 1, 1990 between Transferor and Trust Company Bank, as Trustee, as supplemented by that certain Supplemental Trust Indenture dated as of November 1, 1990 between Transferor and Trust Company Bank, as Trustee.

"Book Value" means with respect to any Property the value thereof calculated on the basis of the book value of such assets shown on the asset side of the balance sheet in the financial statements for Transferee for the most recent Fiscal Year for which financial statements have been reported on by an Independent Accountant.

"Code" means the Internal Revenue Code of 1986, as amended, and all applicable existing and proposed regulations that may from time to time be issued thereunder.

"Commencement Date" shall have the meaning set forth in Section 3.01(c) hereof.

4

"Employees" means all of the employees of the Transferor employed in connection with Existing Operations on the Commencement Date hereof.

"Entity" means a corporation, general or limited partnership, joint venture, association, trust, person or other legal entity.

"Equipment" means all equipment, machinery and furniture owned by Transferor and used in connection with the Existing Operations as of the Commencement Date and all equipment, machinery and furniture acquired and installed in replacement thereof or in substitution therefor and further shall mean all tangible personal property which is owned by Transferor and leased to Transferee which is not included in the definition of Real Property.

"Existing Facilities" means the Hospital, the Real Property, the Equipment, and all Improvements which are leased by Transferor to Transferee hereunder.

"Existing Operations" means all of the hospital, health care, administrative and related activities conducted as of the Commencement Date hereof or in the past by Transferor in the ordinary course of owning and operating the Existing Facilities. Upon the transfer of the Existing Operations to Transferee pursuant to Section 3.02 hereof, the term "Existing Operations" shall mean all of the hospital, health care, administrative and related activities conducted by Transferee in the ordinary course of owning and operating the Existing Facilities.

"Financial Statements" means the audited financial statements of the Transferor as of July 31, 1990.

"Fiscal Year" means the fiscal year of Transferee which shall be August 1 of each year through July 31 of the following year, unless changed by Transferee.

"Hospital" means the facility and institution presently known as Phoebe Putney Memorial Hospital located in Albany, Dougherty County, Georgia and all licenses, permits and approvals, including certificate of need approvals, necessary or desirable for the use and operation thereof.

"Improvements" means any and all buildings, structures, improvements, furnishings, machinery, equipment and other personal property which shall be constructed, placed or installed in or upon the Real Property as a substitution for or in renewal or replacement of any buildings, structures, improvements, furnishings, machinery, equipment or other personal property constituting part of the Hospital, and any other additions, alterations and improvements to the Hospital placed or installed in or upon the Real Property.

5

"Independent Accountant" means a firm of regionally or nationally recognized, independent certified public accountants selected by Transferee.

"Insurance Consultant" means a person who is not a member of the Board of Directors of Transferee, an officer or employee of Transferor or an officer or employee of Transferee, or which is not a partnership, corporation or association having a partner, director, officer, member or substantial stockholder who is a member of the Board of Directors of Transferee, an officer or employee of Transferor or an officer or employee of Transferee, appointed by Transferee, qualified to survey, issue and to recommend insurance coverage for hospital facilities and services and organizations engaged in like operations having a favorable reputation for skill and experience in such surveys and such recommendations, and who may be a broker or agent with whom Transferee or Transferor transacts business.

"JCAHO" means the Joint Commission on Accreditation of Healthcare Organizations.

"Management Consultant" means a nationally recognized firm of independent professional management consultants knowledgeable in the operation of hospitals, which may include a firm of Independent Accountants.

"Operating Assets" means all assets which are owned by Transferor in connection with the operations of the Existing Facilities (including, without limitation, all assets reflected in the Financial Statements, with such changes as may have occurred after the date of the Financial Statements in the ordinary course of business) excluding the Existing Facilities, but including, without limitation:

    (a) all cash, bank accounts, savings and loan accounts, certificates of deposit, money market accounts, treasury bills, other investments and revenues (including amounts held in any insurance trust) owned by Transferor in connection with the Existing Facilities;

    (b) all accounts receivable and all other amounts owed to Transferor in connection with the Existing Facilities;

    (c) all oral and written agreements of Transferor excepting only those listed in Exhibit "A" hereto (the "Assigned Contracts") entered into in connection with the Hospital (the "Assigned Contracts");

    (d) all books, records and other information collected and maintained in connection with the Existing Facilities

6

including, without limitation, patient records and employee records;

(e) all judgments, choses in action and intangibles owned by Transferor and related to the Existing Facilities;

(f) the name "Phoebe Putney Memorial Hospital";

(g) all funded depreciation, board designated or board restricted assets and other similar reserves; and

(h) all assets not listed above and not otherwise classified as Existing Facilities.

Upon the transfer of the Operating Assets to Transferee pursuant to Section 3.02 hereof, the term "Operating Assets" shall mean all Operating Assets received by Transferee plus all accumulations and additions thereto, and less all deletions and deductions therefrom, as may have occurred in the ordinary course of business of Transferee or as otherwise may have been permitted by the terms of this Agreement.

"Operating Year" means the initial partial year (i) commencing on the Commencement Date hereof and (ii) ending on the last day of the Transferee's Fiscal Year during which the Commencement Date occurred; and thereafter "Operating Year" shall consist of a successive period of twelve calendar months.

"Permitted Encumbrances" means the Bond Indentures, this Agreement and, as of any particular time,

(a) liens for taxes and special assessments, if any, which are not then delinquent, or if then delinquent are being contested in accordance with the provisions of this Agreement;

(b) utility, access and other easements and rights-of-way, restrictions and exceptions which will not materially interfere with or materially impair the operation of the Hospital or facilities thereof (or, if they are not being then operated, the operation for which they were designed or last modified);

(c) any mechanic's, laborer's, materialman's, supplier's or vendor's lien or right in respect thereof, if any, if payment is not yet due under the contract in question or if such lien is being contested in accordance with the provisions of this Agreement;

(d) such minor defects and irregularities of title as normally exist with respect to properties similar in character to the land and which do not materially and adversely affect the value of the Hospital or materially impair the property

7

affected thereby for the purpose for which it was acquired or is held by Transferee;

(e) leases to other than Affiliates which relate to portions of the Hospital which are customarily the subject of such leases, such as office space for physicians and educational institutions, food service facilities, gift shops and radiology, pharmacy and similar departments to the extent that such leases will not adversely affect the exemption from federal income taxation of the Bonds, and to the extent the same are permitted by Article V hereof or Section 8.02 hereof;

(f) zoning laws and similar restrictions which are not violated by Transferee or which do not materially and adversely affect the value of the Hospital;

(g) statutory rights under Section 291, Title 42 of the United States Code, as a result of what are commonly known as Hill-Burton grants, and similar rights under other federal and state statutes;

(h) all right, title and interest of the State, municipalities and the public in and to access over, under or upon a public way;

(i) any instrument creating or securing Permitted Indebtedness;

(j) liens on and security interests in Property which secure Permitted Indebtedness to the extent permitted by this Agreement;

(k) interests, including leasehold and ownership interest, of any Affiliate in Property leased or transferred to such Affiliate in accordance with the provisions of Section 5.05 hereof;

(l) liens on and security interests in Property including those existing on such Property at the time o acquisition thereof (including acquisition by gift, beques or devise) by Transferee, which (i) either existed at the tim of the acquisition of such property or which secure Permitte Indebtedness assumed or incurred by Transferee in connecti with the acquisition of such Property, (ii) do not extend any Property of Transferor other than that so acquired, a (iii) at the time the indebtedness secured thereby is or w issued or incurred by Transferee or in the case of Proper acquired subject to an existing lien or security interest the time of such acquisition, the aggregate amount remain unpaid on the indebtedness secured thereby (whether or assumed by Transferee) shall not exceed the lesser of

8

acquisition price or the fair market value of the property as determined in good faith by Transferee;

(m)  liens on and security interests in Property given, bequeathed or devised to Transferee existing at the time of such gift, bequest or devise, provided that (i) such liens or security interests attach solely to the Property which is the subject of such gift, bequest or devise, and (ii) the indebtedness incurred by such liens or security interests is not assumed by Transferee or, if assumed, is assumed on a nonrecourse basis;

(n)  leases of Property entered into by Transferee in order to obtain the use of such Property and which constitute Permitted Indebtedness; and

(o)  restrictions or other encumbrances which are either insured over by a reputable, solvent title insurance company which has been writing title insurance in Dougherty County, Georgia for at least five (5) years or which relate to properties which are not contiguous to the property on which the Hospital is situated and the loss of which would have no material adverse impact on the operations of the Hospital.

"Permitted Indebtedness" means the indebtedness or obligations of Transferee permitted under Section 4.19 hereof.

"Pledged Revenues" means accounts receivable, contract rights and general intangibles, and all proceeds of all of the foregoing whether cash or noncash, now existing or hereafter coming into being or now owned or hereafter acquired, of Transferee, excluding, however, (i) all right to receive any gifts, grants, bequests, devises, donations, contributions or pledges and earnings thereon, received or to be received and restricted as to use by the terms of such gift, grant, bequest, devise, donation, contribution or pledge in any way which would prevent its application to the Required Payments required hereunder, and (ii) the proceeds of any borrowing.

"Property" means any and all rights, title and interest in and to any and all property whether real or personal, tangible or intangible and wherever situated.

"Property, Plant and Equipment" means all Property of Transferee which is classified as property, plant and equipment under generally accepted accounting principles.

"Real Property" means the real property more particularly described in Exhibit "B" hereto including all buildings, fixtures, improvements, mechanical systems, drawings or parking areas located thereon and all rights, easements and appurtenances thereto.

9

"<u>Required Payments</u>" means any and all of the payments required to be made pursuant to Sections 3.05(a)(i) and 3.05(a)(ii) hereof.

"<u>State</u>" means the State of Georgia.

"<u>Term of this Agreement</u>" or the "<u>term hereof</u>" means the period commencing on the Commencement Date and ending on the last day of the 40th Operating Year hereunder, unless sooner terminated pursuant to the provisions hereof or unless extended pursuant to the provisions hereof.

"<u>Trustee</u>" means the Trustee serving from time to time under the Bond Indentures.

## ARTICLE II

## REPRESENTATIONS

SECTION 2.01.  <u>Representations and Warranties by Transferor</u>. Transferor makes the following representations and warranties to Transferee as the basis for the undertakings on Transferee's part herein contained:

(a)  Transferor is a public body corporate and politic and an instrumentality of the State of Georgia, duly organized, validly existing and in good standing under the laws of the State of Georgia;

(b)  Transferor has good and sufficient fee simple title for purposes of this Agreement in and to the Real Property, and good and valid title in and to the Equipment and the Operating Assets, free and clear of any lien, claim, encumbrance or security interest therein, except for those listed in <u>Exhibit "C"</u> attached hereto.

(c)  Transferor has full power and authority to enter into this Agreement, to carry out the transactions contemplated hereunder, and to carry out its obligations hereunder;

(d)  Transferor has duly authorized the execution, delivery and performance of this Agreement; and

(e)  Transferor is not subject to any claim or restriction or subject to any provision of any nature whatsoever contained in Transferor's enabling legislation, charter, ordinances or bylaws or in any evidence of indebtedness, indenture, commitment, agreement or contract to which Transferor is a party or by which it is bound, or subject to any existing judgment, order or decree binding upon Transferor, which in any way prevents Transferor from entering

10

into this Agreement or performing any of its obligations hereunder.

SECTION 2.02. <u>Representations and Warranties by Transferee</u>. Transferee makes the following representations and warranties to Transferor as of the date of delivery hereof:

(a) Transferee is a nonprofit corporation duly incorporated, validly existing and in good standing under the laws of the State of Georgia;

(b) Transferee has full power and authority to enter into this Agreement, to carry out the transactions contemplated hereunder and to carry out its obligations hereunder;

(c) Transferee is duly authorized to execute, deliver and perform this Agreement;

(d) Transferee is, as of the Commencement Date, an organization described in Section 501(c)(3) of the Code exempt from federal income tax under Section 501(a) of the Code and not a private foundation as defined in Section 509(a) of the Code; and

(e) Transferee is not subject to any limitation, restriction or provision of any nature whatsoever contained in Transferee's articles of incorporation or bylaws or in any evidence of indebtedness, indenture, commitment, agreement or contract to which Transferee is a party or by which it is bound, or subject to any existing judgment, order or decree binding upon Transferee, which in any way limits, restricts or prevents Transferee from entering into this Agreement or performing any of its obligations hereunder.

## ARTICLE III

## LEASING OF EXISTING FACILITIES: TRANSFER OF OPERATING ASSETS: ASSUMPTION OF LIABILITIES: TERM AND REQUIRED PAYMENTS

SECTION 3.01. <u>Leasing of Existing Facilities: Quiet Enjoyment</u>.

(a) Transferor, for and in consideration of the payment by Transferee of the Required Payments pursuant to Section 3.05 hereof and the performance by Transferee of the covenants and agreements set forth herein, leases the Existing Facilities to Transferee effective as of the Commencement Date, and Transferee effective as of the Commencement Date takes and accepts the Existing Facilities from Transferor, subject to the terms, covenants, conditions and provisions hereinafter stated and the following limitations

11

restrictions, reservations and encumbrances, to have and to hold for the term hereof. To the extent permitted under the Act, the term hereof may be extended by mutual agreement of Transferor and Transferee and may be extended by Transferor and Transferee to be co-extensive with the term of any outstanding bonds issued by Transferor. By issuing any bonds after the date hereof, however, Transferor is not obligating itself to agree to any extension of the term hereof.

(b)  Effective as of the Commencement Date, Transferor grants to Transferee the right to lease and operate the Existing Facilities, and agrees that so long as Transferee shall pay the Required Payments as provided herein and shall duly observe and perform all the terms, covenants, conditions, provisions, stipulations and agreements of this Agreement obligatory upon Transferee and shall operate the Existing Facilities consistent with all obligations currently existing under the Act which are applicable to the Existing Facilities, then Transferee shall have, hold and enjoy, during the term hereof, peaceful, quiet and undisputed possession of the Existing Facilities, without hinderance or molestation by anyone claiming by or through Transferor, subject, however, to the provisions of this Agreement, and Transferor shall from time to time take all necessary or appropriate action to that end.

(c)  For purposes of this Agreement, the term "Commencement Date" shall mean the day on which the "Commencement Certificate" (as defined herein) is delivered by the Transferee to the Transferor after the following have been received: (i) a written determination from the Internal Revenue Service recognizing Transferee as a charitable organization within the meaning of Section 501(c)(3) of the Code; (ii) a final written approval from Georgia's State Health Planning Agency ("SHPA") granting certificate of need approval to the leasing and restructuring of the Hospital pursuant to this Agreement; and (iii) all opinions, reports and approvals required by the Bond Indentures in order to affect the leasing and restructuring of the Hospital pursuant to this Agreement.

Transferor and Transferee shall diligently pursue the completion of items (i) through (iii) above and, if required to satisfy such conditions, shall modify this Lease in any reasonable manner. When the events described in items (i) through (iii) above shall have occurred, Transferee shall deliver a certificate to Transferor certifying as to the same (the "Commencement Certificate"). Transferee shall deliver the Commencement Certificate to the Transferor no later than the first day of the month immediately following the date of receipt of all items (i) through (iii) above.

12

SECTION 3.02.   Transfer of Operating Assets and Existing Operations.   Transferor, for and in consideration of the assumption by Transferee of the Assumed Liabilities pursuant to Section 3.03 hereof and the performance by Transferee of its other agreements hereunder, and effective as of the Commencement Date, assigns, transfers and conveys to Transferee all of Transferor's right, title and interest in and to the Operating Assets and Existing Operations.  Transferee during the term hereof shall use the Operating Assets and Existing Operations so transferred to it in the operation of the Existing Facilities and in furtherance of Transferee's purposes as set forth in its Articles of Incorporation and as otherwise permitted by this Agreement.  At the expiration or earlier termination of the term hereof, (a) Transferee shall assign and return to Transferor all of the Operating Assets and Existing Operations and (b) Transferor, to the extent allowed by law, shall assume in writing all the then current liabilities of Transferee and all other liabilities of Transferee incurred in the ordinary course of business; provided, that such liabilities shall constitute Permitted Indebtedness hereunder and provided further that such obligation of Transferor shall be payable only from the revenues of the Existing Facilities.  Transferee guarantees that it shall return to Transferor at the expiration or earlier termination of the term hereof an amount of total assets (determined in accordance with then generally accepted accounting principles) which when netted against the amount of total liabilities (determined in accordance with generally accepted accounting principles) assumed by Transferor pursuant to (b) above shall be at least equal to the amount of total assets (determined in accordance with generally accepted accounting principles) transferred to Transferee hereunder less the amount of total liabilities (determined in accordance with generally accepted accounting principles) assumed by Transferee hereunder.  In the event Transferor cannot at the expiration or earlier termination of the term hereof legally assume any liability of Transferee, Transferee shall cause such liability to be discharged.  In the event Transferee is required by Transferor to satisfy a liability that Transferor cannot legally assume, Transferee may utilize the Operating Assets to obtain sufficient funds to discharge any such liability, and Transferee shall then transfer and assign to Transferor the remaining Operating Assets net of the funds required to satisfy any such liability.

SECTION 3.03.   Assumption of Liabilities.  Effective as of the Commencement Date, Transferee assumes, and agrees to perform and discharge, all of the Assumed Liabilities as of the Commencement Date.

SECTION 3.04.   Transfer of the Existing Facilities and Existing Operations.  The parties hereby agree and acknowledge that the purpose of this Agreement and other instruments contemplated hereby is to effect, as of the Commencement Date, pursuant and subject to the terms hereof, the transfer of control over all of

13

the Existing Facilities, the Existing Operations and the Operating Assets to Transferee and that the consideration therefor shall consist of the Required Payments made by Transferee pursuant to Section 3.05 hereof, the operation of the Hospital, the assumption or payment by Transferee of the Assumed Liabilities, and the performance of all other agreements and actions required of Transferee under this Agreement.

SECTION 3.05.  Required Payments.

(a)  In consideration of the leasing of the Existing Facilities to Transferee hereunder, effective as of the Commencement Date, Transferee agrees as follows:

(i)  Transferee shall pay Transferor the amount of $1.00 per year hereunder, which amount shall be payable on the Commencement Date and on the first day of each Operating Year thereafter; and

(ii)  On the date that each payment of principal of, premium, if any, and interest on the Bonds shall be due until all the principal of, premium, if any, and interest on the Bonds shall have been paid in full, Transferee shall pay to the Trustee as a Required Payment hereunder an amount of money equal to the amount payable on the payment date as principal of (whether at stated maturity or by redemption or otherwise), premium, if any, and the interest on the Bonds as provided in the Bond Indentures.  Transferee shall also pay to the Trustee until the principal of, premium, if any, and interest on the Bonds shall have been paid in full an amount equal to all fees and expenses of the Trustee as and when the same shall become due pursuant to the terms of the Bond Indentures.

The foregoing payments shall be in addition to Transferee's obligations to pay or discharge the Assumed Liabilities as specified in Section 3.03 hereof and all liabilities incurred by the Transferee in connection with the Existing Facilities after the Commencement Date and during the term hereof.

(b)  In the event Transferee shall fail to make any Required Payment under Section 3.05(a)(ii) above when due, then in addition to any other remedies provided in Article IX, Transferor shall have the right (but not the obligation) to make such payment and to otherwise cure any default under the Bond Indentures caused by such failure by Transferee timely to make such Required Payment, and if Transferor does so elect to cure such failure, then the amounts paid by Transferor to effect such cure shall constitute a debt due from Transferee to Transferor, which debt shall be due on demand and which shall bear interest from the date so advanced by Transferor until repaid by Transferee at the rate equal to the publicly announced "prime" or "base" (or equivalent) lending rate

14