# Exhibit A
# Part 2

of the Trustee (or its successor), which rate shall be adjusted as and when adjusted by said Trustee.

SECTION 3.06.  Security Interest.

(a)  To secure the prompt payment of the Required Payments and to secure the performance by Transferee of its other obligations hereunder, Transferee, effective as of the Commencement Date, pledges to Transferor and grants to Transferor a security interest in Transferee's Pledged Revenues and in all equipment, machinery and furniture owned by Transferor and used in connection with the Existing Operations and all equipment, machinery and furniture acquired and installed in replacement therefor or in substitution therefor; provided, however, that such pledge and grant of security interest with respect to Pledged Revenues shall be subject and subordinate to Transferee's grant of a security interest in and pledge of the "Gross Revenues," as defined in the Bond Indentures, to Transferor in its capacity as issuer of the Bonds, which pledge and security interest have been assigned to the Trustee under the Bond Indentures.  This grant of a security interest shall remain in full force and effect until all payments required by this Agreement have been made.

(b)  Transferee (as Debtor) and Transferor (as Secured Party) will each execute a Form UCC-1 Financing Statement to be recorded in the public records of Dougherty County, Georgia designating as the "Collateral" the Pledged Revenues and all equipment, machinery and furniture owned by Transferor and used in connection with the Existing Operations and all equipment, machinery and furniture acquired and installed in replacement therefor in substitution therefor.  Transferee will cause the Form UCC-1 Financing Statement prepared for recording in the public records, as provided in this paragraph, to be recorded in the public records of Dougherty County, Georgia.  Transferor and Transferee hereby agree that they shall make, execute and record or file such continuation statements as may be necessary or advisable in order to perfect, preserve and maintain Transferor's title to, lien upon and security interest in the properties, right and interests referred to in this Section.  Transferee shall be responsible for notifying Transferor as to the need to make, execute and record or file any of the foregoing.  Transferor shall, from time to time, at the request of Transferee, execute such releases as may be necessary to permit the Transferee to dispose of Property in accordance with Article V hereof.  Transferor's consent to a release of its security interest shall not be required except and to the same extent as required for a disposition of property pursuant to Article V.

SECTION 3.07.  Absolute Obligation to Pay Required Payments. The obligation of Transferee to make the Required Payments in accordance with Section 3.05 hereof shall be a general obligation of Transferee, shall be absolute and unconditional and shall not be abated, rebated, set off, reduced, abrogated, waived, diminished

15

or otherwise modified in any manner or to any extent whatsoever, regardless of any rights of set off, recoupment or counterclaim that Transferee might otherwise have against Transferor. Failure to receive any prior notice of the due date of any Required Payment will not relieve Transferee of its obligation to pay such installment thereof, without notice or demand therefor, in such coin or currency of the United States of America as, at the time of payment, shall be legal tender for the payment of public and private debts.

SECTION 3.08. <u>Bonds and Bond Indentures</u>. For as long as any Bonds are outstanding, each party hereto covenants with each other party that it shall comply at all times with the term of the Bonds, the Bond Indentures, and the documents related thereto that are applicable to it.

## ARTICLE IV

## COVENANTS OF TRANSFEROR AND TRANSFEREE

The following covenants contained in this Article IV shall be effective from and after the Commencement Date.

SECTION 4.01. <u>Maintenance of Existing Facilities</u>. Transferee shall, at its sole cost and expense, at all times during the term of this Agreement, keep and maintain the Existing Facilities and all Improvements, both inside and outside, structural and nonstructural, in a good state of repair and preservation, ordinary wear and tear and acts of God excepted, and Transferee shall make all repairs and replacements that may be necessary to maintain the Existing Facilities and all Improvements (including without limitation all electrical, plumbing, HVAC systems and equipment and such equipment as shall be reasonably required to meet JCAHO or comparable accreditation standards and to comply in all material respects with all applicable codes) in such state of repair. Transferee covenants that it will not permit, commit or suffer any waste of the whole or any part of the Existing Facilities and the Improvements and shall not use or permit the use of the Existing Facilities, or any part thereof, for any unlawful purpose or permit any nuisance to exist thereon. Transferee covenants and agrees that it shall provide at its own cost and expense, to the extent not financed with proceeds of the Bonds, current and modern equipment as generally used in accredited, comparable community hospitals, and shall provide all equipment, machinery, furnishings, supplies and other personal property required or necessary for the proper operation, repair and maintenance of the Hospital, consistent with standards of hospital organization and administration generally acceptable for fully accredited hospitals comparable to the Existing Facilities.

16

SECTION 4.02.   Operation of Hospital.   Transferee will faithfully and efficiently administer, maintain and operate the Hospital as a charitable facility open to the general public, free of discrimination based upon race, color, religion, creed, national origin or sex and will use, maintain and operate the Hospital on a revenue-producing basis, consistent with Transferee's obligations under this Agreement.   Transferee further covenants and agrees that:

(a)  it will at all times use its best efforts to maintain and operate the Hospital to meet the standards and requirements and provide health care of such quality and in such manner as shall enable the Hospital to participate in, and provide services in connection with, recognized medical insurance programs, and Transferee agrees that, so long as it shall remain a participating facility under such recognized programs, it will use its best efforts to comply with the standards and requirements for remaining a participating medical facility thereunder, unless Transferee shall determine, by resolution adopted by its Board of Directors, that it is not in the best interest of Transferee to comply therewith and that the financial condition of the Transferee will not be adversely and materially affected by noncompliance;

(b)  it will comply with applicable federal and state laws prohibiting discrimination based on race, religion, creed, color, sex or national origin;

(c)  it will use the Existing Facilities only in further-ance of the lawful purposes of Transferee;

(d)  it will not use the Existing Facilities or any part thereof for sectarian instruction nor will it use the Existing Facilities as a place of religious worship or as a facility used as a part of a program of a school or department of divinity for any religious denomination or the religious training of ministers, priests, rabbis or other similar persons in the field of religion; provided, however, that the foregoing restrictions shall not be construed to prevent Transferee from (i) maintaining a chapel for the use of patients, employees and visitors as part of the Existing Facilities, (ii) conducting medical education programs on any subject with one or more institutions, whether or not sectarian, or seminars or meetings explaining the operating policies of Transferee with regard to abortions or other medical or surgical services or (iii) maintaining pastoral care programs of the kind provided by hospitals generally;

(e)  it will not use the Existing Facilities or suffer or permit the Existing Facilities to be used by any person or in any manner which would result in the loss of tax exemption

17

of interest on the Bonds otherwise afforded under the Code and, further, it will not permit any of the proceeds of the Bonds to be used, directly or indirectly, in any manner which would result in the Bonds being classified as "arbitrage bonds" within the meaning of Section 148 of the Code;

(f) it will not be in material violation of any laws, ordinances, governmental rules or regulations to which it is subject and will not fail to obtain any licenses, permits, franchises or other governmental authorizations necessary to the ownership of the Existing Facilities or the conduct of its activities, which violation or failure to obtain might materially adversely affect the Hospital or the condition (financial or otherwise) of Transferee;

(g) no person in need of immediate or emergency medical treatment shall be denied admission because of inability to pay for services, charge or costs for which such person would ordinarily be responsible, provided, however admission may be denied when medical treatment is of a nature requiring services not offered at the Hospital; and

(h) it will continue to provide indigent care in accordance with all requirements of law and will irrevocably provide indigent care substantially in accordance with the present indigent care practices of the Hospital and at not less than the level provided when the leasehold interest of Transferor first took effect, provided that its services are funded by a substantial amount when compared to historic levels of prior payment in relationship to cost of services rendered pursuant to an indigent health care agreement, or like arrangement, between Transferor and Dougherty County, Georgia. (The existing Indigent Care Agreement between Transferor and Dougherty County, Georgia is attached hereto as Exhibit "D".) Transferor hereby assigns to Transferee all of Transferor's right, title and interest in and to any funds Transferor receives from Dougherty County, Georgia pursuant to such existing Indigent Care Agreement or any subsequent similar agreement or arrangement with Dougherty County Georgia. During the term of this Agreement, Transferor an Transferee agree to uphold and honor all of Transferor' covenants, agreements and obligations set forth in th Indigent Care Agreement attached hereto as Exhibit "D" and any subsequent similar agreement or arrangement with Dougher County, Georgia.

So long as Transferee is not in default under this Agreemer Transferee shall have sole and exclusive charge of the operati of the Hospital including, but not limited to, the selection retention of any or all employees or personnel of Transferee.

18

Transferee shall employ the Operating Assets in accordance with reasonably prudent practices in the health care field.

SECTION 4.03. Compliance With Applicable Law.

(a)  Transferee shall not use or occupy, nor permit any use or occupancy of, the Hospital or any part thereof contrary to any material applicable law, ordinance or governmental regulation now or hereinafter in force.  Transferee covenants and agrees that throughout the term of this Agreement, at its sole cost and expense, it shall promptly comply with all such material applicable laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments, and appropriate departments, commissions, boards and offices thereof, whether or not requiring structural repairs or alterations to the Hospital or relating to the use or occupancy or manner of use of the Hospital. Transferee shall also observe and comply with in all material respects the requirements respecting the Hospital of all policies of insurance or programs of self insurance at any time in force with respect to any of the buildings, improvements, machinery or equipment constituting a part of the Hospital.  Transferee will not use or occupy the Hospital or permit its use or occupancy in such manner as may be reasonably be deemed to prejudice Transferor's title to or interest in the Hospital, or any portion thereof, or as may provide a basis for claims of adverse use or possession by the public or implied dedication to public use of any part of the Hospital or as may in any way impair the efficient operation, use or control of the Hospital.

(b)  Transferee shall operate the Existing Facilities in a manner which will not contravene the intent of the Act, and Transferee will fix rates and charges for services by the Hospital and the Existing Facilities in accordance with the intent of and the policy established by the Act.  Subject to compliance with this subsection 4.03(b), Transferee shall have total control over the establishment of all rates and charges for services by the Hospital and the Existing Facilities.

(c)  Nothing in this Section 4.03 shall require Transferee to comply with any law, ordinance or governmental regulation so long as there is a substantial and legitimate question as to its applicability to Transferee or so long as the interpretation or validity of such law, ordinance or governmental regulation shall be contested in good faith and by appropriate legal proceedings, including securing any necessary injunctive relief which will stay enforcement of such law, ordinance or governmental regulation.

SECTION 4.04. Liens and Encumbrances.  Except for Permitted Encumbrances or as set forth in Section 3.06 of this Agreement, Transferee covenants and agrees that it shall not create or suffer to be created any lien, encumbrance or charge upon the Hospital, the Operating Assets or the Pledged Revenues and that it will

19

satisfy or cause to be discharged or structure a settlement with respect to, or shall make adequate provision to satisfy and discharge, within sixty (60) days after the same shall be due, all lawful claims and demands for labor, materials, supplies or other items. Nothing in this Section shall require Transferee to satisfy or discharge any such charge, claim or demand so long as the validity thereof shall be contested in good faith and by appropriate legal proceedings if the Transferee shall have posted a bond or other security to avoid any such risk to Transferor's interest in the Hospital, the Operating Assets or the Pledged Revenues.

SECTION 4.05. <u>Payments of Other Obligations</u>.

(a) Transferee covenants and agrees to pay when due the Required Payments and all assessments, levies, taxes (ordinary or extraordinary, special or general) and insurance premiums and self insurance payments, of every kind and nature relating to the whole or any part of the Existing Facilities or this Agreement, or any interest therein and all sales, use or excise taxes, if any, levied upon the Required Payments and other payments due under this Agreement, and all costs, expenses, liabilities and charges of every kind and nature, including charges for gas, electricity, water, sewer and other utilities, relating to the maintenance, repair, replacement and improvement, if undertaken hereunder by Transferee, of the Hospital, or any part thereof, or the facilities, machinery or equipment thereon or in connection therewith which may arise or accrue during the term of this Agreement; provided, however, that with respect to special assessments or other governmental charges that may lawfully be paid in installments over a period of years, Transferee shall be obligated to pay only such installments as are required to be paid during the term of this Agreement.

(b) Transferee shall not be required to pay any tax, charge, assessment or imposition, nor to remove any lien required to be removed under this Agreement, so long as Transferee shall contest or there shall be contested on Transferee's behalf, in good faith and at Transferee's own cost and expense, the amount or validity thereof, in an appropriate manner or by appropriate proceedings which shall operate during the pendency thereof to prevent the collection of or other realization upon the tax, assessment, levy, fee, rent, charge, lien or encumbrance so contested, and the sale, forfeiture, or loss of the Existing Facilities or any part thereof or interest therein, to satisfy the same; provided, that no such contest shall subject Transferor to the risk of any liability or loss or materially impair the obligations of Transferee under this Agreement. Each such contest shall be promptly prosecuted to final conclusion (subject to the right of Transferee to settle any such contest), and in any event Transferee will save Transferor harmless against all losses, judgments, decrees and costs (including attorneys' fees and expenses in connection therewith) and will,

20

promptly after the final determination of such contest or settlement thereof, enter into a structured payment agreement with respect to, or pay and discharge, the amounts which shall be levied, assessed or imposed or determined to be payable therein, together with all penalties, fines, interest, costs and expenses thereon or in connection therewith.   Transferee shall give Transferor prompt written notice of any such contest.  If in the reasonable opinion of counsel to Transferor, by nonpayment of any of the foregoing items, the Hospital, or any substantial part thereof, will be subject to imminent loss or forfeiture, then Transferor shall notify Transferee and Transferee shall promptly pay all such unpaid items and cause them to be satisfied and discharged.

SECTION 4.06.  <u>Transferor's Performance of Transferee's Obligations</u>.  In the event Transferee at any time neglects, refuses or fails to perform any of its obligations under this Agreement, Transferor, at its option and following at least thirty (30) days' written notice to Transferee, except where a shorter period of notice is necessary to avoid a default on the Bonds, or to prevent any loss or forfeiture thereof, or to prevent any material loss to the Existing Facilities or its operations, may (but is not obligated to) perform or cause to be performed such obligation, and all expenditures incurred by Transferor thereby shall be promptly paid or reimbursed, plus interest at the rate specified in Section 3.05(b) hereof, by Transferee to Transferor.

SECTION 4.07.  <u>Improvements</u>.  The parties hereto covenant and agree that in the event Improvements shall be provided to, on, within or above the Real Property, the provisions of this Agreement pertaining to the Existing Facilities shall automatically extend to such Improvements.

SECTION 4.08.  <u>Tax-Exempt Status</u>.  Transferee represents that, as of the Commencement Date:  (i) it is an organization described in Section 501(c)(3) of the Code; (ii) the facts and circumstances which form the basis of the application for tax-exempt status as represented to the Internal Revenue Service continue to exist; and (iii) it is exempt from federal income taxes under Section 501(a) of the Code, and is not a "private foundation" as defined in Section 509(a) of the Code.  Transferee agrees that it shall not perform any act or enter into any agreement which shall adversely affect the federal income tax status of Transferee and shall conduct its operations and the Hospital and the affairs of its Affiliates, if any, so as to maintain Transferee's status as a charitable organization within the meaning of Section 501(c)(3) of the Code which is exempt from Federal income taxes under Section 501(a) of the Code, or any successor provisions of federal income tax law.

SECTION 4.09  <u>Regulatory Controls</u>.  Transferee covenants and agrees that it shall take all appropriate action to obtain such

21

consents, exceptions, exemptions or approvals of governmental authorities as may be necessary to permit it to comply fully with all of its covenants, stipulations, obligations and agreements contained in this Agreement. Transferor covenants to cooperate reasonably with Transferee in this regard.

SECTION 4.10. <u>License and Accreditation</u>. Transferee will procure and maintain in good standing a license from the State of Georgia to operate the Hospital as a hospital. Transferee will cause the Hospital to have JCAHO accreditation throughout the term of this Agreement, or in the event that such accreditation is superseded by comparable and federally recognized standards which provide for third party payor authorization, Transferee shall cause the Hospital to obtain in a reasonable period of time such other accreditation; provided, however, that Transferor may waive this requirement if the Board of Directors of Transferee shall have determined in good faith, evidenced by a resolution of said Board, that such compliance is not in Transferee's best interest and that lack of such compliance would not materially impair its ability to make the Required Payments hereunder.

SECTION 4.11. <u>Medical Staff</u>. Transferee will, effective as of the Commencement Date, adopt the bylaws of the Hospital's medical staff and will extend privileges to all present members of the Hospital's medical staff who are in good standing, on the same terms as they presently enjoy. During the term of this Agreement, Transferee (i) will maintain appropriate procedures for review and amendment of the medical staff bylaws of the Hospital, and for appointment, reappointment, suspension and termination of medical staff privileges, (ii) shall have the power and authority to grant temporary medical staff privileges to qualified new applicants, and (iii) shall take all other actions which it may deem necessary or appropriate with respect to medical staff bylaws and privileges, including, without limitation, all final action regarding the granting, denial, suspension or revocation of medical staff privileges.

SECTION 4.12. <u>Medicare/Medicaid Filings</u>. During the term hereof, Transferee shall be responsible for making all filings due to the Medicare and Medicaid programs and Transferor shall not file any reports or other documents or make any other filings in connection with Medicare and Medicaid reimbursement with respect to the Existing Facilities, including but not limited to any cost reports, without allowing Transferee at least thirty (30) business days to review any such filings and related documentation and obtaining Transferee's prior written approval of such filing. Transferee shall be responsible for taking all actions with respect to any liability to the Medicare or Medicaid program and Transferor shall, at Transferee's expense, execute such documents, respond to any audit or Notice of Program Reimbursement and pursue any appeal with respect thereto in the manner and at the time deemed appropriate by Transferee in its sole discretion.

22

SECTION 4.13. <u>Transfer of Employees; Benefits</u>. All Employees employed by Transferor immediately prior to the Commencement Date shall be offered employment by Transferee effective as of the Commencement Date; subject, however, to Transferee's right as employer to terminate the employment of any such employee thereafter and to vary the compensation, duties and benefits of any employee for any reason permitted under applicable state and federal employment laws and in accordance with Transferee's personnel policies, which policies may be amended by Transferee during the term hereof. Thus, management personnel of the Hospital will be substantially maintained despite the leasing of the Hospital hereunder, and accordingly this transaction qualifies as a lease of the Hospital pursuant to a reorganization as described in § 7.12(c) of the Bond Indenture dated as of October 1, 1990 between Transferor and the Trustee. As to retirement benefits, Transferee shall offer a retirement plan for such employees with benefits at least equal to Transferor's plan as of the Commencement Date. No employee shall be a third party beneficiary of the provisions of this Section.

SECTION 4.14. <u>Participation and Reimbursement Agreements</u>. Transferee will enter into such participation and reimbursement agreements as it may, from time to time, deem to be appropriate, with Medicare, Medicaid, Blue Cross, and other third-party payors and insurers.

SECTION 4.15. <u>Articles and Bylaws of Transferee</u>. The initial Articles of Incorporation and Bylaws of Transferee are in the forms attached hereto as <u>Exhibit "E"</u> and <u>Exhibit "F"</u>, respectively, and have been approved by Transferor.

SECTION 4.16. <u>Implementation of Parent Holding Company Structure</u>. Subsequent to the Commencement Date, and as soon as an appropriate private letter ruling can be obtained from the Internal Revenue Service, Transferee shall implement the creation of a parent holding company structure for its operations of the Hospital, including the creation of an Affiliate which controls Transferee (the "Parent Affiliate") and any other Affiliates controlled by the Parent Affiliate, provided that primary operations at the Hospital shall be retained by Transferee. Transferee must cause to be included and continuously maintained in the organizational document of any such Affiliate a provision stating that upon dissolution of such Affiliate all of Transferee's interest in such Affiliate shall revert to Transferee and that upon termination of this Agreement all of Transferee's interest in any Affiliate shall revert to Transferor. Prior to initial implementation of such parent holding company structure, the Parent Affiliate must execute an Agreement To Be Bound in the form of <u>Exhibit "G"</u> attached hereto. Also, prior to initial implementation of such parent holding company structure, Transferee shall obtain a private

23

letter ruling from the Internal Revenue Service that the implementation of such structure will not affect the tax-exempt status of Transferee. The initial Articles of Incorporation and Bylaws of Transferee's Parent Affiliate are attached hereto as Exhibit "H" and Exhibit "I", respectively, and have been approved by Transferor.

To assure Transferor that the persons serving on the Board of Directors of Transferee as of the Commencement Date and on the Board of Directors of Transferee's Parent Affiliate on the date of implementation of such parent holding company structure as discussed in this Section 4.16 will be known to it, Transferee and Transferor agree to the conditions set forth in the Articles of Incorporation and Bylaws of both the Transferee and the Parent Affiliate, respectively, which are attached hereto and made a part hereof for determining such board memberships.

After formation of the Parent Affiliate and receipt of an appropriate private letter ruling from the Internal Revenue Service, the Articles of Incorporation and Bylaws of the Transferee shall be amended so as to provide that: (1) the Parent Affiliate shall be the sole member of the Transferee; (2) all vacancies on the Board of Directors of the Transferee shall be filled by the Board of Directors of the Parent Affiliate; and (3) the Transferee may not take any of the following actions without the prior approval of the Parent Affiliate:

(a) Adopt a plan of dissolution of the Transferee;

(b) Authorize the Transferee to engage in, or enter into, any transaction providing for the sale, mortgage or other disposition of all or substantially all of the assets of the Transferee;

(c) Adopt a plan of merger or consolidation of the Transferee with another corporation;

(d) Adopt any annual or long-term capital and operational budgets of the Transferee or approve any changes therein exceeding ten percent (10%) of any budgeted item;

(e) Amend or take any action to terminate any lease between the Transferee and the Authority with respect to the Hospital;

(f) Take any action which would, or reasonably could be expected to, cause the Transferee to exceed its annual budget for capital expenditures;

(g) Incur an expenditure for any particular project or service of or for the Transferee in an amount in excess of $1,000,000;

24

(h) Take any action which would, or reasonably could be expected to, result in an adverse variance (on an annualized basis) of total expenses of greater than 2% of total annual budgeted expenses;

(i) Appoint or remove the independent auditors of the Transferee;

(j) Select or remove the President/Chief Executive Officer of the Transferee;

(k) Adopt or permit any changes to any long-term, strategic or master institutional plans of the Transferee; or

(l) Amend the Articles of Incorporation or Bylaws of Transferee.

SECTION 4.17. <u>Consents and Notices</u>. Transferor shall obtain all material consents and give all notices which may be required in connection with the transfer of the Assigned Contracts to Transferee and the assumption by Transferee of the Assumed Liabilities hereunder in accordance with the terms of such agreements and liabilities. Transferor shall provide Transferee with satisfactory evidence that all such consents have been obtained and notices have been given upon Transferee's written request.

SECTION 4.18. <u>Indigent Care</u>. The parties will cooperate to provide indigent care pursuant to the provisions of Section 4.02(h) herein.

In addition, Transferee shall annually allocate funds for the purpose of providing charity care. The funds allocated will be no less than 3% of the gross revenues of the Hospital after provisions for bad debt and Medicaid and Medicare adjustments have been deducted. The funds allocated will be based on the previous year's financial records, except that during the first year of operation during the term of this Lease the 3% will be based on the patient service revenues projected in the pro forma revenue and expense statement included in the Certificate of Need application for the transaction contemplated in this Lease.

The parties hereto agree that the provisions of O.C.G.A. § 31-7-75.1 are not applicable to the transaction contemplated herein.

SECTION 4.19. <u>Permitted Indebtedness</u>. Except as permitted or required by this Agreement, Transferee covenants that it will not create, guarantee, assume, permit to exist or become liable, directly or indirectly, in respect to any indebtedness of any kind or character for money borrowed or in connection with acquisition

25

of a capital asset (including, without limitation, any liability by way of endorsement, guarantee or agreement to repurchase or supply funds or any extension of its credit, directly or indirectly, in support of the obligations or undertakings of others) except that Transferee may incur "Permitted Indebtedness" as the same is described in Article XIII of the Bond Indenture dated as of October 1, 1990, which description (and all internal definitions used therein) is (and are) incorporated herein by this reference in this Section 4.19 and shall survive any termination of the Bond Indentures.

SECTION 4.20. _Financial Books and Records_. Transferee shall install and maintain proper books of record and account of all business and affairs of Transferee, in which full and correct entries shall be made in accordance with generally accepted accounting principles. Transferee will deliver to Transferor, within one hundred twenty (120) days after the end of each Fiscal Year, a financial report for such Fiscal Year containing a balance sheet of Transferee as of the end of such Fiscal Year, a statement of changes in financial position of Transferee for such Fiscal Year and a statement of revenues and expenses of Transferee for such Fiscal Year. Such report shall be audited by a firm of Independent Accountants and shall contain their opinion as to whether the report fairly presents the results of operations and was prepared in accordance with generally accepted accounting principles, applied on a consistent basis.

SECTION 4.21. _Competition with Hospital_. During the term of this Agreement, Transferor shall not own, manage, operate or control or be connected in any manner with the ownership, management, operation or control of any hospital or other health care facility other than the Hospital in Albany, Georgia and in Dougherty County, Georgia and in any other areas of operation of the Transferor as permitted under the Act.

SECTION 4.22. _Eminent Domain_. During the term of this Agreement, Transferor shall not exercise its right of eminent domain, granted pursuant to O.C.G.A. § 31-7-75(12) or any other provision of law, to acquire any of the Existing Facilities.

SECTION 4.23. _Existing Certificates of Need_. Transferee shall comply with the terms of all Certificates of Need granted to Transferor prior to the Commencement Date. Transferor shall cooperate with Transferee in complying with all Certificate of Need requirements, including requirements relating to the implementation of any outstanding Certificates of Need.

SECTION 4.24. _Name of the Hospital_. Transferee agrees that during the term of this Agreement the Hospital shall always be named "Phoebe Putney Memorial Hospital".

26

ARTICLE V

## IMPROVEMENTS; DISPOSITIONS OF PROPERTY; ALTERATIONS

SECTION 5.01. <u>After-Acquired Property as Part of the Existing Facilities</u>. All buildings, structures, improvements, machinery, equipment and other property which shall be constructed, placed or installed in or upon the Real Property as an addition to, or as a substitute for or in renewal or replacement of, any buildings, structures, improvements, furnishings, equipment or other property constituting part of the Existing Facilities shall (unless Transferor and Transferee otherwise provide by signed written agreement directed to a specific item) become Improvements hereunder without any further act or deed. At the request of Transferee, Transferor shall cooperate in securing such permits and authorizations and shall join in the application for such municipal and other governmental permits and authorizations as may be deemed necessary or advisable to be obtained in connection with any such construction, acquisition or installation, provided that Transferee shall indemnify and hold Transferor harmless against and from all costs and expenses which may be incurred by Transferor in connection with any such joinder or application.

SECTION 5.02. <u>Covenant Against Unauthorized Disposition</u>. Except as otherwise provided in this Section 5.02 and elsewhere in this Agreement, Transferee shall not dispose of the Existing Facilities without the prior written consent of Transferor. Transferee shall maintain accurate records of the location of, and any transfers with respect to, the Existing Facilities. For purposes of this Article V, the term "dispose of" means to transfer, assign, sell, lease, or sublease.

SECTION 5.03. <u>Dispositions of Property Without Notice</u>. Transferee may, from time to time, at its cost and expense, without notice to and without obtaining the approval of Transferor and free of any obligation to make any replacement thereof, remove or dispose of:

(a) Property for fair market value in a transaction which qualifies as a transaction in the ordinary course of business of operating a hospital similar to the Hospital;

(b) Property that in the discretion of Transferee is obsolete or unusable for its intended purpose; or

(c) Property (i) for fair market value, and (ii) provided that during any consecutive twelve (12) calendar month period the aggregate Book Value thereof at the times of all such dispositions does not exceed five percent (5%) of the Book Value of the Property, Plant and Equipment of Transferee, and (iii) such dispositions will not impair the structural soundness or usefulness

27

of the Hospital nor adversely affect the Hospital operations or the purposes of this Agreement.

Such Property disposed of as aforesaid shall thereafter not constitute part of the Hospital or the Existing Facilities. Transferee shall file a report with Transferor at least annually within one hundred-twenty (120) days following the end of each Fiscal Year stating the type or character of Property removed or otherwise disposed of pursuant to Section 5.03(c) and a fair market value and book value thereof at the time or times of such removal or other disposition.

SECTION 5.04. <u>Dispositions of Property With Notice</u>. Except for transfers made pursuant to Sections 5.03, 5.05 or 8.02 hereof, Transferee may not in any consecutive twelve (12) month period, cause one or more dispositions of Property, if the Book Value of which at the times of all such dispositions of Property totals, in the aggregate, in excess of five percent (5%) of the book value of the Property, Plant and Equipment of Transferee, unless not less than thirty (30) days prior to the last of such dispositions which causes such excess to occur the written consent of Transferor is obtained with respect to said last such disposition.

SECTION 5.05. <u>Transfers to Affiliates</u>. Notwithstanding the other provisions of this Agreement, Transferee shall have the right to make dispositions of Property (including, without limitation, Real Property and nonrestricted gifts, grants and contributions) to an Affiliate so long as the organizational documents of such Affiliate provide that upon dissolution of such Affiliate or upon termination of this Agreement, all the interests of Transferee in the Affiliate shall be returned to Transferee, or Transferor, as the case may be, to become a part of the Existing Facilities. Transferee and Parent Affiliate shall cause any investment by Transferee or Parent Affiliate or any Affiliate in any joint venture, partnership or corporation to provide for an appropriate mechanism to liquidate, sell or redeem such investment upon the termination of this Agreement or upon the dissolution of Parent Affiliate or any such Affiliate. Notwithstanding the foregoing, without the prior written consent of Transferor, the Transferee shall not dispose of to any person (whether or not an Affiliate) either: (i) all of the Operating Assets or the Existing Facilities; or (ii) so substantial a part of the Operating Assets or the Existing Facilities as would remove Transferee from direct involvement with the day to day operations of the Hospital.

SECTION 5.06. <u>Alterations</u>. Transferee shall not, without Transferor's written consent, demolish or structurally alter the Real Property in any material respect unless such demolition or alteration is in connection with a project by Transferee to repair, remodel or make additions to such Real Property.

28

SECTION 5.07. <u>Compliance with Bonds</u>. Any disposition of Property pursuant to this Article V must at all times be in full compliance with the requirements of the Bonds and the Bond Indentures.

ARTICLE VI

<u>INSURANCE</u>

SECTION 6.01. <u>Insurance</u>.

(a) Transferee covenants and agrees that it shall, during the term of this Agreement, keep and maintain at all times insurance (in such amounts and with such deductibles as shall be comparable to coverage carried by institutions similar to Transferee):

(1) fire, with uniform standard extended coverage endorsements, flood and crime, vandalism and malicious mischief insurance, as may be approved for issuance in the State, including insurance against loss or damage from lightning, windstorm, civil commotion, aircraft vehicles and smoke, covering the Hospital at all times in an amount not less than the full insurable value thereof;

(2) insurance coverage of boilers, pressure vessels, auxiliary piping and selected machinery objects (pumps and compressors);

(3) comprehensive general and professional liability insurance protecting Transferee against liability for death, injury, loss or damage as a result or arising out of examination, diagnosis, treatment or care of (or failure to so examine, diagnose, treat or care for) any patient of the Hospital or any occupant of the same;

(4) comprehensive automobile liability insurance;

(5) worker's compensation and unemployment coverage as required or permitted by the State;

(6) use and occupancy insurance;

(7) fidelity bonds on all officers and employees of Transferee who have access to or have custody of revenues, receipts or income form the Hospital or any funds of Transferee; and

(8) builder's risk insurance during the construction of any Improvements.

(b) Transferee shall designate an Insurance Consultant, who may be an insurance broker or an insurance agent with whom

29

Transferee or Transferor transacts business. Transferee may replace such Insurance Consultant and appoint a new Insurance Consultant.

(c) Transferee may make modifications to the insurance coverage hereinabove provided, including self-insurance, insurance provided by or through an agency of the State or use of a captive insurance company in whole or in part for any such coverage, but only upon the following terms and conditions. In making its decision whether to make such modifications Transferee shall consider the availability of commercial insurance, the terms upon which such insurance is available, the cost of such available insurance and the effect of such terms and such costs upon Transferee's costs and charges for its services. No such modification shall be made unless (i) Transferee has received a written recommendation with respect to such modification from the Insurance Consultant, (ii) such modification shall not disqualify Transferee for reimbursement under Medicare or Medicaid programs or any governmental programs providing similar benefits and (iii) adequate reserves certified by the Insurance Consultant or an independent actuary certifying the adequacy of such reserves for any self-insurance program, insurance provided by or through a State agency or use of a captive insurance company are deposited and maintained with an independent corporate trustee. Transferee shall give written notice to Transferor of any modifications made pursuant hereto, indicating in such notice the effective date of such modification and including the Insurance Consultant's written recommendation and the Certification of the Insurance Consultant (or actuary) certifying the adequacy of reserves as set forth above.

SECTION 6.02. _Insurers and Policies_. Transferee further agrees that each insurance policy required by Section 6.01 hereof (i) shall be by such insurer (or insurers) as is financially responsible, allowed to write the respective insurance in the State and of recognized standing, including Underwriters at Lloyds and insurers having at least a Best's "A" rating, (ii) shall be in such forms and with such provisions (including, without limitation, the loss payable clause, the waiver of subrogation clause, relieving the insurer of liability to the extent of minor claims, and the designation of the named assureds) as are generally considered standard provisions for the type of insurance involved and (iii) shall prohibit cancellation or substantial modification by the insurer without at least thirty (30) days, prior written notice to Transferor and Transferee. Without limiting the generality of the foregoing, all insurance policies carried pursuant to Section 6.01 above shall name Transferor and Transferee as parties insured thereunder as the respective interest of each of such parties may appear, and loss thereunder shall be made payable and shall be applied as provided in Section 6.03 hereof. Each such policy shall provide that losses thereunder shall be adjusted with the insurer by Transferee on behalf of the insured parties.

30

SECTION 6.03. <u>Involuntary Loss; Use of Insurance Proceeds Condemnation Awards and Sale Proceeds</u>.

(a)  If all or any part of the Hospital shall be damaged or destroyed by whatever cause or shall be taken by any public authority or entity in the exercise of, or acquired under the threat of the exercise of, the power of eminent domain (for purposes hereof, an "Involuntary Loss"), Transferee shall give prompt notice of such Involuntary Loss to Transferor.  There shall be no abatement or reduction in the Required Payments as a result of any Involuntary Loss.

(b)  Transferee shall proceed promptly to repair, rebuild or restore the Property damaged, destroyed or taken with such changes, alterations and modifications (including the substitution and addition of other property) as may be desired by it and Transferee may receive the insurance proceeds, condemnation awards or sale proceeds resulting from such Involuntary Loss and shall apply said proceeds for such purpose together with any additional moneys necessary therefor.

(c)  Transferee and Transferor shall cooperate fully with one another in the handling and conduct of any prospective, pending or threatened condemnation proceedings or with respect to any settlement or negotiation proceedings involving coverage provided under any policy of insurance.

(d)  Transferee and Transferor agree that Transferor shall be entitled to the entire award attributable to any taking of all or part of the Hospital and Transferee shall not be entitled to any award by reason for the loss of its leasehold estate; provided, however, Transferee shall be entitled to claim compensation from the condemning authority for business interruption as long as any award to Transferee does not impair or diminish the award otherwise payable to Transferor.

(e)  Any balance remaining after completion of the repair, rebuilding or restoration of the Hospital shall be considered part of the operating assets of Transferee, subject to set-off for any sums then due and payable to Transferor.

(f)  In the event that it is determined by an independent management consultant that the taking or other loss results in Transferee's inability to generate revenues sufficient to meet its obligations under the Bonds and the resolutions of Transferor authorizing and securing said Bonds, all funds contemplated by this Article will be paid to the Trustee to be disposed of in accordance with the terms of the said resolutions authorizing and securing said Bonds.

31