# EXHIBIT A
# PART 3

SECTION 6.04.  <u>Failure to Carry Insurance</u>.  In the event Transferee shall at any time neglect or refuse to procure or maintain insurance or self insurance as herein required, Transferor may at its option and following at least thirty (30) days' written notice to Transferee, except where a shorter period of written notice is necessary to avoid a default on the Bonds, or to prevent any loss or forfeiture thereof, procure and maintain such insurance and Transferee shall be obligated to reimburse promptly Transferor for all amounts expended in connection therewith.

## ARTICLE VII

### INDEMNIFICATION

SECTION 7.01.  <u>Indemnification; No Liability; Damage Claims</u>. Transferee shall protect, indemnify and save harmless Transferor and its present or future members, officers, employees or agents against and from any and all liabilities, suits, actions, claims, demands, damages, losses, expenses (including reasonable counsel fees) and costs of every kind and nature incurred by, or asserted or imposed against, Transferor and its present or future members, officers, agents or employees, or any of them, by reason of any matter relating to the financing, leasing, construction, operation, management, maintenance or the existence of the Hospital or relating to the Assumed Liabilities, unless resulting from the gross negligence or willful misconduct or fraud of any such persons, during the term of this Agreement, and regardless of whether such liabilities, suits, actions, claims, demands, damages, losses, expenses and costs be against or be suffered or sustained by Transferor or by any of its respective present or future members, officers, agents or employees, or be against or be suffered or sustained by other persons, corporations or other legal entities to whom Transferor or any of its respective present or future members, officers, agents may become liable therefor. Neither Transferor nor any of its present or future members, officers, employees or agents shall be liable for any damage or injury occurring during the·term of this Agreement to property of Transferee except as a result of an act constituting gross negligence or willful misconduct.  Transferee may, and if so requested by Transferor shall, undertake to defend at Transferee's sole cost and expense, any and all suits, actions or proceedings brought against Transferor or any of its respective present or future members, officers, agents or employees, in connection with any of the matters mentioned in this Section, provided that Transferor shall give Transferee timely notice of and shall forward to Transferee every demand, notice, summons or other process received with respect to any claim or legal proceeding within the preview thereof.  Notwithstanding the foregoing, Transferee shall not be liable to Transferor to the extent Transferor is protected against any liability by the doctrine of sovereign immunity.

32

Exhibit A 41 of 138

SECTION 7.02.   <u>Reimbursement of Costs and Expenses</u>. Transferee shall promptly pay any and all costs, expenses and judgments which may be incurred by, or rendered against, Transferor or any of its respective present or future members, officers, employees or agents at any time or times during the term of this Agreement (i) in enforcing any of the terms, covenants, conditions or provisions of this Agreement or (ii) in obtaining possession of the Hospital or taking any other action as a result of any default by Transferee or (iii) in defending any action, suit or proceedings brought by any person, other than Transferee or an Affiliate of Transferee (but only in the event Transferee or its Affiliate prevails), against Transferor or any of its respective present or future members, officers, employees or agents as a result of the violation of, or noncompliance with, any present or future federal, state, county or municipal law, ordinance, regulation or order, or as a result of any alleged failure, neglect, misfeasance, malfeasance or default in any way connected with, arising from, or growing out of this Agreement or the Hospital, or any operations conducted in or any use or occupancy of the Hospital.

SECTION 7.03.   <u>Continuation of Liability</u>.   Each of the foregoing provisions of this Article VII shall be severable from and independent of and may be enforced without regard to the enforcement of the other provisions of this Article VII and other provisions of this Agreement, and the provisions of this Article shall survive the termination of this Agreement with respect to acts occurring prior to the termination of this Agreement.

## ARTICLE VIII

### <u>ASSIGNMENTS; SUBLEASES; OPERATING ARRANGEMENTS</u>

SECTION 8.01.   <u>Maintenance of Corporate Existence; Permitted Mergers, Consolidations and Sales</u>.   During the term of this Agreement, Transferee agrees that it will maintain its corporate existence, will not dissolve or otherwise dispose of its assets except as permitted elsewhere in this Agreement and in its Articles of Incorporation and will not, without the approval of Transferor, (i) consolidate with or merge into another corporation or other entity or permit one or more corporations or other entities to consolidate with or merge into it, or (ii) transfer all or substantially all of its assets to any other person or Entity.

SECTION 8.02.   <u>Subleases and Operating Contracts</u>.   Transferee may sublease any part, but not all or substantially all, of the Existing Facilities (or all or substantially all of the Hospital) or contract for the performance by others of operations or services on or in connection with any part, but not all or substantially all of the Existing Facilities (or all or substantially all of the Hospital) for any lawful purpose, if (i) each such sublease or contract is consistent with and subject to the provisions of this

33

Agreement, (ii) Transferee shall remain fully obligated and responsible under this Agreement to the same extent as if such sublease or contract had not been executed, and (iii) if any Bonds are issued and outstanding, an opinion of nationally recognized bond counsel that the lease or contract does not jeopardize the federal tax exempt status of the Bonds; provided, however, that no opinion of counsel need be rendered to enter into subleases or contracts for any specialty services related to the operation of the Hospital and including, but not limited to, activities conducted at any professional office building located on the Real Property or at any of the other Exisiting Facilities related to gift shop, doctors' office space, food service, electronic banking machines, parking and similar services.

SECTION 8.03. <u>Prohibition on Other Assignments and Subleases</u>. Transferee shall not assign or sublet all or any part of the Existing Facilities without Transferor's consent except as described in Sections 5.03, 5.04, 5.05, 8.01 and 8.02 of this Agreement.

## ARTICLE IX

## DEFAULT BY TRANSFEREE

SECTION 9.01. <u>Events of Default</u>. The following shall constitute events of default under this Agreement:

(a) if Transferee shall fail to pay, when due and payable, any Required Payment, and, for any such failure to pay other than a payment of the principal of, premium, if any, and interest on the Bonds, such failure shall continue for a period of fifteen (15) business days after written notice of failure of payment shall have been given to Transferee by Transferor;

(b) substantial failure by Transferee to observe and perform in any material respect any covenant, condition or agreement in this Agreement on Transferee's part to be observed or performed, other than as referred to in subsection (a) of this Section, with such failure continuing unremedied for a period of thirty (30) days after written notice (specifying such failure and requesting that it be remedied) has been given to Transferee by Transferor, unless Transferor shall agree in writing to an extension of such time prior to its expiration; provided, however that if such failure by Transferee is of the type that cannot be remedied within such thirty (30) day period and Transferee immediately commences and diligently pursues on a continuous basis appropriate actions to remedy such failure, and there shall be no risk of substantial economic loss or forfeiture to Transferee, the

34

agreement for a reasonable extension by Transferor shall not be withheld;

(c) the occurrence of an event of default under the Bond Indentures as a result of any action or inaction by Transferee, together with a declaration of default thereunder by the Trustee;

(d) if Transferee shall file a voluntary petition in bankruptcy, or shall be adjudicated a bankrupt or insolvent, or shall file any petition or other pleading seeking any reorganization, composition, readjustment, liquidation or similar relief for itself under any present or future law or regulation, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of it or of all or any substantial part of its assets or of the Hospital, or shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due;

(e) if a petition or other pleading shall be filed against Transferee seeking an adjudication of bankruptcy, reorganization, composition, readjustment, liquidation or similar relief under any present or future law or regulation and shall remain undismissed or unstayed for sixty (60) days, or if, by an order or decree of a court of competent jurisdiction, Transferee shall be adjudicated a bankrupt or insolvent or relief shall be granted under or pursuant to any such petition or other pleading, or if by order or decree of such court, there shall be appointed without the consent or acquiescence of Transferee, a trustee in bankruptcy or reorganization or a receiver or liquidator of it or of all or any substantial part of its property or of the Hospital and any such order or decree shall have continued unvacated, or unstayed on appeal or otherwise and in effect for a period of sixty (60) days, or if Transferee shall be dissolved or liquidated;

(f) the abandonment by Transferee of the Hospital, or any substantial part thereof, and such abandonment shall continue for a period of thirty (30) days;

(g) loss of federal tax exempt status for the interest on the Bonds as a result of any action or inaction by Transferee;

(h) the entry of a final judgment or judgments from which no further appeals are available for the payment of money aggregating in excess of fifteen percent (15%) of operating revenues of Transferee for the most recent fiscal year for which audited financial statements are available against Transferee, for which there does not exist adequate

35

insurance, adequate self insurance reserves or appropriate bonds, any one of which remains outstanding for more than sixty (60) days from the date it shall become unappealable without having been discharged in full, structured so that no annual payment required thereunder is in excess of 5% of operating revenues of Transferee, stayed or superseded; or

(i) any material representation or warranty by Transferee in this Agreement, or as provided in any other certificate, document or agreement by Transferee as required by or in connection with this Agreement or the restructuring of the Hospital shall clearly have been untrue in any material respect at the time such representation or warranty was given or made and Transferee has been or is likely to be substantially damaged as a result of such untrue representation or warranty.

SECTION 9.02. _Termination._ Upon the occurrence of any one or more of the events of default specified in Section 9.01 hereof, Transferor may give to Transferee written notice that this Agreement shall terminate upon a date specified in such notice, which date shall be not less than twenty (20) days after the date of such notice. Upon any such termination of this Agreement, Transferee shall peaceably vacate and surrender possession of the Existing Facilities and the Operating Assets, including such additional or renewal or replacement facilities, furnishings or equipment as Transferee may have placed on or in the Existing Facilities, and Transferor, or its designee, may reenter and take possession of any interest that Transferor may then have in the Existing Facilities and the Operating Assets, including such additional or renewal or replacement facilities, furnishings, equipment or Improvements as Transferee may have placed on or in the Existing Facilities. If Transferor elects to exercise its remedies under this Section 9.02 and any of the Bonds are outstanding, Transferor shall take possession of the Existing Facilities and the Operating Assets subject and subordinate to the pledge of the Gross Revenues that has been granted to the Trustee pursuant to the Bond Indentures, and Transferor shall continue and maintain, or cause any lessee or operator of the Existing Facilities to continue and maintain, the pledge and grant of the security interest in the Gross Revenues of the Existing Facilities to the Trustee for the benefit of bondholders.

SECTION 9.03. _Repossession Without Termination._ Upon the occurrence of any one or more of the events of default specified in Section 9.01 above, in lieu of terminating this Agreement, at the option of Transferor, Transferee shall vacate and surrender possession of the Hospital including such additional or renewal replacement facilities, furnishings or equipment as Transferee may have placed on or in the Hospital and Transferor or its designee may reenter and take possession for Transferee's account. Transferor upon su protect its interest in the Hospital,

36

Exhibit A 45 of 138

repossession without termination may provide for the use and occupancy of all or any part of the Hospital from time to time in the name of Transferee or Transferor without further notice, for such term or terms, on such conditions and consideration and for such uses and purposes as Transferor, in its discretion, may determine, and (subject to the prior pledge of the Gross Revenues under the Bond Indentures) may collect and receive all revenues and rentals derived therefrom and apply the same, after deduction of all appropriate operating expenses, to the payment of the Required Payments payable hereunder by Transferee. Transferee shall remain liable for any deficiency in the Required Payments payable by it hereunder and all costs incurred by Transferor in connection with such reletting including without limitation all repairs, charges and attorneys' fees.

SECTION 9.04.  __Damages__.  Upon the termination of this Agreement pursuant to Section 9.02 hereof, Transferee shall be obligated to pay, and shall forthwith pay, as damages to Transferor:

(a) an amount equal to all unpaid Required Payments accrued through the effective date of termination; and

(b) an additional amount sufficient to pay and satisfy all other unpaid costs and obligations reasonably incurred by Transferor in connection with or as a result of Transferee's default under this Agreement, and the termination hereof.

SECTION 9.05.  __Additional Remedies__.  The rights and remedies of Transferor specified in this Agreement shall be cumulative.  In addition thereto, Transferor shall have all of the rights and remedies now or hereafter conferred by law or in equity, including, among other remedies, receivership and injunctions to restrain violations or attempted violations of any provision of this Agreement by Transferee.  Transferee agrees that a default under the terms of this Agreement is such a default that entitles Transferor to specific performance of this Agreement.

SECTION 9.06.  __No Waiver of Rights__.  No failure by Transferor to insist upon the strict performance of any term, covenant, condition or provision of this Agreement, or to exercise any right or remedy consequent upon an event of default hereunder, and no acceptance of Required Payments during the continuance of any such default **shall constitute a waiver** of any such default or of such term, **covenant,** condition or provision or a waiver or relinquishment for the future of the right to insist upon and to enforce by any appropriate legal remedy a strict compliance with all the terms, covenants, conditions and provisions of this Agreement, or of the right to exercise any such rights or remedies, if any default by Transferee be continued or repeated, or of the right to recover possession of the Existing Facilities by reason thereof.  No term, covenant, condition or provision of this

37

Agreement binding upon Transferee, and no breach hereof or default hereunder, shall be waived, altered or modified, except as set forth in a written instrument executed by Transferor. No waiver of any breach shall affect or alter this Agreement but every term, covenant, condition and provision of this Agreement shall continue in full force and effect with respect to any other then existing or subsequent breach hereof.

Section 9.07. _Reversion of Assets_. Upon the expiration or earlier termination of this Agreement, or upon a material breach of the terms of this Agreement by Transferee and such breach has not been cured if so allowed hereunder, or in the event this Agreement shall become void or unenforceable, all assets of the Transferee, including all of Transferee's interest in its Affiliates, shall become the property of the Transferor absolutely.

## ARTICLE X

## MISCELLANEOUS

SECTION 10.01. _Captions_. The captions of the Articles and Sections hereof have been inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

SECTION 10.02. _Covenants Considered Material_. All covenants made by Transferor or Transferee contained herein shall be considered to be material to the Agreement and the relationship between Transferor and Transferee.

SECTION 10.03. _Amendment of Agreement_. This Agreement may be amended by a written agreement duly executed by Transferee and Transferor.

SECTION 10.04. _Georgia Law Controlling_. This Agreement shall be construed and enforced in accordance with the laws of the State of Georgia.

SECTION 10.05. _Consents and Approvals_. Whenever the written consent or approval of Transferor or Transferee or any officer thereof **shall be required** under the provisions of this Agreement, such con**sent** or approval shall not be unreasonably withheld.

SECTION 10.06. _Multiple Counterparts_. This Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original constituting but one and the same instrument.

SECTION 10.07. _Severability_. If any one or more of the sentences, sections or other portions of this Agreement shall be determined by a court of competent jurisdiction to be invalid, the

38

invalidity of any such sentence, section or other portion of this Agreement shall in no way affect the validity or effectiveness of the remainder of this Agreement, and this Agreement shall continue in force to the fullest extent permitted by law.

SECTION 10.08. <u>Transferee's Remedies</u>. In the event Transferor shall fail to perform any of its obligations under this Agreement, Transferee may institute such action against Transferor as Transferee may deem necessary to compel performance. In addition, Transferee shall have all of the rights and remedies conferred in this Agreement or now or hereafter conferred at law or in equity, which rights and remedies are cumulative.

SECTION 10.09. <u>Assignments</u>. Except as otherwise provided herein, neither Transferor nor Transferee shall give, assign or pledge its rights under this Agreement without the consent of the other party.

SECTION 10.10. <u>Recording</u>. The parties agree that a short form memorandum of this Agreement in customary form may be recorded in such office in the State as may be at the time provided by law as the proper place for the recordation of a deed conveying the Existing Facilities.

SECTION 10.11. <u>Notices; Demands; Requests</u>. All notices, demands and requests to be given or made hereunder to or by Transferee or Transferor shall be in writing and shall be deemed to be properly given or made three business days after being properly deposited in the United States mail, certified or registered mail, return receipt requested, postage prepaid, addressed as follows:

(a) As to Transferee --

Phoebe Putney Memorial Hospital, Inc.
417 Third Avenue
Albany, Georgia 31703
Attention: Chief Executive Officer

(b) As to Transferor --

Hospital Authority of Albany - Dougherty County, Georgia
417 Third Avenue
Albany, Georgia 31703
Attention: Chairman

Any of such addressees and addresses may be changed at any time upon written notice of such changes sent by United States certified or registered mail, return receipt requested, postage prepaid, to the other party by the party effecting the change. Any time periods commencing with notice prescribed by the terms of this

39

Agreement shall commence with the date of receipt of written notice as evidenced by the return receipt required by this Section.

SECTION 10.12.  Validity of Pledge.  The Pledged Revenues are subject to the lien of the pledge hereunder without any physical delivery of the Pledged Revenues or further act, and (subject to the rights of the Trustee under the Bond Indentures) the lien of such pledge is valid and binding against all parties having claims of any kind against Transferor or Transferee or other operator or lessee of the Hospital (irrespective of whether such parties have notice of such pledge and create a perfected security interest) without the necessity for separation or delivery of the Required Payments or for the filing or recording of this Agreement or any other resolution or instrument by which such pledge is created or any certificate, statement or other document with respect to such pledge.  The pledge under this Agreement of the Pledged Revenues shall be effective and the moneys therefrom and thereof may be applied to the purposes for which pledged without necessity of any further act of appropriation.

SECTION 10.13.  No Personal Liability.  Notwithstanding anything to the contrary contained herein or in any other instrument or document executed by or on behalf of Transferor or Transferee in connection herewith, no stipulation, covenant, agreement or obligation contained herein or therein shall be deemed or construed to be a stipulation, covenant, agreement or obligation of any present or future member, director, trustee, affiliate, officer, employee or agent of Transferor or Transferee or of any incorporator, member, affiliate, director, trustee, officer, employee or agent of any successor to Transferor or Transferee, in any such person's individual capacity, and no such person, in his individual capacity, shall be liable personally for a breach or nonobservance of or for any failure to perform, fulfill or comply with any such stipulations, covenants, agreements or obligations, nor shall any recourse be had for the payment of any of the Required Payments due hereunder or for any claim based thereon or on any such stipulation, covenant, agreement or obligation, against any such person, in his individual capacity, either directly or through Transferor or Transferee or any successor to Transferor or Transferee, under any rule of law or equity, statute or constitution or by the enforcement of any assessment or penalty or otherwise, and all such liability of any such person, in his individual capacity, is hereby expressly waived and released.

SECTION 10.14.  Payments.  All payments to be made by Transferee hereunder shall be made in immediately available funds (by wire transfer or otherwise) on or before the day on which such payments are due.

SECTION 10.15.  Survival of Covenants, Representations and Warranties.  All covenants, representations and warranties set forth herein shall survive the execution of this Agreement.

40

SECTION 10.16. <u>Entire Agreement</u>. This Agreement, together with the attachments and exhibits attached hereto, contains the entire understanding of the parties with respect to the transactions contemplated hereby and supersedes all other agreements and undertakings, oral or written, between or among the parties.

SECTION 10.17. <u>Good Faith</u>. Good faith is the essence of this Agreement. Transferor and Transferee each agrees to exercise good faith and commercial reasonableness in the interpretation, performance and enforcement of this Agreement.

SECTION 10.18. <u>Relationship of Parties</u>. Nothing contained in this Agreement shall be construed or deemed by the parties hereto or by any third party to create a relationship of partnership or of joint venture or of any association whatsoever between Transferor or Transferee, it being expressly understood and agreed that no provisions in this Agreement nor any acts of the parties hereto shall be deemed to create any relationship between Transferor and Transferor other than the relationship of landlord and tenant.

SECTION 10.19. <u>Brokerage Commission</u>. Transferor and Transferee each hereby represents to each other that the negotiations relative to this Agreement and the transactions contemplated hereby do not give rise on account of either of their respective actions to any claim against any of the parties to this Agreement for a finder's fee, brokerage commission or other like payment.

SECTION 10.20. <u>Attorneys' Fees and Costs</u>. If any legal action is brought by any party hereto to enforce, defend or interpret its rights under this Agreement, the prevailing party in such action shall be entitled to receive as additional damages all court costs, all reasonable costs incurred in enforcing or defending its rights under this Agreement, and reasonable attorneys' fees incurred by the prevailing party, whether out of court, in the trial court, on appeal or in bankruptcy proceedings.

SECTION 10.21. <u>Time is of the Essence</u>. Time is of the essence in the performance by each party of its obligations hereunder.

SECTION 10.22. <u>Specific Performance</u>. This Agreement and each and every provision hereof shall be specifically enforceable. Each party hereto upon the introduction and presentation to the applicable court having jurisdiction over the matter of evidence showing a material breach by the other party hereto shall be entitled to injunctive relief mandating specific performance.

41

SECTION 10.23.  Termination.  Unless sooner terminated in accordance with the provisions hereof, this Agreement shall terminate on the last day of the fortieth (40th) Operating Year after the Commencement Date hereof.

ARTICLE XI

CONDITIONS

The effectiveness of this Agreement and commencement of the Term of this Agreement is subject to and conditional upon receipt by Transferor and Transferee of the various determinations, approvals, opinions and reports referenced in Section 3.01(c) herein.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed under seal as of the day and year first above written.

TRANSFEROR:

HOSPITAL AUTHORITY OF ALBANY-DOUGHERTY COUNTY, GEORGIA

Signed, sealed and delivered in the presence of:

By: _____

Title: _____

_____
Unofficial Witness

_____
Notary Public

(SEAL)

My Commission Expires:
MY COMMISSION EXPIRES JULY 22, 1991

Attest:

By: _____

Title: Asst. Secretary

_____

[NOTARIAL SEAL]

[Signatures continued on the following page]

42

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires:
MY COMMISSION EXPIRES JULY 22, 1991

_____

[NOTARIAL SEAL]


DGC\Phoebe\006

TRANSFEREE:

PHOEBE PUTNEY MEMORIAL HOSPITAL,
INC.

By: _____

    Title: _____

(CORPORATE SEAL)

Attest:

By: _____

    Title: _____

43

EXHIBIT "A"

CONTRACTS NOT ASSIGNED

None.

EXHIBIT "B"

<u>REAL PROPERTY</u>

    All real property owned by Transferor, a listing and legal description of which is attached hereto.

| PARCEL NO. | STREET ADDRESS | DESCRIPTION |
|---|---|---|
| | | PARKING LOT |
| 1 | 405 FIRST AVENUE | |
| | | PARKING LOT |
| 2 | 315 SECOND AVENUE | PARKING LOT |
| 3 | 317 SECOND AVENUE | PARKING LOT |
| 3 | 319 SECOND AVENUE | KIWANIS CLINIC |
| 4 | 400 SECOND AVENUE | KIWANIS CLINIC |
| 4 | 402 SECOND AVENUE | PARKING LOT |
| 5 | 406 SECOND AVENUE | PARKING LOT |
| 5 | 410 SECOND AVENUE | PARKING LOT |
| 5 | 414 SECOND AVENUE | PARKING LOT |
| 6 | 420 SECOND AVENUE | PARKING LOT |
| 6 | 422 SECOND AVENUE | PARKING LOT |
| 7 | 503 SECOND AVENUE | |
| | | MANAGEMENT SERVICES |
| 8 | 308 THIRD AVENUE | CONDO (UNIT 2) |
| 9 | 500 THIRD AVENUE | CONDO (UNIT 4) |
| 9A | 500 THIRD AVENUE | CONDO (UNIT 5) |
| 9A | 500 THIRD AVENUE | CONDO (UNIT 6) |
| 9A&B | 500 THIRD AVENUE | CONDO (UNIT 7) |
| 9A | 500 THIRD AVENUE | MAIN HOSPITAL BLD. |
| 10 | 417 THIRD AVENUE | PARKING LOT |
| 11 | 512 THIRD AVENUE | PARKING LOT |
| 12 | 518 THIRD AVENUE | PARKING LOT |
| 13 | 520 THIRD AVENUE | PARKING LOT |
| 13 | 522 THIRD AVENUE | PARKING LOT |
| 13 | 524 THIRD AVENUE | |
| | | EMPTY LOT |
| 14 | 307 FOURTH AVENUE | SAME AS ABOVE |
| 15 | 309 FOURTH AVENUE | SAME AS ABOVE |
| 15 | 311 FOURTH AVENUE | PARKING LOT |
| 16 | 412 FOURTH AVENUE | LIGHT HOUSE |
| 17 | 413 FOURTH AVENUE | RADIOLOGY ASSOC. |
| 18 | 417 FOURTH AVENUE | ALBANY FAMILY PRAC |
| 19 | 420 FOURTH AVENUE | DR. ERHARDT |
| 20 | 506 FOURTH AVENUE | |
| | | COMMUNITY HOSPICE |
| 21 | 416 FIFTH AVENUE | MARKETING DEPT. |
| 22 | 428 FIFTH AVENUE | |
| | | PARKING LOT |
| 23 | 813 NORTH MONROE | PARKING LOT |
| 23 | 815 NORTH MONROE | PARKING LOT |
| 7 | 901 NORTH MONROE | PARKING LOT |
| 24 | 903 NORTH MONROE | PARKING LOT |
| 25 | 907 NORTH MONROE | EMPTY LOT |
| 26 | 1003 NORTH MONROE | WOMENS HEALTH CNT |
| 20 | 1011 NORTH MONROE | TOTAL LIFE CENTE |
| 27 | 1106 NORTH MONROE | PARKING LOT |
| 28 | 1107 NORTH MONROE | PHYSICIAN SERVIC |
| | 1109 NORTH MONROE | |

| | | | |
|---|---|---|---|
| 30 | 809 | NORTH JEFFERSON | PARKING LOT |
| 31 | 902 | NORTH JEFFERSON | PARKING LOT |
| 31 | 904 | NORTH JEFFERSON | PARKING LOT |
| 31 | 906 | NORTH JEFFERSON | PARKING LOT |
| 32 | 907 | NORTH JEFFERSON | DR. THOMPSON |
| 31 | 908 | NORTH JEFFERSON | PARKING LOT |
| 33 | 910 | NORTH JEFFERSON | UNIT B |
| | | | UNIT C |
| | | | UNIT D |
| 34 | 104 | NORTH JEFFERSON | PARKING LOT |
| 35 | 800 | HINES ST. A & B | PARKING LOT |
| 36 | 802 | HINES ST. LT 27 | PARKING LOT |
| 37 | 404 | HODGES | SEARS WAREHOUSE |

38   910 North Madison Street

39   1009 North Monroe Street

40   527 Third Avenue

41   4A Fourth Avenue

## 405 FIRST AVENUE

**(1)**

All that tract or parcel of land lying and being in the City of Albany, Dougherty County, Georgia, and being a portion of Lots 27 and 28 of Hines Place Addition, according to the plat of that subdivision as recorded in Deed Book 10, Page 49, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, and being more particularly described as follows:

Beginning at the northeastern corner of Lot 27, which is also the northwestern corner of Lot 34 of the subdivision, run thence westerly along the northern line of Lot 27 for a distance of 60 feet to a point; run thence southerly across Lots 27 and 28 along the line parallel to the eastern lines of Lots 27 and 28 for a distance of 146 feet to a point on the southern line of Lot 28, the point also being on the northern line of First Avenue (formerly known as Fourth Avenue); run thence easterly along the southern line of Lot 28 for a distance of 60 feet to the southeastern corner of Lot 28, also being the southwestern corner of Lot 33; and run thence northerly along the eastern lines of Lots 28 and 27 for a distance of 146 feet to the point of beginning. The described property is the rear, or eastern, 60 feet of Lots 27 and 28 of Hines Place Addition and is known as 405 First Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

## 315 SECOND AVENUE

**(2)**

All that tract or parcel of land lying and being in the City of Albany, Dougherty County, Georgia, and being all of Lot 31 Arcadia or North Albany on Second Avenue and being more particularly described as follows:

Beginning at the southwest corner of said Lot 31, run thence north a distance of 200 feet along the west line of said Lot 31 to an alley; run thence east along the south side of said alley a distance of 70 feet; run thence south a distance of 200 feet to the north side of Second Avenue; run thence west along the north side of Second Avenue a distance of 70 feet to the point of beginning; said property being the west one-third of that tract of land conveyed by Mrs. Julius Pertiz to Herman S. Gerst by deed recorded in Deed Book 83, Page 98, Dougherty County land records. This property is known as 315 Second Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

## 317 and 319 SECOND AVENUE

**(3)**

All that tract or parcel of land lying and being in the City of Albany, Dougherty County, Georgia, and being more particularly described as follows:

Beginning at the point of intersection of the northern right-of-way line of Second Avenue and the eastern right-of-way line of North Jefferson Street 110.00 feet, run thence easterly along the northern line of Second Avenue to the point of beginning of the herein described tract; from the point of beginning, run northerly parallel to the eastern right-of-way line of a public alley; run thence easterly along the southern line of the alley 100.00

to a point; run thence southerly along the line parallel to the eastern right-of-way line of North Jefferson Street 200.00 feet to a point on the northern line of Second Avenue; and run thence westerly along the right-of-way 100.00 feet to the point of beginning. The property was acquired by Investors Enterprises, Inc. by a Warranty Deed from Mary Brooks Purvis, recorded in Deed Book 363, Page 517, and from Joel E. Rhodes by a Warranty Deed recorded in Deed Book 378, Page 234, both in the Dougherty County land records. The property is known as 317 and 319 Second Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

### 400 and 402 SECOND AVENUE

(4)

All that tract or parcel of land lying and being in the City of Albany, Dougherty County, Georgia, and being a part of Lot 36 of The Hines Place, according to a plat of the subdivision as recorded in Deed Book 10, Page 49, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, and being more particularly described as follows:

Beginning at the northeastern corner of Lot 36, the same being the southwestern corner of the intersection of Second Avenue and North Jefferson Street, and run thence in a westerly direction along the southern line of Second Avenue 150 feet to a point; run thence in a southerly direction on a line parallel to the western line of North Jefferson Street 83.5 feet to a point; run thence in an easterly direction on a line parallel to the southern line of Second Avenue 150 feet to a point on the western line of North Jefferson Street; and run thence northerly along the western line of North Jefferson Street 83.5 feet to the point of beginning. The described property is known as 402 Second Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

### 406, 410 and 414 SECOND AVENUE

(5)

All those tracts or parcels of land lying and being in the City of Albany, Dougherty County, Georgia, and being all of Lots 24, 25 and 26 of Hines Place, according to the plat of the subdivision as recorded in Deed Book 10, Page 49, in the office of the Clerk of the Superior Court of Dougherty County, Georgia. These tracts are known as 406, 410 and 414 Second Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

### 420 and 422 SECOND AVENUE

(6)

All those tracts or parcels of land lying and being in the City of Albany, Dougherty County, Georgia, and being parts of Lots 18 and 19 of The Hines Place, according to a map or plat of said subdivision as recorded in Deed Book 10, Page 49, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, and being more particularly described as follows:

### 420 SECOND AVENUE

TRACT I:

Beginning at the northeast corner of Lot 18, run thence south along the

side of Hines Avenue (formerly 3rd Avenue) for a distance of 78.6 feet to a point; run thence west 63 feet to a point; run thence north 78.6 feet to a point on the south side of Second Avenue; and run thence east along the south side of Second Avenue a distance of 63 feet to the point of beginning. This tract is known as 420 Second Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

## 422 SECOND AVENUE

TRACT II:

Begin at the northeast corner of said Lot 18 and run thence westerly along the south margin line of Second Avenue a distance of 63 feet to the point of beginning; continue thence westerly along the south margin line of said Second Avenue a distance of 52.5 feet to a point; run thence southerly on a line parallel with the east line of Lots 18 and 19 a distance of 140 feet to the south line of Lot 19; run thence easterly along the south line of Lot 19 a distance of 52.5 feet to a point; run thence northerly on a line parallel with the east line of said Lots 19 and 18 a distance of 140 feet to the point of beginning. This tract is known as 422 Second Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

## 503 SECOND AVENUE and 901 NORTH MONROE STREET

(7)

All that tract or parcel of land lying and being in the City of Albany, Dougherty County, Georgia, and being all of Lot 1 and the south one-half (1/2) of Lot 2 in Block 39 of Hilsman Heights Addition (also referred to as "Hilsman Heights"), according to the plat of the subdivision as recorded in Deed Book 19, Page 117, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, and being more particularly described as follows: Beginning at the northwestern corner of the intersection of Second Avenue and North Monroe Street, run thence northerly along the western line of North Monroe Street 78 feet to a point; run thence West 190 feet to a point on the eastern line of a 10 foot alley; run thence southerly along the eastern line of the alley 78 feet to the northern line of Second Avenue; and run thence easterly along the northern line of Second Avenue 190 feet to the point of beginning. The described property is known as 503 Second Avenue and 901 North Monroe Street according to the present system of numbering of streets in the City of Albany, Georgia.

## 308 THIRD AVENUE

(8)

All that tract or parcel of land lying and being in the City of Albany, Dougherty County, Georgia, and being more particularly described as follows:

All of Lot Number 30 in Block 2 of Arcadia Subdivision, according to the plat of the subdivision as recorded in Deed Book 8, Page 654, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, being a tract approximately one-half (1/2) acre in size, fronting 105 feet on Third Avenue and running southerly 200 feet to an alley. The described tract is known as 308 Third Avenue according to the present system of numbering of streets in the City of Albany, Georgia.

## 500 THIRD AVENUE

(9)

All that tract or parcel of land lying and being in the City of Albany and in Dougherty County, Georgia, and being more particularly described as Unit 2 of the Third Avenue Medical Condominium according to the plat of the condominium as recorded in Condominium Plat Book 1, Page 26, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, together with the right of ingress to and egress from the property and the right to use, for all proper purposes, in common with the other condominium owners, their heirs and assigns, all portions of the project designated by statute and the Declaration as common elements.

The property is conveyed subject to the covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney, and limitations on title created by the Georgia Condominium Act or set forth in the Declaration of Condominium dated May 11, 1984, recorded in Condominium Book 2, Page 716; Dougherty County Land Records, in the by-laws of Third Avenue Medical Condominium Association, Inc., as may be amended from time to time; the Lease Agreement between Hospital Authority of Albany-Dougherty County, Georgia and Michael H. Roberts M.D., et al., dated May 11, 1984, and recorded in Condominium Book 2, Page 696, said records, and in any other allied instrument referred to in any of the instruments aforesaid, and all such covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney and the limitations on title contained therein are incorporated in this deed by reference and shall constitute covenants running with the land, to the extent set forth in said documents and as provided by law, and all of which are accepted by Grantee as binding and to be binding on the Grantee, its successors and assigns.

Also conveyed herewith is a 10.72% undivided interest in Grantor's interest in the above-describe Lease Agreement.

## 500 THIRD AVENUE cont'd

(9a)

All that tract or parcel of land lying and being in the City of Albany and in Dougherty County, Georgia, and being more particularly described as Units 5, 6 and 7 of the Third Avenue Medical Condominium according to the plat of the condominium as recorded in Condominium Plat Book 1, Page 26, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, together with the right of ingress to and egress from the property and the right to use, for all proper purposes, in common with the other condominium owners, their heirs and assigns, all portions of the project designated by statute and the Declaration as common elements.

The property is conveyed subject to the covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney, and limitations on title created by the Georgia Condominium Act or set forth in the Declaration of Condominium dated May 11, 1984, recorded in Condominium Book 2, Page 716; Dougherty County Land Records, in the by-laws of Third Avenue Medical Condominium Association, Inc., as may be amended from time to time; the Lease Agreement between Hospital Authority of Albany-Dougherty County, Georgia and Michael H. Roberts, M.D., et al., dated May 11, 1984, and recorded in Condominium Book 2, Page 696, said records, and in any

allied instrument referred to in any of the instruments aforesaid, and all such covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney and the limitations on title contained therein are incorporated in this deed by reference and shall constitute covenants running with the land, to the extent set forth in said documents and as provided by law, and all of which are accepted by Grantee as binding and to be binding on the Grantee, its successors and assigns.

Also conveyed herewith is a 7.85% undivided interest in Grantor's interest in the above-described Lease Agreement.

## 500 THIRD AVENUE cont'd

**(9b)**

All that tract or parcel of land lying and being in the City of Albany and in Dougherty County, Georgia, and being more particularly described as Unit 6 of the Third Avenue Medical Condominium according to the plat of the condominium as recorded in Condominium Plat Book 1, Page 26, in the office of the Clerk of the Superior Court of Dougherty County, Georgia, together with the right of ingress to and egress from the property and the right to use, for all proper purposes, in common with the other condominium owners, their heirs and assigns, all portions of the project designated by statute and the Declaration as common elements.

The property is conveyed subject to the covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney and limitations on title created by the Georgia Condominium Act or set forth in the Declaration of Condominium dated May 11, 1984, recorded in Condominium Book 2, Page 716; Dougherty County Land Records, in the by-laws of Third Avenue Medical Condominium Association, Inc., as may be amended from time to time; the Lease Agreement between Hospital Authority of Albany-Dougherty County, Georgia and Michael H. Roberts M. D., et al., dated May 11, 1984, and recorded in Condominium Book 2, Page 696, said records, and in any other allied instrument referred to in any of the instruments aforesaid, and all such covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney and the limitations on title contained therein are incorporated in this deed by reference and shall constitute covenants running with the land, to the extent set forth in said documents and as provided by law, and all of which are accepted by Grantee as binding and to be binding on the Grantee, its successors and assigns.

Also conveyed herewith is a 7.85% undivided interest in Grantor's interest in the above-described Lease Agreement.

## 417 THIRD AVENUE

**(10)**

All that tract or parcel of land lying and being in the City of Albany, Dougherty County, Georgia, and being particularly described as that area of land bounded on the north by the southern right-of-way line of Fourth Avenue; bounded on the east by the western right-of-way line of North Jefferson Street; bounded on the south by the northern right-of-way line of Second Avenue; and bounded on the west by the eastern right-of-way line of North Monroe Street. EXCEPTED FROM THE DESCRIBED TRACT is that area in