# EXHIBIT A
# PART 5

PHOEBE PUTNEY MEMORIAL HOSPITAL

GUIDELINES FOR THE
DOUGHERTY COUNTY FINANCIAL ASSISTANCE PROGRAM


I.   **INTENT**

The intent of these guidelines is to provide all affected parties with definitions, interpretations, and standards for uniform administration of entitlement to treatment as a Dougherty County indigent patient.

II.  **DEFINITIONS**

The following definitions shall apply in these guidelines:

A.   "Indigent patient" means a patient who is a resident of Dougherty County and whose annual family income does not exceed 150% of the Federal poverty level as established by the United States Department of Health and Human Services for 1990 and subsequent years. In addition, "indigent patient" includes a patient whose hospital charges exceed 25% of the patient's annual family income. However, in no case shall a patient whose family income exceeds four (4) times 150% of the Federal poverty level for a family of four be considered an indigent patient.

B.   The medical care which the hospital shall provide to the indigent entitled to treatment shall consist of the same standard of medical care rendered to all other hospital patients, including food, general (but not special ordered by a physician) nursing care and supervision, semi-private (but not private unless ordered by a physician) rooms, use of operating rooms and facilities, and other usual hospital care and services. Medicine, drugs, and services of medical staff are included in medical care, and the necessity for and extent of medical treatment required for each patient shall be determined solely by the attending physicians in their medical judgment. The hospital shall only provide services which are medically necessary and are not elective procedures in nature.

C.   A patient must be a resident of Dougherty County six months to meet the residency requirements; however, if the patient can prove intent to remain a citizen of Dougherty County, this requirement will be waived.


Exhibit "A"

Evidence of intent may be supplied by one or more of the following:

1. If receiving food stamps, show evidence of signing up in Dougherty County.

2. If school is in session and family has children, evidence of enrollment.

3. Proof they are eligible to vote in Dougherty County.

4. Show telephone, gas, water, and light bill indicating current address in Dougherty County.

5. If renting, show evidence of rent receipt in Dougherty County.

6. If receiving Social Security check, show evidence of change of address.

7. Furnish the name, address and telephone number of two neighbors who will be willing to verify that the patient or family lives at the address given.

8. Have patient or family certify that they do live at a certain address in Dougherty County and it is their intention to live in Dougherty County as a permanent resident.

9. Other appropriate evidence of residency may be considered in addition to or in lieu of what is specifically listed above.

D. "Gross income" means the individual's federal adjusted gross income and includes income from wages, salaries, tips, etc.; interest and dividend income; unemployment compensation; and other taxable income.

## III. REQUIREMENTS FOR CONSIDERATION

A. Before any patient can be considered for Dougherty County assistance, the patient or responsible party must complete a determination of indigency worksheet.

B. Social Services will require disclosure of all circumstances concerning insurance, third party coverage, assets, liabilities, guarantors, and any other factors necessary. Guarantors generally will include, but are not limited to, members of the immediate family, relatives, friends, boyfriends, other individuals

2

involved in accidents or liability coverage or the
responsible party in case of pregnancy.

C.   If the responsible boyfriend of a pregnant woman is
known, the hospital must obtain his obligation to pay the
bill or the pregnant woman or family or the pregnant
woman must seek and obtain, if possible, a court order
for him to be responsible before any consideration can
be given for assistance.

D.   If the patient is eligible for any type of state or
federal program and has not applied for any assistance,
he/she must apply before any consideration can be given
for assistance.

E.   If a patient refuses to apply for assistance from a state
or federal program and we think he/she might be eligible,
he/she will not be considered for assistance.

IV.   INSTRUCTIONS AND PROCEDURES FOR COMPLETING A DETERMINATION OF
INDIGENCY

These instructions and procedures should be used in making
determinations of indigency under the Dougherty County
Financial Assistance Program.  The patient and/or responsible
party are required to provide the necessary information to
complete a determination.

A.   INCOME INFORMATION

Obtain from the applicant information on the patient's
family income for the twelve (12) months preceding the
determination of eligibility.  Use the definition of
income in the Federal Poverty Income Guidelines.  Food
stamps do not count as income.  Multiply the three (3)
months figure times four (4) and compare the result with
the twelve (12) months figure.  Use the lesser amount to
determine eligibility.

1.   Any reasonable method to verify income information
necessary to establish eligibility may be used.
Examples of verification are:

a.   W-2 withholding forms

b.   Pay stubs

c.   Income tax returns

d.   Forms approving or denying unemployment
compensation of workmen's compensation

3

e.   Oral verification of wage from employer

f.   Oral verification from public assistance agencies

g.   A witnessed statement signed by the patient or responsible party, such as provided for in Public Law 70-725, as amended, known as the Hill-Burton Act, except that such statement need not be obtained within 48 hours of the patient's admission to the hospital as required by the Hill-Burton Act.

h.   A Medicaid remittance voucher which reflects that the patient's Medicaid benefits for that Medicaid fiscal year have been exhausted.

B.   <u>DETERMINATION OF INDIGENCY</u>

The determination of the indigency of a patient shall be made based on the definition of an "indigent patient" under Section II. A. above.  See attachment 1 for the current federal poverty levels to be utilized in such determination of indigency.

DGC\Phoebe\039

4

## ATTACHMENT 1

| Family Size Poverty Level* | 1 Person ($6,280) | 2 Persons ($8,420) | 3 Persons ($10,560) | 4 Persons ($12,700) | 5 Persons ($14,840) | 6 Persons ($16,980) | 7 Persons ($19,120) | 8 Persons ($21,260) |
|---|---|---|---|---|---|---|---|---|
| 1990 | | | | | | | | |

* federal poverty level as effective 1990; add $2,140 for each additional family member

D&L\Phoebe\.018

## ATTACHMENT 1

| Family Size Poverty Level* | 1 Person ($6,280) | 2 Persons ($8,420) | 3 Persons ($10,560) | 4 Persons ($12,700) | 5 Persons ($14,840) | 6 Persons ($16,980) | 7 Persons ($19,120) | 8 Persons ($21,260) |
|---|---|---|---|---|---|---|---|---|
| 1990 | | | | | | | | |

* Federal poverty level as effective 1990; add $2,140 for each additional family member

bkl_phuette.038

EXHIBIT "E"

ARTICLES OF INCORPORATION OF TRANSFEREE

ARTICLES OF INCORPORATION
OF
PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.

## ARTICLE I

### Name

The name of the Corporation is Phoebe Putney Memorial Hospital, Inc.

## ARTICLE II

### Organization

The Corporation is organized pursuant to the Georgia Nonprofit Corporation Code.

## ARTICLE III

### Period of Duration

The period of duration of the Corporation shall be perpetual.

## ARTICLE IV

### Purposes

The Corporation is organized and shall be operated exclusively for charitable, scientific and educational purposes, including:

(a) To own, manage, control, operate, govern, reconstruct, repair and lease existing medical facilities, hospitals and related support facilities in Georgia; and to own, operate, construct, lease and joint venture other medical facilities, hospitals and related support facilities which may be constructed in Georgia.

(b) To establish, operate and/or joint venture hospitals, extended care facilities, ambulatory surgery facilities, clinics, teachings units and any other health care services for the purpose of furnishing medical, surgical and psychiatric aid, nursing, medical and psychiatric care, food and any other necessary care for those suffering from illness, disease, injuries or disabilities and to operate an emergency room or rooms in such hospitals, extended care facilities, ambulatory surgery facilities and clinics; and to lend or advance money to or otherwise invest in such hospitals, extended care facilities, clinics, teaching units and health care services.

(c) To carry on any education or other activities relating to the rendering of care to the sick and injured or to the promotion of the general health and welfare of the citizens of the State of Georgia and surrounding areas.

(d) To participate in any activity designed and carried on to promote the general health of the citizens of the State of Georgia and surrounding areas.

(e) To promote and carry on scientific research and educational activities related to the care of the sick and injured.

(f) To solicit and receive funds, gifts, endowments, donations, devises and bequests.

(g) To lease or purchase wherever located land or lands, building or buildings, and purchase and construct buildings for purposes in connection with the activities of the Corporation.

-2-

including, but not limited to, hospitals, doctors' offices, clinics, ambulatory surgical facilities, laboratories or any related medical activity.

(h) To exercise, without limitation, all the powers enumerated in the Georgia Nonprofit Corporation Code, as it now exists or is subsequently amended or superseded, and to do and perform such acts and to have such powers as shall be desirable and necessary in furtherance of any of the powers hereinabove enumerated which are not in derogation of the laws of the State of Georgia.

(i) To exercise any of the powers enumerated herein or in the Georgia Nonprofit Corporation Code, as it now exists or is subsequently amended or superseded, by the Corporation singly or by joint venture or partnership with any person or entity, whether or not said entity is for profit or not for profit, so long as the Corporation's participation in the joint venture or partnership is primarily in furtherance of the charitable, educational and scientific purposes for which the Corporation is organized.

(j) To form and own shares in affiliated or related corporations, whether said corporations are for profit or not for profit, so long as said formation and ownership is not inconsistent with the furtherance of the charitable, educational and scientific purposes for which the Corporation is organized.

-3-

(K) To conduct and provide such other programs, activities and services as are necessary, incident or pertaining to the foregoing purposes of the Corporation.

## ARTICLE V

### Election of Directors

The affairs of the Corporation shall be managed by the Board of Directors which shall exercise all of the powers of the Corporation except to the extent that any such powers are reserved to members, if any, of the Corporation in the Bylaws. The qualifications, minimum and maximum number and manner of election of the Directors shall be provided in the Bylaws of the Corporation.

## ARTICLE VI

### Initial Board of Directors

The initial Board of Directors shall consist of eleven (11) members, whose names and addresses are set forth below. Each member of the initial Board of Directors shall serve as a director for a term of the number of years appearing opposite his name or until his successor has been elected and has qualified.

-4-

| Director | Term |
|---|---|
| 1. Laurence Crimmins, M.D.<br>1111 Palmyra Road<br>Albany, Georgia | 4 years |
| 2. Willie D. Hampton<br>902 Dorsett Street<br>Albany, Georgia | 5 years |
| 3. John L. Brunson<br>801 Highland Avenue<br>Albany, Georgia | 5 years |
| 4. Dr. Billy C. Black<br>504 College Drive<br>Albany, Georgia | 5 years |
| 5. Lamar H. Moree, M.D.<br>2604 East Doublegate Drive<br>Albany, Georgia | During term as Chief of Medical Staff of Phoebe Putney Memorial Hospital |
| 6. William George, Jr., M.D.<br>5023 Gillionville Road<br>Albany, Georgia | 3 years |
| 7. Will Sims<br>6014 Old Dawson Road<br>Albany, Georgia | 4 years |
| 8. Wilhmenia Hall<br>512 Mercer Avenue<br>Albany, Georgia | 4 years |
| 9. Robert D. Jones<br>2512 East Alberson Drive<br>Albany, Georgia | Earlier of 3 years or election of successor |
| 10. Edwin J. Ollie<br>2530 Pheasant Drive<br>Albany, Georgia | Earlier of 3 years or election of successor |
| 11. Joel Wernick<br>417 Byron Plantation Road<br>Albany, Georgia | During tenure as President, Chief Executive Officer of the Corporation |

-5-

The Board of Directors of the Corporation shall at all times include the Chief Executive Officer of the Corporation and the Chief of the Medical Staff of Phoebe Putney Memorial Hospital.

The Board of Directors of the Corporation shall at all times include at least three physician members who are members of the Medical Staff of Phoebe Putney Memorial Hospital.

In addition, the Chief of Medicine and Chief of Surgery of Phoebe Putney Memorial Hospital shall serve as ex-officio, non-voting members of the Board of Directors. Additional ex-officio members of the Board of Directors may be designated as set forth in the Bylaws of the Corporation.

## ARTICLE VII

### Membership in the Corporation

The members of the Corporation shall be the Board of Directors who shall be the sole voting members of the Corporation.

The Bylaws may provide for one or more classes of other members who shall be admitted in such manner and who shall have such rights and privileges as are set forth in the Bylaws but who shall not have the right to vote.

## ARTICLE VIII

### Powers

The Corporation shall have all powers enumerated herein and in the Georgia Nonprofit Corporation Code.

-6-

## ARTICLE IX

### Restrictions

The Corporation is organized exclusively for charitable, educational and scientific purposes, as a nonprofit corporation, within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), and its activities shall be conducted for such purposes in such a manner that no part of its net earnings shall inure to the benefit of any member, director, officer or individual.  In addition, the Corporation shall be authorized to exercise the powers permitted nonprofit corporations under the Georgia Nonprofit Corporation Code; provided, however, that the Corporation while exercising any one or more powers shall do so in furtherance of the charitable, educational and scientific purposes for which it has been organized as described in Section 501(c)(3) of the Code.  All of the assets and earnings of the Corporation shall be used exclusively for the charitable, educational and scientific purposes hereinabove set forth, including the payment of expenses incidental thereto, and all of the powers of the Corporation shall be exercised exclusively for such purposes.  No part of the Corporation's activities shall inure to the benefit of any individual, and no substantial part of its activities shall be for the carrying on of a program of propaganda or for influencing legislation, nor shall it participate in any political campaign on behalf of any candidate for public office. The Corporation shall not carry on any activities not permitted to

-7-

be carried on by an organization exempt from federal income taxation under Section 501(c)(3) of the Code, or any organization to which contributions are deductible under Section 170(c)(2) of the Code.

## ARTICLE X

### Dissolution

Upon dissolution of the Corporation, all of its assets remaining after the payment of all costs and expenses of such dissolution, and after adequate provision has been made for the discharge or assumption of its liabilities, shall be distributed to the Hospital Authority of Albany-Dougherty County, Georgia (the "Authority"), which is a public body corporate and politic and an instrumentality of the State of Georgia, to be used exclusively for a public purpose, and none of the assets will be distributed upon such dissolution to any member, officer or director of the Corporation. If the Corporation enters into an agreement with the Authority pursuant to which the Authority leases, transfers and assigns to the Corporation all of the assets, operations and liabilities of Phoebe Putney Memorial Hospital (the "Hospital"), then upon the termination of such lease, transfer or assignment agreement, or upon termination of any renewal or extension thereof, all of the assets of the Corporation (after adequate provision is made for the discharge or assumption of the Corporation's liabilities) shall be distributed to the Authority to be used

-8-

exclusively for a public purpose, and the Corporation shall be dissolved, and none of the assets will be distributed upon such termination to any member, officer or director of the Corporation. In the event the Authority is not then in existence or is for any reason unable to accept title to such assets, then all of the net assets of the Corporation shall in that event be distributed exclusively for the purposes of the Corporation, in such manner, and to such organization or organizations, organized and operated exclusively for charitable, scientific and educational purposes, as shall at the time qualify as an exempt organization under section 501(c)(3) of the Internal Revenue Code of 1986, as amended (or the corresponding provision of any future United States internal revenue law), as the Board of Directors shall determine. Any of such assets not so disposed of shall be disposed of by the Superior Court of Dougherty County, exclusively for such purposes and to such organization or organizations, as such court shall determine. The Authority shall have the authority to compel the Corporation's compliance with this Article.


## ARTICLE XI

### Registered Office and Agent

The initial registered office of the Corporation shall be at 417 Third Avenue, Albany, Dougherty County, Georgia 31703. The initial registered agent at such address shall be Joel Wernick.


-9-

ARTICLE XII

Incorporator

The name and address of the Incorporator is:

John H. Parker, Jr.
Parker, Hudson, Rainer & Dobbs
1200 Carnegie Building
133 Carnegie Way
Atlanta, Georgia  30303


ARTICLE XIII

Amendments

These Articles of Incorporation may be amended at any time and from time to time by the affirmative vote of a majority of all of the Directors then in office.


IN WITNESS WHEREOF, the undersigned has executed these Articles of Incorporation this ___ day of December, 1990.


_____
Incorporator


DGC\Phoebe\013


-10-

EXHIBIT "F"

<u>BYLAWS OF TRANSFEREE</u>

BYLAWS
OF
PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.
A GEORGIA NONPROFIT CORPORATION

## ARTICLE I

### Membership

The Members of Phoebe Putney Memorial Hospital, Inc., a Georgia nonprofit corporation under the Georgia Nonprofit Corporation Code (the "Corporation"), shall be those persons who, at any time of determination of the Members of the Corporation, are the members of the Board of Directors of the Corporation.

## ARTICLE II

### Board of Directors

**Section 1. Initial Board.** The initial Board of Directors of the Corporation shall be as set out in the Articles of Incorporation.

**Section 2. Vacancies.** All future vacancies on the Board of Directors (whether due to expiration of the term of a Director, death, resignation, removal or otherwise), subsequent to the appointment of the first eleven (11) Director Board in the Articles of Incorporation, shall be filled by majority vote of the remaining Directors.

Members elected to fill vacancies on the Board due to death, removal, or resignation shall hold office for the unexpired portion of the term.

**Section 3. Composition of Board.** The property, affairs, business and operation of the Corporation shall be managed by a Board of Directors, consisting of eleven (11) Directors. The initial members of the Board of Directors and their respective terms of office shall be set forth in the Articles of Incorporation.

Subsequent to the designation of the eleven (11) Director Board and the terms of office as set forth in the Articles of Incorporation, as updated by resolutions of the Board of Directors to fill any vacancies prior to the "Commencement Date" as defined in that certain Lease and Transfer Agreement dated as of December 11, 1990 by and between the Corporation and the Hospital Authority of Albany-Dougherty County, Georgia, all subsequent Directors shall serve for a term of five (5) years and until their respective successors are elected and qualified. Directors may serve for unlimited successive terms.

No person shall be eligible to serve as a Director who has been convicted of a felony or any crime involving moral turpitude. No Director's spouse shall serve at the same time on the Board of

Directors, nor shall any blood relative of a Director (closer than first cousin) serve at the same time on the Board of Directors.

Directors must exhibit the desire, time, interest and ability to support the Corporation and shall be selected based upon interest in and loyalty to the objectives and purposes of the Corporation as set forth in the Articles of Incorporation.

The Board of Directors shall carry out the purposes of the Corporation in compliance with the Articles of Incorporation and the Bylaws of the Corporation.

**Section 4. Ex-Officio Board Members.** The Chief of Medicine and the Chief of Surgery of the Medical Staff of Phoebe Putney Memorial Hospital, Albany, Dougherty County, Georgia (the "Hospital") shall serve as ex-officio members of the Board of Directors. In addition, the following persons are named as ex-officio members of the Board of Directors, until any such time that the members of the Board of Directors are replaced as the members of the Corporation: W. Harry Willson, Anna Louise McCormack, Elmer H. Bridges, Nathaniel Cross, and Bernard P. Scoggins, M.D. No ex-officio member of the Board of Directors shall have a vote, and no ex-officio member of the Board of Directors shall be counted as a Director for purposes of Article II, Section 3 hereof.

**Section 5. Conflicts of Interest.** Each Director and each ex-officio member of the Board shall file a "No Conflict of Interest and Loyalty" statement with the Chairman of the Board. Said statement shall certify that the Director or ex-officio member of the Board will not use his or her position on the Board for financial, political, or other self-interest that could be interpreted by the Board or the Corporation as not being in its best interests, and shall include a pledge that the Director or ex-officio member of the Board will maintain unselfish loyalty to the Board and will disclose to the entire Board the full particulars of his or her financial interest in any matter under consideration by the Board. If, in the view of the Director or ex-officio member of the Board or of the Board, such interest or any other interest may interfere with the exercise of his or her unselfish loyalty to the Corporation or may pose a conflict between duty and self-interest, the Director or ex-officio member of the Board shall neither vote on the issue nor participate in the discussion, but shall leave the room and the minutes shall so reflect that he or she left the room and neither voted nor participated in discussion on the issue (nevertheless his or her presence may be counted for purposes of establishing a quorum).

**Section 6. Resignation; Removal.** Any Director may resign at any time by giving written notice to the President/Chief Executive Officer of the Corporation or Chairman of the Board, and giving a copy of said notice to the Secretary of the Corporation. Such resignation, which may or may not be made contingent on formal acceptance, shall take effect on the date of receipt or at any later time specified therein.

Any director may be removed for cause by a vote of at least two-thirds (2/3) of the members of the Board of Directors. Any Director sought to be removed shall be given reasonable notice and, in the case of a Director removed for cause, an opportunity to be heard regarding the cause or causes stipulated for his removal.

## ARTICLE III

### Officers of the Board

Section 1. Election. The officers of the Board of Directors shall be a Chairman and a Vice Chairman, each of whom shall be elected by the Board of Directors from its own membership for a one-year term of office at the annual meeting of the Board of Directors. Officers of the Board may serve unlimited terms in the same office.

Section 2. Duties. The Chairman shall preside at all meetings of the Board of Directors. Except as otherwise expressly provided herein, the Chairman shall appoint all committee members and all committee chairmen. He or she shall have such other duties and responsibilities hereinafter set forth in these Bylaws and delegated by the Board from time to time.

The Vice Chairman shall act in the absence of the Chairman, and when so acting shall have all the authority and powers of the Chairman. The Vice Chairman shall perform such other duties as from time to time are assigned to him by the Chairman.

Section 3. Successors. Each officer shall deliver to his or her successor in office all official material of the Corporation not later than ten (10) days following the election of his or her successor.

## ARTICLE IV

### Regular and Special Meetings of the Board

Section 1. Regular Meetings. The Board of Directors shall hold a regular monthly meeting at the Hospital on the first Wednesday of each month, unless the Board of Directors shall otherwise designate another date for its regular monthly meetings.

Section 2. Special Meetings. Special meetings may be called by the Chairman and shall be called at the written request of at least one-third of the members of the Board of Directors. Written notice of special meetings shall be considered duly given if mailed to each member of the Board at least three days before such special meeting or if personally delivered to the home or office of each Director at least 24 hours before such special meeting. The notice shall state the business or the transaction for which the meeting has been called and no other business shall be transacted at such meeting unless by unanimous consent of the members of the Board present and participating. An emergency meeting of the Board of

Directors may be called without the necessity of any notice so long as the notice provisions are waived by at least two-thirds of the members of the Board of Directors.

Section 3. Quorum. A majority of the Board of Directors shall constitute a quorum for the transaction of business, and an act of the majority of the Directors present and voting at a meeting at which a quorum is present shall be the official act of the Board.

Section 4. Attendance. The members of the Board of Directors are expected to attend the regular monthly meetings of the Board. Any member, other than an ex-officio member, who shall fail to attend three regular meetings of the Board during the fiscal year without the Board excusing such absence shall create a vacancy of that person's membership on the Board.

Section 5. Cancellation or Change of Regular Meetings. The Board of Directors, by a vote of two-thirds of the members present, may dispense with or alter the date of a monthly meeting at the monthly meeting preceding the monthly meeting to be dispensed with or altered.

Section 6. Action by Written Consent. Any action required or permitted to be taken by the Board under any provision of law, the Articles of Incorporation, or these Bylaws may be taken without a meeting of the Board by the collective consent of all the Directors, in writing, setting forth the action so taken. Such written consents shall be filed with the proceedings of the Board and shall be made available for review at the next regular meeting of the Board of Directors. Such action by written consent shall have the same force and effect as the unanimous vote of the Directors. Any certificate or other document filed under law relating to action so taken shall state that the action was taken by unanimous written consent of the Board without a meeting and that the Bylaws authorized the Directors to so act.

Section 7. Telephonic Participation in Meetings. Members of the Board of Directors or any committee may participate in any meeting of the Board of Directors or Board Committee by means of a conference telephone or similar communication equipment by which means all persons participating in the meeting can hear one another at the same time. Participation with proper notice by such means shall constitute presence in person at a meeting.

Section 8. Voting. Each Director, except ex-officio Directors without a vote, shall be entitled to one vote on any matter before the Board. Voting by proxy shall not be permitted.

Section 9. Proper Officers. For the purposes of these Bylaws, the Chairman of the Board, the Vice Chairman of the Board and the President/Chief Executive Officer of the Corporation shall each be deemed a "proper officer". Whenever any resolution or action adopted by the Board or Board Committee shall authorize the "proper officer" of the Corporation to execute any note or other document or take any other action or shall generally authorize any

4

action without specifying the officer or officers authorized to take such action, any proper officer acting alone and without counter signatures may take such action on behalf of the Corporation.

## ARTICLE V

### Committees of the Board of Directors

**Section 1.** **General Provisions.** Committees of the Board of Directors shall be standing or special. The following shall be Standing Committees:

    (a)  Executive Committee;
    (b)  Finance and Personnel Committee;
    (c)  Facilities Committee;
    (d)  Professional Affairs Committee; and
    (e)  Strategic Planning Committee.

Except as herein otherwise provided, the Chairman of the Board of Directors shall appoint the members of said committees, and the chairmen thereof. Each committee chairman and each committee member shall serve in such capacity for a one-year period or until the next committee appointments are made by the Chairman of the Board.

All committees shall be subject to the control and general supervision of the Board. Each committee shall meet as required and as set by policy of the Board.

Special ad hoc committees may be appointed for any special tasks, or as circumstances may warrant, at the discretion of the Board or the Chairman of the Board. They shall limit their activities to that task for which the committee was organized and will have no authority to act except as specifically conferred upon them by the Board or Chairman of the Board.

One-half of the committee members shall constitute a quorum for the carrying out of the committee functions and actions. Any vacancy on the committee may be filled by the Chairman of the Board.

The Chairman of the Board and the President/Chief Executive Officer of the Corporation shall each be an ex-officio member of all committees without vote except for those committees where the Chairman of the Board and/or the President/Chief Executive Officer of the Corporation is (are) required by these Bylaws to be a member in which case each such party shall have a vote.

**Section 2.** **Attendance.** Any committee chairman or committee member, except an ex-officio committee member, who fails to attend three committee meetings during the fiscal year without the committee excusing such absence shall create a vacancy of that person's membership on the committee.

Section 3. Committee Chairman's Duties. The chairman of each committee, who shall be a member of the Board of Directors, shall have the following general duties, responsibilities and powers, together with such others as may be designated from time to time by the Board of Directors:

(a) Coordinate committee activities through the designated management liaison;

(b) Prepare an agenda for each committee meeting;

(c) Preside or designate an alternate to preside at committee meetings;

(d) Provide for maintenance of official records of the committee and appoint a secretary of the committee for that purpose;

(e) Report committee activities and formal recommendations to the Board at its regular meetings;

(f) Delegate specific responsibilities among committee members; and

(g) Appoint members to subcommittees as necessary.

Section 4. Executive Committee. The Executive Committee shall consist of the Chairman of the Board, the President/Chief Executive Officer of the Corporation, and three other members of the Board of Directors appointed by the Chairman of the Board of Directors.

The Executive Committee shall have the power to transact all regular business of the Corporation, and shall have and exercise all the powers of the Board during the interim between the regular monthly meetings of the Board of Directors, provided that any action taken shall not conflict with the policies established by the Board. The Executive Committee shall also have the duty and responsibility to develop and recommend to the Board necessary or desirable policies relating to the organization and operation of the Corporation. The Executive Committee shall from time to time: (i) formulate and recommend to the Board policies designed to promote and maintain the good will of patients in the Hospital; (ii) promote and maintain general public interest in and support of the Corporation; and (iii) develop and maintain adequate fund raising support in the community.

Section 5. Finance and Personnel Committee. The Finance and Personnel Committee shall consist of a minimum of three members of the Board of Directors appointed by the Chairman of the Board of Directors.

The Finance and Personnel Committee shall be responsible for devising ways and means to secure funds for the support of the Corporation, shall attend to all financial interests of the Corporation and shall report its actions to the Board of Directors.

6

The Finance and Personnel Committee shall examine the Corporation's monthly financial report and require an explanation from the President/ Chief Executive Officer or the Treasurer/Chief Financial Officer if there has been any material variation from the budget.

Prior to the beginning of the fiscal year, the Finance and Personnel Committee shall cause to be prepared a detailed budget for the operation of the Corporation for the ensuing fiscal year. This budget shall show the estimated revenue and estimated expenditures and shall be submitted for discussion and approval to the Board at its next regular monthly meeting.

The Finance and Personnel Committee shall recommend to the Board of Directors an independent firm of certified public accountants to conduct an annual audit, shall receive the audit, and shall report its findings to the Board.

The Finance and Personnel Committee shall be responsible for the management of all endowment and trust funds belonging to the Corporation.

The Finance and Personnel Committee shall be responsible for the formulation, budgeting and implementation of the Hospital's policies regarding provision of medical services to indigent residents of Doughtery County.

The Finance and Personnel Committee shall be responsible for the formulation of the personnel policies of the Corporation. The Finance and Personnel Committee shall recommend salaries and wage ranges and shall study workers' compensation, employment practices, fringe benefits, employee health services, human relations, pension plans and policies relative to personnel who work for the Corporation. The Finance and Personnel Committee shall work with the President/Chief Executive Officer of the Corporation in evaluating such personnel policies. In the event the Corporation shall become involved in collective bargaining, the Finance and Personnel Committee shall study the collective bargaining agreement and may serve as the negotiating party in collective bargaining agreements.

Section 6. Facilities Committee. The Facilities Committee shall consist of a minimum of three members of the Board of Directors appointed by the Chairman of the Board of Directors.

The Facilities Committee shall keep the Board of Directors informed as to the condition of the physical plant of the Hospital including all real and personal property of the Hospital. The Facilities Committee shall also study and recommend policies concerning major Hospital additions, alternatives, repairs and maintenance.

Section 7. Professional Affairs Committee. The Professional Affairs Committee shall consist of at least three members and shall include such members of the Board of Directors and such members of

7