# EXHIBIT C
# PART 1

# AGREEMENT

THIS AGREEMENT (the "Agreement") is made and entered into this 1st day of January, 2003 by and between, Public Employees Group Health Plan (PEGHP) for the City of Albany/Dougherty County/Water Gas & Light Authority a Georgia for nonprofit company, ("Employer"), Phoebe Health Partners (PHP), a Georgia nonprofit corporation.

# W I T N E S S E T H:

WHEREAS, Employer desires to promote and obtain the quality and efficient delivery of health care services for participants in its health care plan (the "Health Care Plan");

WHEREAS, PHP is organized for the purpose of arranging the delivery of health care services at a reasonable cost;

WHEREAS, Employer wishes to contract with PHP to arrange the delivery of health care services to eligible employees of Employer and their eligible dependents;

WHEREAS, PHP has entered into an agreement with Phoebe Putney Memorial Hospital, Inc. (the "Hospital Provider") to provide certain hospital and ancillary services in connection with this and other similar contracts;

WHEREAS, PHP has established its physician panel (the "Physician Providers") which consists of physicians duly licensed by the State of Georgia as Medical Doctors and currently holding and intending to continue appropriate privileges at the Hospital Provider; and

WHEREAS, Employer and PHP desire to enter into an agreement whereby PHP will arrange for the Hospital Provider and Physician Providers (collectively, the "Providers" and singularly, a "Provider") to provide health care services to participants in the Health Care Plan;

NOW, THEREFORE, in consideration of the premises, the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

Exhibit C 1 of 35

ARTICLE I

RESPONSIBILITIES OF THE PARTIES

1.01    Responsibilities of Employer .

(a) Employer shall promote the delivery of health care services to Participants in its Health Care Plan by encouraging utilization of the services of Providers in accordance with the terms and conditions set forth in this Agreement. "Participant" shall mean any person covered under Employer's Health Care Plan who receives health care services from the Providers as arranged by the terms of this Agreement.

(b) Employer further agrees to:

(i) make payment for covered services which are medically necessary and rendered to a Participant in accordance with the Health Care Plan sponsored by Employer upon receipt of a "clean and complete" bill, as defined in Section 1.02(c), from the Provider, but in no event later than thirty (30) days after receiving bills from the Provider unless Employer or its designated representative provides PHP or the Provider with notification of reason for such non-payment within this time period; provided, however, that if a "clean and complete" bill is not paid within thirty (30) days of submission, all discounts provided for through this Agreement will be forfeited and Employer shall be responsible to pay Provider one hundred percent (100%) of billed charges for all services provided under this Agreement;

(ii) provide and communicate to Participants incentives in its Health Care Plan for Participants to use the services of Providers, including the services arranged by this Agreement;

(iii) provide each Participant with an identification card with the Phoebe Health Partners logo printed on it, must have phone numbers for verifying patient eligibility, pre-certification, and benefits; in order for Participant to receive the discounts afforded under this Agreement the Phoebe Health Partners logo must be affixed to the Participants identification card;

(iv) identify and provide a contact person or designated third party who will be available to Providers for purposes of problem resolution and confirmation or denial of eligibility and benefit coverage;

(v) keep confidential all information provided by PHP and Providers hereunder and to indemnify PHP and Providers against any and all actions, claims, demands, losses, liabilities and expenses (including, without limitation, reasonable attorneys' fees) caused by or arising out of the release of any information to the Employer and any disclosure of information or alleged breach of confidentiality resulting from Employer's acts or omissions with respect thereto;

In order to rec'd discount- pd discount
performance
3 yr Contract - 90 day

2

Exhibit C 2 of 35

(vi) provide to PHP a copy of a Summary Plan Description (Attachment 1) relating to Employer's Health Care Plan;

(vii) provide proof of Participant authorization, as needed for PHP to use patient information in PHP quality assurance ("QA"), quality improvement ("QI") and utilization management ("UM") programs;

(viii) request evaluation and assistance, and the report of any finding, of the PHP QI/UM Coordinator or Medical Director, prior to denying any claim identified through a utilization or quality review process;

(ix) review with PHP, claim information and other data reports at Employer's discretion; and

(x) provide to PHP quarterly statements, due by the 20th day of the first month of each subsequent quarter, with a full accounting of utilization of the Providers by Participants, including the amount of billings and the amounts reimbursed. Total Claims paid aggregate fee

(xi) provide PHP a monthly network access fee in consideration of PHP's administrative duties in connection with managing the PHP network. The network access fee shall be set at $2.50 per covered employee per month and payable by the 5th of each month as set forth in Attachment 2 (Network Access Fee).

(xii) agree not to contract with other health care providers or other health care provider network organizations which are located within a sixty (60) mile radius of Albany, Georgia,(excluding Tift County, Tifton Georgia) or which serve Members that reside within a sixty (60) mile radius of Albany,Georgia, (excluding Tift County, Tifton Georgia). Employer may cover charges made by non-network providers at in-network benefit levels for services that are not available at Phoebe Putney Memorial Hospital or provided by PHP network of providers.

1.02  Responsibilities of PHP and Providers

PHP shall arrange for Providers and all other entities used by Providers to provide services to Participants on a non-exclusive basis as follows:

(a) A Provider shall perform all those services that in the Provider's judgment are required by a Participant and which the Provider is legally permitted to render and is qualified as a Provider to render. Providers shall use their best efforts to ensure that patients receive prompt comprehensive quality health care services, with continuity of care on a no less favorable basis than any other patient of Provider.

PHP and Providers agree that Providers shall abide by applicable policies and procedures as required by Employer and which are noted by reference in this Agreement.

3

Exhibit C 3 of 35

(b) Physician Providers shall have in place a coverage arrangement with another Physician Provider. When such a replacement provider is not available for such an arrangement, such Provider agrees to have a coverage arrangement available at all times with another qualified physician of an appropriate specialty who will abide by the terms of this Agreement.

(c) Providers shall bill through the third party administrator, designated in writing by Employer, for all services rendered to Participants as arranged by the terms of this Agreement. To be deemed payable, Provider billings must be submitted to Employer's designated third party administrator within 180 days after treatment of the Participant. Employer's designated third party administrator will accept interim billing from a Provider in the event a Participant has a hospital stay requiring the Provider's services for a period of 30 days or more. Claims are subject to review for inappropriate billing practices and appropriateness of treatment. Billings shall be submitted in the HCFA 1500 format, and shall include the following to be considered a "clean and complete" bill:

    (i)      name of actual professional providing treatment;

    (ii)     identifying patient information;

    (iii)    diagnosis in the ICD Version 9 format;

    (iv)    date of service;

    (v)     place of service; and

    (vi)    An itemized record of services provided in the current CPT format, with billing shown by CPT code.

(d) Providers agree to accept as payment in full from Employer and from Participants, the amounts paid in accordance with Employer's Health Care Plan, the combination of which shall not exceed the terms described in Attachment 3 (Hospital Fee Schedules for Covered Services) and in Attachment 4 (Physician Fee Schedules for Covered Services) hereto. Providers agree that in no event, except as provided in the following sentence shall Providers bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from or have any recourse against Participants or persons acting on any Participant's behalf for Providers' services. This provision shall not prohibit Providers' from (i) collection of deductibles or co-payments, (ii) collection of payment for services not covered or specifically excluded under Employer's Health Care Plan, or (iii) collection of payment for any services previously covered which are delivered to a Participant after such service is no longer covered. PHP and Providers agree that the provisions of this paragraph shall survive termination of this Agreement regardless of the cause of termination of this Agreement and that such provisions hereby supersede any oral or written Agreement previously entered into between PHP, a Provider and any Participant or person acting on such Participant's behalf.

4

Exhibit C 4 of 35

(e) PHP agrees to permit its name and the names of the Providers, addresses, telephone numbers and specialties to be included in any communication that may be prepared by Employer for distribution to Participants. PHP agrees to notify Employer promptly of any change in the name, address or telephone number of any of the Providers.

(f) PHP and Providers agree to cooperate reasonably with Employer or such individual or organization as Employer designates in writing in conducting a program of utilization and quality review, including pre-confinement certification, concurrent, retrospective, and on-site reviews, case management, and claims review for services provided to Participants.

(g) PHP and Providers agree to cooperate reasonably in the effective implementation of any provisions of Employer's policies regarding coordination of benefits and other third party claims. PHP and Providers agree that Providers shall bill known and appropriate third party payors for services provided to Participants. PHP and Providers agree that Providers shall reimburse Employer in the event that duplicate payments are received from such third party payors and paid for by Employer, or to assign to Employer all payments owed by such payors and to execute any documents and take all steps that reasonably may be required or appropriate to permit Employer to bill and process forms for any third party payor on Provider's behalf or to bill such payors directly as determined by Employer.

(h) PHP and Providers agree to provide Employer with complete information on services rendered to Participants in accordance with Section 1.02(i).

(i) PHP and Providers agree that Providers shall make reasonable efforts, in accordance with federal, state, and local laws as well as within generally accepted guidelines of patient's rights to privacy and the confidentiality of medical records, to cooperate with Employer regarding Employer's efforts to obtain the authorization of each patient who is a Participant to release and provide to Employer such data from the Provider's medical records as may be necessary to permit Employer to pay and audit claims and conduct utilization review.

(j) PHP and Providers agree to maintain patient privacy and confidentiality of patient care information in accordance with state and federal laws and to indemnify Employer against any and all actions, claims, demands, losses, liability and expenses (including reasonable attorneys' fees) caused by or arising out of any disclosure of information or alleged breach of patient privacy or confidentiality resulting solely and directly from PHP or Provider acts or omissions with respect thereto.

(k) PHP and Providers agree that Providers shall, subject to all applicable federal and state laws, regulations and rules, maintain, and Employer or its designee shall have access to and the right to make copies of, such patient records as are required by Employer:

5

Exhibit C 5 of 35

(i)     to administer the Health Care Plan, including, but not limited to its claims payment, utilization, quality assurance, grievance, coordination of benefits and subrogation activities; and,

(ii)    to comply with any audit or disclosure requirements.

(l) PHP agrees to identify and provide its Medical Director and QI/UM Coordinator as contact persons who will be available to Employer and the plan administrator or Employer's designee to discuss claims payment, QI/UM grievances, subrogation and other issues arising from administration of Employer's Health Care Plan.

(m) PHP shall identify and provide its Medical Director and QI/UM Coordinator as contact persons who will be available to Employer, its designee and to Participants to discuss quality assurance or utilization review grievances that may arise from Provider services to Participants.

(n) PHP providers shall meet minimal credentialing standards as established by the Board of PHP.

1.03  <u>Insurance</u>

PHP shall obtain and maintain, during the term of this Agreement at the PHP's sole cost and expense, general liability and professional liability insurance which shall insure PHP and its employees against claims, actions, judgments, liabilities, losses, damages, costs, and obligations (including attorneys' fees), which arise out of or are attributable to any act or omission of PHP or any of its employees. The amounts and extent of such liability insurance coverage shall be not less than the amounts required by applicable state law and are minimally specified as at least $3,000,000 in the annual aggregate and at least $1,000,000 per incident.

ARTICLE II

TERM AND TERMINATION

2.01  <u>Term of Agreement</u>

This Agreement shall be in effect <u>for three years from</u> January 1, 2003 through December 31, 2006 and shall automatically renew for successive periods of twelve months beginning January 1, 2007. However either party may terminate this Agreement at any time by giving written notice to the other party not less than ninety (90) days before the date of termination specified in such notice.

6

Exhibit C 6 of 35

2.02 <u>Automatic Termination</u>

This Agreement shall automatically terminate upon the occurrence of any of the following events:

(a) Employer or PHP applies for or consents to the appointment of a receiver, trustee, or liquidator of all or a substantial part of its assets, files a voluntary petition in bankruptcy, or files a petition or an answer seeking reorganization;

(b) Falsification of any relevant documents pertaining to this Agreement; or

(c) Failure of PHP to maintain the level of liability insurance coverage specified in Section 1.03 herein.

In addition, during the term of this Agreement both the hospital services component and the physician services component of this Agreement must be in place and active in order for this Agreement to remain effective. If Employer ceases to utilize either the hospital services or the physician services provided under this Agreement as reflected on the utilization statements described in Section 1.01(b)(x) herein, PHP shall have the right to terminate this Agreement immediately by providing written notification of such termination to Employer.

2.03 <u>Termination for Cause</u>

Employer and PHP shall have the right to terminate this Agreement by giving written notice to the other party not less than 30 days before the date of termination specified in the notice, if any of the following events occur:

(a) Either party fails to abide by, comply and cooperate with the utilization review standards and guidelines established by Employer as then currently in effect, which standards and guidelines are attached to this Agreement as <u>Attachment 5</u>;

(b) Either party fails prospectively to abide by, comply and cooperate with substantial changes in Employer's Health Care Plan which may be established and shall be duly reported to PHP in writing at least 90 days before the effective date of any such changes (a summary of any such changes shall be added to Attachment 1 hereto);

(c) Either party fails to comply and cooperate with such quality management programs as may be jointly agreed upon by PHP and Employer;

(d) Either party fails to abide by all financial terms agreed upon as part of this Agreement and the Attachments; or

7

Exhibit C 7 of 35

(e) Any service (i.e., medical specialty) provided at any time by PHP pursuant to this Agreement becomes unavailable and is not replaced by PHP within a reasonable period of time as requested by Employer.

2.04  Rights Upon Termination

(a)  In the event of termination of this Agreement for any of the reasons set forth in this Article II, the rights of each party shall cease; provided, however, that Providers shall continue to provide services to Participants who are currently under care with Providers at contract rates for thirty (30) days.

Employer's obligation to pay Providers in accordance with the terms of this Agreement for all Provider services provided to Participants prior to the termination date of this Agreement or subsequent to such date pursuant to the terms of this Section 2.04 shall survive such termination. Thereafter, Employer shall not be entitled to any special payment terms as called for by Attachments 3 and 4 of this Agreement.

(b)  In the event of termination of this Agreement, the Provider shall transfer the Participant's medical records to another provider specified by the Participant at a cost to the Participant not to exceed $0.25 per page.

2.05  Expulsion of Providers

PHP agrees to expel a Provider from this Agreement upon the occurrence of any of the following events which is known to PHP:

(a) Revocation of Provider's licensure or privileges at the Hospital Provider;

(b) Conviction of Provider for committing a felony; or

(c) Falsification by the Provider of any relevant documents pertaining to this Agreement, including, but not limited to, billing, patient records and Provider's application with PHP.

ARTICLE III

GENERAL

3.01  Indemnification

PHP and Providers agree to accept and be responsible for their own acts or omissions, in the rendering of health care services or in the professional practice of medicine or in the general conduct of their businesses, as well as those acts or omissions of their employees, and nothing in this contract shall be interpreted or construed to place any such responsibility for such acts or

8

Exhibit C 8 of 35

omissions onto the Employer. Providers are not the agents or employees of PHP, and PHP is not responsible for the acts or omissions of any Provider.

Employer similarly agrees to accept and be responsible for its own acts or omissions, as well as those acts or omissions of its employees, and nothing in this contract shall be interpreted or construed to place any such responsibility onto PHP or Providers.

### 3.02 Required Notice

Any notice, request, demand, or other communication required or permitted hereunder shall be in writing and deemed to be properly given when delivered personally or on the second business day after it is deposited in the United States mail, postage prepaid and return receipt requested, to the address of Employer or PHP as stated in this Agreement, or such other address as may hereafter be specified for either party by written notice to the other party.

### 3.03 Relationship of Parties

The parties hereto enter into this Agreement in the capacity of independent contractors. Neither party shall be construed, represented or held to be a partner, associate, joint venture, employee, or agent of the other in the performance of services under this Agreement.

### 3.04 Entire Agreement

This Agreement including all Attachments constitutes the entire agreement between the parties with respect to the subject matter hereof. No other prior or contemporaneous promise, representation, inducement, warranty, statement, understanding or agreement, oral or written, with respect to the matters hereof, shall be valid or binding. Any and all other agreements, either oral or written, between the parties hereto concerning the matters contained herein, are hereby superseded by the terms of this Agreement. This Agreement may be modified or amended only by written agreement of the parties, provided, however, that in no event shall any such amendment or modification conflict with any applicable federal or state laws or regulations.

### 3.05 Assignment

No part of this Agreement or any rights, responsibilities or obligations described herein shall be assigned or delegated to any other party without the express written consent of both parties hereto; provided, however, PHP may assign this Agreement to an affiliate, subsidiary or successor without the prior written consent of Employer.

9

Exhibit C 9 of 35

3.06 Severability

    If any provision of this Agreement is held to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way.

3.07 Applicable Law

    This Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia.

    IN WITNESS WHEREOF, the undersigned parties have signed and sealed this Agreement on the date first above written.

"PEGHP"                                          "PHP":

PUBLIC EMPLOYEES GROUP                           PHOEBE HEALTH PARTNERS, INC.
HEALTH  PLAN

By: _____                      By: _____
        Gail Kohler                                      Frank Middleton, M.D.

Title: Finance Director_____                  Title: Senior VP/Medical Director___

By: _____                      By: _____
                                                         Pat Sumner

Title: _____                    Title: Executive Director_____

By: _____

Title: _____

Date: _____                     Date: _____

Address:                                          Address:
_____                           Phoebe Health Partners, Inc.
_____                           P.O. Box 1828
_____                           306 Third Avenue
_____                           Albany, Georgia 31702

                              10

Exhibit C 10 of 35

**ATTACHMENTS**

1.  Summary of Plan Design

2.  Network Access Fee

3.  Hospital Fee Schedule for Covered Services

4.  Physician Fee Schedule for Covered Services

5.  Employer's UR Standards and Guidelines

6.  Claims Administrator Rider

11

Exhibit C 11 of 35

**ATTACHMENT 1**

**PUBLIC EMPLOYEES GROUP HEALTH PLAN**

Summary of Plan Design

12

Exhibit C 12 of 35

PUBLIC EMPLOYEES GROUP HEALTH PLAN

ATTACHMENT 2

NETWORK ACCESS FEE

PEGHP shall direct Group Resources, Incorporated to pay Phoebe Health Partners (PHP) a network access fee in consideration of PHP's administrative duties in connection with managing the PHP network. The network fee shall be set at $2.50 per employee per month. PHP will provide:

    (1) One Provider Network Directory for each employee annually.  Network changes to the Provider Network Directory will be provided quarterly to the Employer's Benefits Manager for distribution to employees.

    (2) A network referral line is maintained and operational Monday through Friday, 8:00 a.m. until 5:00 p.m.(exclusive of Holidays) for employees to call regarding questions about the network. 1-(800) – 4 – PHOEBE or 1- (800) – 474 - 6323

Monthly fees are due and payable by the fifth of the month to the following address:

**Phoebe Health Partners**
**306 Third Avenue**
**P. O. Box 1828**
**Albany, Georgia 31702**

13

Exhibit C 13 of 35

## ATTACHMENT 3

## PUBLIC EMPLOYEES GROUP HEALTH PLAN
## AND
## PHOEBE HEALTH PARTNER

### PPO

**Reimbursement Rates for Plan will at least be a 20% Financial Redirection Incentive for PPO Network Utilization.**

**PHOEBE PUTNEY MEMORIAL HOSPTIAL FACILITY REIMBURSEMENT**

Inpatient Hospital Reimbursement
Hospital will be reimbursed 77% of billed charges.

Outpatient Surgery, Outpatient Diagnostic and Therapeutic Services Reimbursement
Hospital will be reimbursed 77% of billed charges.

**OTHER SERVICES**

Albany Community Hospice
Hospice will be reimbursed 90% of billed charges.

Behavioral Health Center at Phoebe
Behavioral health services will be reimbursed 90% of billed charges.

New Foundations Prostheses Center
New Foundations Prostheses Center will be reimbursed 90% of billed charges.

Phoebe Cancer Center
Oncology services will be reimbursed 90% of billed charges.

Phoebe Home Care Services
Home health care services will be reimbursed 80% of billed charges.

Phoebe Home Infusion
Home infusion services will be reimbursed 80% of billed charges.

Phoebe Physical Medicine
Physical medicine services will be reimbursed 82% of billed charges.

14

Exhibit C 14 of 35

**ATTACHMENT 3 Continued**

Phoebe Wound Care
Wound care services will be reimbursed 90% of billed charges.

American Home Patient
DME services will be reimbursed 95% of billed charges.

Rehabilicare
DME services will be reimbursed 75% of billed charges.

Dialysis Clinic Incorporated
Dialysis services will be reimbursed 85% of billed charges.

Phoebe Northwest Medical Equipment
Medical equipment provided at Phoebe Northwest will be reimbursed at 90% of billed charges.

Phoebe Orthopedic Supplies
Orthopedic supplies provided at Phoebe Putney Memorial Hospital will be reimbursed at 90% of billed charges.

**Affiliate Hospital Provider Reimbursement shall be as follows:**

Calhoun Memorial Hospital will be reimbursed 95% of billed charges for inpatient services.
Calhoun Memorial Hospital will be reimbursed 95% of billed charges for outpatient services.

Crisp Regional Hospital will be reimbursed 85% of billed charges for inpatient services.
Crisp Regional Hospital will be reimbursed 85% of billed charges for outpatient services.

Memorial Hospital and Manor will be reimbursed 90% of billed charges for inpatient services.
Memorial Hospital and Manor will be reimbursed 90% of billed charges for outpatient services.

Miller County Hospital will be reimbursed 95% of billed charges for inpatient services.
Miller County Hospital will be reimbursed 95% of billed charges for outpatient services.

Southwest Georgia Regional Medical Center will be reimbursed 95% of billed charges for inpatient services.
Southwest Georgia Regional Medical Center will be reimbursed 95% of billed charges of for outpatient services.

15

Exhibit C 15 of 35

**ATTACHMENT 3 Continued**

<u>Sumter Regional Hospital</u> will be reimbursed 85% of billed charges for inpatient services.
<u>Sumter Regional Hospital</u> will be reimbursed 90% of billed charges for outpatient services.

<u>Phoebe Worth Medical Center</u> will be reimbursed 85% of billed charges for inpatient services.
<u>Phoebe Worth Medical Center</u> will be reimbursed 85% of billed charges for outpatient services.

**Locations of Affiliate Hospitals:**

**Calhoun Memorial Hospital**
P. O. Drawer R
209 Academy Street, S. E.
Arlington, GA 31713
912-725-4272

**Phoebe Worth Medical Center**
807 South Isabella Street
Sylvester, GA 31791
912-776-6961

**Crisp Regional Hospital**
902 7th Street
Cordele, GA 31015
912-276-3101

**Sumter Regional Hospital**
100 Wheatley Drive
Americus, GA 31709
912-924-6011

**Memorial Hospital & Manor**
1500 East Shotwell Street
Bainbridge, GA 31717
912-246-3500

**Miller County Hospital**
209 N. Cuthbert Street
Colquitt, GA 31737
912-758-3385

**Southwest Georgia Regional Medical Center**
109 Randolph Street
Cuthbert, GA 31740
912-732-2181

16

Exhibit C 16 of 35

**ATTACHMENT 4**

**PHYSICIAN FEE SCHEDULE**

Network physicians shall be reimbursed billed charges or according to the Phoebe Health Partners Physician fee schedule whichever is less. Claims will be re-priced by Group Resources, Incorporated utilizing the above payment terms prior to claims being processed for payment.

The Phoebe Health Partners Physician fee schedule will be provided to Group Resources Inc. only for the purpose of re-pricing and paying claims.

17

Exhibit C 17 of 35

**ATTACHMENT 5**

<u>PUBLIC EMPLOYEES GROUP HEALTH PLAN</u>

Employer's UR Standards and Guidelines

18

Exhibit C 18 of 35

### ATTACHMENT 6 - AGREEMENT BETWEEN

### GROUP RESOURCES, INC.
### AND
### PHOEBE HEALTH PARTNERS, INC.

The undersigned Group Resources, Inc., a "Third Party Administrator," hereby acknowledges and agrees as follows:

(1)    That Phoebe Health Partners ("PHP") and Group Resources, Inc. (a "TPA") have entered into that certain Network Agreement with Public Employers Group Health Plan ("PEGHP") effective, January 1, 2003 ("Agreement");

(2)    That the Agreement relates to Group Resources, Inc., operating as a TPA, will be performing the duties of re-pricer, payer, eligibility, pre-certification, benefit verification, etc. for PEGHP;

(3)    That Group Resources, Inc. is authorized to act on behalf of PEGHP with respect to the Agreement and the Plan;

(4)    Group Resources, Inc. shall be bound by the provisions of the Agreement that are applicable to them as a TPA; and

(5)    PEGHP and PHP may rely on Group Resources, Incorporated as a Third Party Administrator, in entering into and performing the Agreement;

     a.    In the event claims are not paid within thirty (30) days from the date received by Group Resources, Inc. the Provider will be reimbursed one hundred percent (100%) of billed charges;

     b.    Claims sent via electronic transmission will be deemed as being received the next working business day, claims sent via regular mail will deemed as being received on the third day after post marked;

     c.    In the event the access fees are not received from Group Resources, Inc. by the 5th of each month PHP will notify PEGHP of the delinquent payment status;

     d.    In the event the quarterly reports with a with a full accounting of utilization of the Providers by Participants, including the amount of billings and the amounts reimbursed are not received by PHP on the 20th day of the full first month of each subsequent quarter then PEGHP will be notified;

(6)    If Group Resources, Inc. breaches this Agreement, PHP may cancel this Agreement immediately without prior notice and Group Resources, Inc. will cease from performing the duties assigned by this Agreement.

SO AGREED this _5^{TH}_ day of _NOVEMBER_, _2002_

**Group Resources, Incorporated:**

By: _W. Andrew (signature)_

Title: _W. ANDREW WILLOUGHBY · SR VP & CIO_

**Public Employer Group Health Plan ("PEGHP")**

By: _____

Title: _____

**Phoebe Health Partners, Inc.**

By: _____

Title: _____

Exhibit C 19 of 35

## ADMINISTRATIVE SERVICES AGREEMENT

**THIS AGREEMENT,** effective this 1st day of January, 2003 by and between the plan administrator (hereinafter called the "Plan Administrator") of the **Public Employees Group Health Plan** (hereinafter called the "Plan") and GROUP RESOURCES® INCORPORATED (hereinafter called the "Administrative Services Agent");

### WITNESSETH

**WHEREAS,** PEGHP (hereinafter called the "Company") now provides certain health care and hospitalization coverage for its employees and their eligible dependents under the Plan as well as for employees and eligible dependents of affiliated corporations under the Plan;

**WHEREAS,** the Plan Administrator is given the authority under the Plan to appoint agents and representatives to act on its behalf, and to delegate to such agents or representatives any part or all of the functions of the Plan Administrator; and

**WHEREAS,** the Plan Administrator desires to employ the Administrative Services Agent and the Administrative Services Agent desires to be employed by the Plan Administrator, on the terms and conditions hereinafter set forth, to perform the administrative services and duties set forth herein;

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### SECTION I
### DUTIES OF THE ADMINISTRATIVE SERVICES AGENT

1.  The Administrative Services Agent shall design, prepare and cause to be printed all claim forms which may be necessary in the administration of the Plan, all initial booklets and other publications describing the Plan, and all other documents and forms for the initial enrollment as necessary for the proper administration of the Plan.

2.  The Administrative Services Agent will furnish to the Plan Administrator monthly statements showing all disbursements made by the Administrative Services Agent from the Fund (hereinafter referred to as the "Fund") during the preceding calendar month, including, but not limited to, a separate statement indicating payments made to or on behalf of employees and payments made to or on behalf of dependents of employees during the preceding calendar month.

3.  The Administrative Services Agent shall assist the Plan Administrator, if requested to do so, with the timely preparation of all reports, statements or other documents required to be filed by the Company, the trustee or the Plan Administrator of the Plan with any local political subdivision, a state government or the federal government or distributed to employees and their dependents with respect to the Plan or the Fund, including, but not limited to, all reports to be filed or distributed pursuant to the provisions of the Employee Retirement Income Security Act of 1974 as amended (hereinafter referred to as "ERISA").

Exhibit C 20 of 35