# EXHIBIT C
# PART 2

4. Except as otherwise provided in this Agreement, the Administrative Services Agent shall pay its own expenses incurred in connection with the performances of its duties hereunder.

5. When an application for benefits under the Plan is submitted to the Administrative Services Agent by the Plan Administrator on behalf of an employee or his dependents, the Administrative Services Agent shall take the following action:

   a) The Administrative Services Agent shall determine the benefits payable under the Plan, if any, to or on behalf of the employee making the claim, or to, or on behalf of the dependent of any employee making the claim, after investigation and verification of the statements contained in the application for benefits.

   b) If the Administrative Services Agent determines that an employee or dependent of any employee is entitled to receive payments of benefits from the Fund as provided in the Plan or is entitled to have payments of benefits from the Fund made on his or her behalf from the Fund as provided in the Plan, The Administrative Services Agent shall issue a check or draft upon the Fund for the payment of such benefits as provided in the Plan made payable to, and shall deliver such check or draft to, an employee or, if applicable, to a dependent of any employee, or to any physician (as defined in the Plan) or hospital (as defined in the Plan) or other individual or firm providing services to or on behalf of any employee or a dependent of an employee to whom the benefits due to an employee or a dependent have been properly assigned. The Administrative Services Agent will deliver to the Plan Administrator a copy of an explanation of the benefits paid by such check or draft to the person or persons designated by the Company from time to time.

   c) If the Administrative Services Agent finds that an employee or dependent is not eligible for benefits under the Plan or that the sickness or injury of such employee or dependent is not eligible for benefits under the Plan or that the sickness or injury of such employee or dependent is not compensable under the Plan, in whole or in part, the application for benefits shall be denied by the Administrative Services Agent, in whole or in part, by written notice to the employee, setting forth the specific reason or reasons for such denial and such other information as is required to be provided under the Plan. The employee or dependent shall be afforded such rights of appeal as are provided under the Plan.

   d) The Administrative Services Agent shall use that degree of ordinary care and reasonable diligence in the exercise of its powers and performance of its duties hereunder that an administrator of claims under an insured or uninsured employee benefit plan would use acting in like circumstances and familiar with such matters. If, while exercising the degree of care and diligence stated in the preceding sentence, the Plan Administrator refused to pay or honor any application for benefits made pursuant to the Plan, the Administrative Services Agent shall not be liable in any proceeding at law or in equity for such a refusal, and the Plan Administrator shall reimburse the Administrative Services Agent for any expense, loss, damages or legal fees incurred by the Administrative Services Agent in defending any claims or demands for benefits which have been denied by the Administrative Services Agent while exercising the degree of care and diligence set for the in the preceding sentences. However, the Administrative Services Agent shall be liable for any payment of benefits made by the

Exhibit C 21 of 35

Administrative Services Agent which are not authorized under the terms and provision of the Plan, and shall be obligated to reimburse the Fund for any such payments which are not specifically authorized under the terms and provisions of the Plan.

If any payment is made hereunder to an ineligible employee or dependent, or if it is determined that more or less than the correct amount has been paid by the Administrative Services Agent, the Administrative Services Agent will attempt to recover the payment made to an ineligible person or the overpayment or will adjust the underpayment. If the Administrative Services Agent is unsuccessful, it shall notify the Plan Administrator in order that the Plan Administrator may take such action as may be available to it. The Administrative Services Agent may seek the advice of experts, at its sole expense, in performing its duties under this Agreement. The Administrative Services Agent shall consult with the Plan Administrator, or legal counsel designated by the Plan Administrator, when legal or extraordinary benefit matters seem to be involved.

e) The Administrative Services Agent will not be responsible for any expenses for Large Case Management fees, hospital audit fees, medical records fees, or electronic claims transaction fees incurred on behalf of Plan participants.

f) The Administrative Services Agent shall verify the eligibility of employees for benefits pursuant to the terms of the Plan.

6. The Administrative Services Agent agrees to indemnify the Plan Administrator and hold the Plan Administrator harmless against any and all loss, liability, damage, and expense (including court cost and attorneys' fees) with respect to this Agreement resulting from or arising out of any mistake of judgment made, or other action taken, in bad faith, or the dishonest, fraudulent, negligent or criminal acts of the Administrative Services Agent and/or any of the Administrative Services Agent's employees, agents, subsidiaries or affiliates acting alone or in collusion with others. In addition, the Administrative Services Agent agrees to indemnify and hold harmless the Plan Administrator against any loss, liability, damage and expense (including court costs and attorneys' fees) resulting from or arising out of any claim, demand or lawsuit brought against the Plan Administrator with respect to the administrations of the Plan, or to recover benefits under the Plan which result from or arise out of, any action or conduct described in the preceding sentence.

## SECTION II
## COMPENSATION OF THE ADMINISTRATIVE SERVICES AGENT

The Administrative Services Agent shall be entitled to an initial fee of $7500.00, and a monthly fee, payable to the Administrative Services Agent by the Plan Administrator on behalf of the Company by the tenth day of each month equal to $13.50 for each covered employee in the Plan at the beginning of such month. Should the Administrative Services Agent not receive this monthly fee by the tenth day of the month, a 10% late fee will be charged to the Company. If the Administrative Services Agent has not received this monthly fee by the last day of the month, coverage will be terminated as of the first day of the month for which payment has not been received. Reinstatement of the Administrative Services Agreement will be considered, subject to a reinstatement fee of $1,000.00, and upon payment of premiums due for both the month of termination and the subsequent month. Re-instatement of re-insurance contracts is at the sole discretion of the issuing entity.

Exhibit C 22 of 35

In addition, the monthly fee shall be increased or decreased in accordance with Section IV of this Agreement.

In addition to the monthly fee, Plan Administrator will reimburse Administrative Services Agent for the direct cost of any customized or special forms provided by the Administrative Services Agent.

The fee charged by the Administrative Services Agent shall be subject to change as follows;

1. On each anniversary of the Effective date of this Agreement, upon written notice to the Plan Administrator at least sixty (60) days prior to the increase;
2. On the implementation date of any changes in the Plan that would increase the Administrative Services Agent's cost of providing its services;
3. On any date that increased expenses are incurred by the Administrative Services Agent because of changes imposed by any governmental entity. This shall be limited to increase sufficient to recover the additional expenses; or
4. On any date that the enrollment in the Plan changes by an amount equal to twenty percent (20%) or more of the total enrollment.

## SECTION III
## DUTIES OF THE PLAN ADMINISTRATOR

1. The Plan Administrator on behalf of the Company shall collect the contributions, if any, to be made by employees for coverage pursuant to the terms of the Plan, in the manner it may deem appropriate and shall transfer the money so collected to the Fund. The Plan Administrator on behalf of the Company, on notice from the Administrative Services Agent, shall pay to the Fund such amounts as the Administrative Services Agent shall determine are necessary to pay the benefits to be paid from the Fund pursuant to the terms and provision of the Plan.

2. The Plan Administrator, on behalf of the Company, shall be responsible for the payment of any premiums and premium tax on a reinsurance policy or policies issued to the Company in connection with the Plan.

3. The Plan Administrator shall direct the payment of any expenses for Large Case Management fees, hospital audit fees or electronic transaction fees from the Plan.

4. The Plan Administrator shall be responsible for the enrollment of employees in the Plan, shall advise the Administrative Services Agent with respect to benefits payable under the terms of the Plan upon the request of the Administrative Services Agent, and shall transmit any inquiries from employees in respect to the Plan to the Administrative Services Agent. The Plan Administrator shall maintain a supply of forms, cards or other documents for the employees, on the advice of the Administrative Services Agent.

5. The Plan Administrator shall provide the Administrative Services Agent with a list of employees eligible to participate in the Plan on a monthly basis.

6. The Plan Administrator shall purchase a fidelity bond covering the Plan Administrator and providing protection for the Plan and the Fund against loss by reason of the acts of fraud or dishonesty on the part of the Plan Administrator, employees of the Plan Administrator, directly or through connivance with others, having as a surety thereon a corporate surety company which is an acceptable surety, and in an amount required by ERISA.

Exhibit C 23 of 35

7. The Plan Administrator shall have the responsibility of reporting in writing using the required Insurance Company Forms all death claims to the Administrative Services Agent within forty-five (45) days of occurrence. Failure to do so may result in the forfeiture of certain benefits and rights.

8. The Plan Administrator agrees to indemnify the Administrative Services Agent and hold the Administrative Services Agent harmless against any and all loss, liability, damage, and expense (including court cost and attorneys' fees) with respect to this Agreement resulting from or arising out of any mistake of judgment made, or other action taken, in bad faith, or the dishonest, fraudulent, negligent or criminal acts of the Plan Administrator and/or any of the Plan Administrator's employees, agents, subsidiaries or affiliates acting alone or in collusion with others. In addition, the Plan Administrator agrees to indemnify and hold harmless the Administrative Services Agent against any loss, liability, damage and expense (including court costs and attorneys' fees) resulting from or arising out of any claim, demand or lawsuit brought against the Administrative Services Agent with respect to the administrations of the Plan, or to recover benefits under the Plan which result from or arise out of, any action or conduct described in the preceding sentence

## SECTION IV
## TERMINATION

1. The initial term of this Agreement is for one year, beginning on the Effective Date. This Agreement may be terminated without cause by either the Plan Administrator or the Administrative Services Agent upon 60 days prior written notice given to the other party hereto and to the Company, to be effective as of the date certain as set forth in such written notice of termination (the "Effective Date") which shall be not less than 60 days from the date of such notice of termination. In the event of termination of this Agreement, the Administrative Services Agent shall complete the processing of all requests for benefit payments under the Plan which are received by it and are due and payable prior to termination of this Agreement within the Administrative Service Agent's average claims turnaround time as determined during the months proceeding termination of this agreement.

2. The Administrative Services Agent, from and after the date of notice of termination, shall make available to the Plan Administrator all of the books and records of the Administrative Services Agent with respect to the duties performed by the Administrative Services Agent pursuant to hereto and, at the time of the final accounting, shall deliver to the Plan Administrator all books and records of the Administration of the Plan and Fund, and all claim files, reports and other papers dealing with the Plan, at the written request of the Plan Administrator.

3. On the Effective date of termination of this Agreement, the Administrative Services Agent shall deliver to a successor Administrative Services Agent of the Plan and the Fund such money or other assets of the Fund, if any, which might rightfully belong to the Fund, or in the event the Plan has been terminated, shall deliver such money or other assets of the Fund, if any, and any other money or assets, if any rightfully belonging to the Fund or to such person or entity as is designated in the Plan.

Exhibit C 24 of 35

## SECTION V
## BANKING & CLAIMS FUNDING PAYMENT

1. The Plan Administrator shall establish a bank account on which the Administrative Services Agent will write drafts for payment of Plan claims and expenses. The Plan Administrator agrees and is obligated to arrange for sufficient funds to be available in such account to cover all validly issued drafts against the account.

2. The Administrative Services Agent shall have the right to terminate this Agreement upon notice to Plan Administrator in the event Plan Administrator fails to fund such account within five (5) business days after notice is given by the Administrative Services Agent that such funds are required to be deposited.

3. For any check runs not funded and released within five (5) business days of notification to the Plan Administrator, such notice as detailed in the above paragraph, a penalty fee of $100 per day shall be charged by the Administrative Services Agent to the Plan Administrator. This penalty fee will be due and payable with the subsequent month's billing.

4. Notice by the Administrative Services Agent, as noted in the above paragraph, shall be sufficient if given by telephone, fax, United States mail, private delivery carrier service or personal delivery to the Plan Administrator's signatory to this Agreement address specified herein. Any verbal notice given by telephone will be confirmed in writing within twenty-four (24) hours.

## SECTION VI
## MISCELLANEOUS

1. If during the operation of the Plan or the Fund, the United States, the government of any state or any political subdivision or instrumentality of either, shall access any tax against the Plan or the Fund and the Administrative Services Agent is required to pay such tax, the Administrative Services Agent shall be reimbursed for such payment by the Plan Administrator on behalf of the Company, if the tax has been assessed by no fault of the Administrative Services Agent

2. Any notices which are specifically required to be given in writing pursuant to this Agreement shall be deemed to have been duly given if delivered or if mailed by the United States certified or registered mail, prepaid, to the parties at the following addresses (or at such other addresses as shall be given by either party to the other):

| | |
|---|---|
| If to the Plan Administrator: | PEGHP<br>Attention: Shirley Smith<br>P.O. Box 447<br>Albany, GA 31702 |
| If to the Administrative Services Agent | Group Resources® Incorporated<br>Attn: Thomas S. Byrd<br>3080 Premiere Parkway Suite 100<br>Duluth, GA 30097-4904 |

Exhibit C 25 of 35

Any notice or communication to be given by either party hereto to the other pursuant to this Agreement which is not specifically required to be given in writing, shall be given by telephone by and to any individual designated in writing by the Administrative Services Agent or the Plan Administrator to receive such notice or communication from one party to the other, addressed to the individual who received such notice or communication, at the address or addresses furnished in writing by one party to the other from time to time.

3. This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated herein, and this Agreement supersedes all prior agreements or understandings, whether verbal or written, between the parties hereto relating to the subject matter thereof.

4. This Agreement and any provision hereof may be modified, amended or superseded only in writing signed by both parties hereto.

5. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6. Captions and section headings used herein are for convenience only and are not a part of this Agreement and shall not be used in construing it.

7. This Agreement shall be construed and enforced in accordance with the laws of the State of Georgia to the extent not preempted by federal law, which shall otherwise control.

Exhibit C 26 of 35

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement as of the day and year first above written.

PLAN ADMINISTRATOR FOR PEGHP EMPLOYEE BENEFIT HEALTH PLAN

By: _Gail Kohler_

Title: _Chairman, Ins. Review Comm._

Date: _4-30-03_

COMPANY

By: _Gail Kohler_

Title: _Chairman, Ins. Review Comm._

Date: _4-30-03_

GROUP RESOURCES® INCORPORATED

By: _____

Title: _____ **President & CEO** _____

Date: _____

Exhibit C 27 of 35

## COBRA ADMINISTRATIVE SERVICES AGREEMENT

**THIS AGREEMENT**, made this 1st day of January, 2003, by and among PEGHP, the plan administrator (hereinafter called the "Plan Administrator") of the Public Employees Group Health Plan (hereinafter called the "Plan"), PEGHP (hereinafter called the "Company") and GROUP RESOURCES, INC. (hereinafter called the "Administrative Service Agent");

### W I T N E S S E T H:

**WHEREAS**, the Company is the sponsor of the Plan; and

**WHEREAS**, the Plan now provides continuation of coverage for qualified beneficiaries under the Plan as required under the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended (hereinafter called "COBRA"); and

**WHEREAS**, the Plan Administrator desires to employ the Administrative Service Agent and the Administrative Service Agent desires to be employed by the Plan Administrator on the terms set forth herein;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### SECTION I
### DUTIES OF THE ADMINISTRATIVE SERVICE AGENT

A. The Administrative Service Agent shall design, prepare and cause to be printed all notices and forms which may be necessary in the administration of continuation coverage under the Plan.

B. The Administrative Service Agent shall, within the time limits prescribed in Subsections C. and D., provide written notice of the option to elect continuation of coverage and the cost thereof to any Qualified Beneficiary (as hereinafter defined) whose coverage under the Plan would terminate as a result of a Qualifying Event (as hereinafter defined).

   1. For purposes of this Agreement, the term "Qualifying Event" means any of the following which would otherwise result in loss of coverage under the Plan:

      a. the death of the covered employee;

      b. the termination of the covered employee's employment with the Company (other than by reason of the employee's gross misconduct) or the reduction in the covered employee's hours of employment;

      c. the divorce or legal separation of the covered employee from his spouse;

Exhibit C 28 of 35

    d.    the covered employee's becoming entitled to benefits under Medicare;

    e.    a dependent child of a covered employee ceasing to be a dependent child under the terms of the Plan; or

    f.    a proceeding in a case under Title II, United States Code relating to the Company from whose employment the covered employee retired at any time. For purposes of this Paragraph B.1., loss of coverage shall include a substantial elimination of coverage within on year before or after the date of commencement of the proceeding under Title 11.

2. For purposes of this Agreement, the term "Qualified Beneficiary" means:

    a.    each dependent covered by the Plan at the time the Qualifying Event occurred;

    b.    each child born to or adopted by the covered employee or former employee who is continuing coverage under COBRA;

    c.    for purposes of the Qualifying Event described in Subsection B.1.b. above, the covered employee or former employee, as the case may be; and

    d.    for purposes of the Qualifying Event described in Subsection B.1.f. above, Qualified Beneficiary shall include, in addition to those individuals listed in above subsection 2.b, a covered employee who had retired on or before the date of substantial elimination of his coverage under the Plan and any other individual who on the day before that date was the spouse, surviving spouse or dependent child of the covered employee.

C. Upon notification by the Plan Administrator, pursuant to Section III of this Agreement, of a covered employee's death, termination of employment with the Company (other than by reason of the employee's gross misconduct), reduction in hours of employment with the Company, entitlement to Medicare, or a proceeding in a case under Title 11, United States Code, the Administrative Service Agent shall notify the applicable Qualified Beneficiary of his rights to continuation of coverage. The Administrative Service Agent shall provide this written notification within fourteen (14) days of the date on which the Plan Administrator was notified of the Qualifying Event described in this Subsection C.

D. Upon notification by the Company, pursuant to Section III of this Agreement, of the divorce or legal separation of a covered employee and his spouse or a dependent child ceasing to be a dependent under the terms of the Plan, the Administrative Service Agent will notify the applicable Qualified Beneficiary of his rights to continuation of coverage.

Exhibit C 29 of 35

    The Administrative Service Agent shall provide this written notification within fourteen (14) days of the date on which the Administrative Service Agent was notified of the Qualifying Event described in this Subsection D. Any notification provided by the Administrative Service Agent under this Subsection D. to a spouse of a covered employee shall be deemed to be provided to any other Qualified Beneficiary residing with that spouse at the time of the notification.

E.   The Administrative Service Agent shall receive the written elections of Qualified Beneficiaries for continuation coverage under the Plan and shall enroll them in the Plan as individuals with continuation coverage. The Administrative Service Agent shall promptly notify the Plan Administrator of those who have elected continuation of coverage.

F.   The Administrative Service Agent shall collect the premium for continuation of coverage from Qualified Beneficiaries, and shall within a reasonable period of time after receipt remit premium payments to the Plan.

G.   The initial written notice described in Subsection 1.B. sent by the Administrative Service Agent to a Qualified Beneficiary informing him of his rights to continuation coverage shall be made by Certificate of Mailing, prepaid, to the address as shall be provided by the Plan Administrator to the Administrative Service Agent. All other written notices sent by the Administrative Service Agent shall be by any reasonable method selected by the Administrative Service Agent.

H.   The Administrative Services Agent shall, from time to time, evaluate the premium rates for continuation coverage under the Plan and shall notify the Plan Administrator of the recommended premium rates for the continuation coverage. Unless the Plan Administrator notifies the Administrative Services Agent within 30 days of receipt of these recommended premium rates of its objection to the rates, the rates shall take effect at such time thereafter as the Administrative Services Agent shall deem appropriate.

## SECTION II
## COMPENSATION OF THE ADMINISTRATIVE SERVICE AGENT

The Administrative Service Agent shall be entitled to an initial fee of $-0-, and a monthly fee of $.50 for each covered employee in the Plan at the beginning of each month. The fee shall be paid by the Company on or before the tenth day of each month. Should this monthly fee not be received by the Administrative Service Agent by the tenth day of the month, a 10% late fee will be charged to the Company. If this monthly fee has not been received by the Administrative Service Agent by the last day of the month, coverage will terminate as of the first day of the month for which payment has not been received. Reinstatement will be considered, subject to a reinstatement fee of $250.00, and upon payment of premiums due for both the month of termination and the subsequent month.

Exhibit C 30 of 35

## SECTION III.
## DUTIES OF THE COMPANY
## AND THE PLAN ADMINISTRATOR

A. The Plan Administrator shall provide, at the time of commencement of coverage under the Plan, written notice to each covered employee and spouse of the rights to continuation of coverage under the Plan as provided under COBRA, and the obligation of the covered employee or other Qualified Beneficiary (as hereinafter defined) to notify the Administrative Service Agent in writing within sixty (60) days of the occurrence of an event described in Section 1.B.1.c. or Section 1.B.1.e.

B. The Plan Administrator shall promptly notify the Administrative Service Agent in writing of the enrollment of any new employee in the Plan.

C. In the event of a covered employee's death, termination of employment (other than by reason of the employee's gross misconduct) reduction of hours of employment to ineligible status, entitlement to Medicare, or a proceeding in a case under Title 11, United States Code, the Plan Administrator shall notify the Administrative Service Agent in writing within seven (7) days of the occurrence of the applicable Qualifying Event.

D. In the event of divorce or legal separation of a covered employee and his spouse or a dependent child ceasing to be a dependent under the terms of the Plan, the Plan Administrator will inform the covered employee or Qualified Beneficiary affected by the event that they are required to notify the Administrative Service Agent in writing within sixty (60) days after the date of the applicable Qualifying Event.

E. The Plan Administrator shall at all times keep the Administrative Service Agent informed of the cost of continuation coverage under the Plan.

## SECTION IV.
## INDEMNIFICATION OF THE
## ADMINISTRATIVE SERVICE AGENT

The Company agrees to indemnify and hold harmless the Administrative Service Agent, and its employees, agents, officers, directors, and shareholders, from and against any claim, action, cause of action, liability, loss, cost, expense, fee, damage, tax, or penalty (including reasonable attorney and accountant fees) which may be made by any employee or dependent or any other person or persons (including any governmental authority) resulting from, or in connection with, the operation of the Plan or any action or inaction by the Administrative Service Agent, unless such claim, action, cause of action, liability, loss, cost, expense, fee, damage, tax, or penalty results from the Administrative Service Agent's willful misconduct or fraud.

## SECTION V.
## TERMINATION

A. This Agreement may be terminated without cause by either the Plan Administrator or the Administrative Service Agent upon sixty (60) days prior written notice given to the other party hereto, and a copy given to the Company, to be effective as of a date as set

Exhibit C 31 of 35

forth in the written notice of termination which shall be not less than sixty (60) days from the date of the notice of termination. Upon the effective date, all obligations of the Administrative Service Agent, the Company and the Plan Administrator pursuant to this Agreement shall be terminated, except for the obligations of the Company under Section IV.

B. The Administrative Service Agent, from the date of notice of termination, shall make available to the Plan Administrator copies of all of the books and records of the Administrative Service Agent with respect to the duties performed by the Administrative Service Agent under this Agreement.

## SECTION VI.
## MISCELLANEOUS

A. Any notices which are specifically required to be given in writing pursuant to this Agreement to the parties of this Agreement shall be deemed to have been duly given if delivered, or if mailed by the United States certified or registered mail, prepaid, to the parties at the following address (or at any other address as will be given by either party to the other):

| If to the Plan Administrator: | PEGHP<br>Attention: Shirley Smith<br>P.O. Box 447<br>Albany, GA 31702 |
|---|---|
| If to the Administrative Service Agent: | Group Resources, Inc.<br>Attn: Mr. Thomas S. Byrd<br>3080 Premiere Parkway<br>Suite 100<br>Duluth, Georgia 30097-4904 |
| If to the Company: | PEGHP<br>Attention: Shirley Smith<br>P.O. Box 447<br>Albany, GA 31702 |

Any notice or communication to be given by any party to any other pursuant to this Agreement which is not specifically required to be given in writing may be given by telephone by and to any individual designated writing by the Administrative Service Agent or the Plan Administrator to receive oral communications.

B. This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated herein, and this Agreement supersedes all prior agreements or understandings, whether verbal or written, between the parties hereto relating to the subject matter hereof.

Exhibit C 32 of 35

C. This Agreement and any provision hereof may be amended only in writing signed by all parties hereto.

D. This Agreement may be executed in one more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

E. Captions and section headings used herein are for convenience only and are not a part of this Agreement and shall not be used in construing it.

F. This Agreement shall ___ and enforced in accordance with the laws of the State of Georgia to th ___ deral law, which shall otherwise control.

IN WITNESS WHE___ *Debra Phillips* e duly executed this Agreement as of the day and year first above ___

N ADMINISTRATOR

By: *Gail Kohler*
Date: 5-13-03

ATTEST:

Title:_____
[CORPORATE SEAL]

GROUP RESOURCES, INC.

By: _____
Title: _____
Date: _____

ATTEST:

_____
Title:_____
[CORPORATE SEAL]

___PEGHP___
(NAME OF COMPANY)

By: *Gail Kohler*
Title: Chairman, Ins. Review Comm
Date: 5-13-03

ATTEST:

_____
Title:

Exhibit C 33 of 35

C. This Agreement and any provision hereof may be amended only in writing signed by all parties hereto.

D. This Agreement may be executed in one more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

E. Captions and section headings used herein are for convenience only and are not a part of this Agreement and shall not be used in construing it.

F. This Agreement shall be construed and enforced in accordance with the laws of the State of Georgia to the extent not preempted by federal law, which shall otherwise control.

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement as of the day and year first above written.

**PLAN ADMINISTRATOR**

By: _____
Date: _____

**ATTEST:**

_____
Title: _____
[CORPORATE SEAL]

**GROUP RESOURCES, INC.**

By: _____
Title: _____
Date: _____

**ATTEST:**

_____
Title: _____
[CORPORATE SEAL]

_____**PEGHP**_____
(NAME OF COMPANY)

By: _____
Title: _____
Date: _____

**ATTEST:**

_____
Title: _____

Exhibit C 34 of 35

... #256526 PAGE: 17/17

CE PORTABILITY AND ACCOUNTABILITY ACT ("HIPAA")

)MINISTRATIVE SERVICES AGREEMENT

le this 1st day of, 2003, by and among, PEGHP, as the plan administrator nistrator") of the Public Employees Group Health Plan (hereinafter called the d the "Company"), and GROUP RESOURCES, INC. (hereinafter called the

### WITNESSETH

is the sponsor of the Plan; and

juired to comply with certain provisions of HIPAA; and

ninistrator desires to employ the Administrative Service Agent, and the es to be employed by the Plan Administrator pursuant to the terms set forth

good and valuable consideration, the receipt and sufficiency of which are hereto agree as follows:

### SECTION I
### DEFINITIONS

are used repeatedly throughout this Agreement, are defined here for your

. "Affiliation Period" means a period which, under the terms of the health offered by a health maintenance organization ("HMO"), must expire before e coverage becomes effective.

overage. "Certification of Coverage" means, with regard to any Individual, on of (1) the Individual's period of Creditable Coverage under the Plan; (2) )BRA Coverage under the Plan; and (3) the waiting period (if any) or applicable) imposed on the Individual for coverage under the Plan.

refers to the Consolidated Omnibus Budget Reconciliation Act of 1985, as al statute that provides for continuation of health coverage under certain l group health plans.

. "COBRA Coverage" means health care continuation coverage available the occurrence of certain events.

s to the Internal Revenue Code of 1986, as amended.

ject to an Individual, coverage
Irance coverage, (3) Part A or
described in chapter 55 of title
in Health Service or of a tribal
ental health plan, as described
plan, as defined in regulations,
orps Act. Creditable Coverage
ed benefits, as defined in Code

eans (1) an employee, (2) a

### ENT

use to be printed all notices,
ode Section 9801(e) in the
quirements for health coverage

Coverage within a reasonable
events:

n or the individual's becoming

the Plan; or

certification within 24 months
the Plan terminates.

ompany's request, furnish a
an Individual or subsequent
erage was prepared, or (iii) a
Administrator or Individual to
ige furnished to an Individual
mailing, to the Individual's last
ervice Agent.

/ group health plan, promptly
sses and categories of health
e section 9801(e)(2). The
requesting plan for any costs
nd to keep any costs collected

ed in a manner calculated to
n 9801(e). To the extent any
ninimum requirements of Code
teps necessary to comply with

Exhibit C 35 of 35