IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| PALMYRA PARK HOSPITAL, INC., ) | |
| d/b/a PALMYRA MEDICAL CENTER, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | |
| ) | CIVIL ACTION FILE NO.: |
| PHOEBE PUTNEY MEMORIAL ) | 1:08-cv-00102-WLS |
| HOSPITAL, INC.; PHOEBE PUTNEY ) | |
| HEALTH SYSTEM, INC.; AND ) | |
| HOSPITAL AUTHORITY OF ALBANY/ ) | |
| DOUGHERTY COUNTY, ) | |
| ) | |
| DEFENDANTS. ) | |

## BRIEF IN SUPPORT OF DEFENDANT PHOEBE PUTNEY MEMORIAL HOSPITAL, INC. AND PHOEBE PUTNEY HEALTH SYSTEM, INC.'S MOTION TO DISMISS

### INTRODUCTION

Palmyra Park Hospital, Inc. ("Palmyra") filed a Complaint against Phoebe Putney Memorial Hospital, Inc. ("PPMH"), Phoebe Putney Health System, Inc. ("PPHS") (collectively referred to as "Phoebe") and the Hospital Authority of Albany/Dougherty County ("Authority") alleging violations of the antitrust laws under §§ 1 and 2 of the Sherman Act as well as pendant state claims for tortious interference with business relations and for violation of a provision of the Georgia Constitution. PPMH operates a 443-bed acute care, not-for-profit hospital in Albany, Georgia. Palmyra operates a competing 248-bed acute care hospital in Albany, Georgia. PPMH operates the hospital pursuant to a lease with the Authority, which owns the assets of the hospital. Complaint ¶¶ 5-7. PPMH is a subsidiary of PPHS. Complaint ¶ 10.

All of the claims arise out of the same allegations. Palmyra alleges that PPMH offers certain services that, until recently, Palmyra has not been able to offer under Georgia's

Certificate of Need law, namely: acute care obstetrics, neonatology and cardiovascular services. Complaint ¶¶ 17, 24. Palmyra alleges that in 2000 Blue Cross Blue Shield of Georgia ("Blue Cross") negotiated an exclusive managed care contract with PPMH to make PPMH its only in-network hospital in Albany. Palmyra alleges that PPMH used its market power in the above three areas to force Blue Cross (and possibly other insurers or claim administrators) to agree to make the contract exclusive for all other inpatient services. Complaint ¶¶ 52 56, 59-60. Palmyra alleges that this alleged agreement is what is known as a "tying arrangement." Finally, Palmyra alleges that because of the exclusivity provision, it has been unable to contract with Blue Cross and possibly others as an in-network hospital and therefore it has lost revenue. Complaint ¶ 44.

Count I of Palmyra's Complaint fails as a matter of law because: (1) it does not state a per se violation; (2) it does not allege plausible facts of the existence of a conspiracy; (3) it fails to make plausible allegations of coercion; (4) it is barred by the applicable statute of limitations; and (5) Palmyra does not have standing to assert an antitrust claim.

Count II should be dismissed for all of the same reasons listed above, except for (1).

Counts III and IV should be dismissed for all of the same reasons listed above, except for (1), and also for the additional reason that they fail to plausibly allege wrongful or anticompetitive conduct within the antitrust laws.

Counts V and VI assert state law claims and should be dismissed for lack of pendent jurisdiction. In addition, these Counts should be dismissed as a matter of law because: (1) they do not make plausible allegations of improper conduct or restraint of trade; and (2) they are barred by the applicable statute of limitations.

## ARGUMENT

## I.   STANDARD FOR MOTION TO DISMISS.

Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint should be dismissed for failure to state a

2

claim upon which relief can be granted. The Court must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005). However, a plaintiff's obligation to provide grounds for entitlement to relief requires more than conclusory allegations. "Unsupported conclusions of law or of mixed fact and law" are not sufficient to withstand a dismissal for failure to state a claim. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004). **The former pleading standard of "no set of facts" was replaced by the heightened pleading standard of "plausible grounds" established in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007).** The factual allegations in the complaint must be enough to raise a right to relief above the speculative level. Id. at 1965; McGinley, 361 F.3d at 1330.

In applying this general standard to an antitrust claim under the Sherman Act, Plaintiff must allege sufficient facts to support a "plausible," and not merely "conceivable," claim for relief. Bell Atlantic, 127 S.Ct. at 1965-66. Consequently, bare assertions of a conspiracy to restrain trade are insufficient to establish a claim upon which relief may be granted under §§ 1 and 2 of the Sherman Act. Id.; see also Jacobs v. Tempur-Pedic Int'l, Inc., 2007 U.S. Dist. LEXIS 91241 (S.D. Ga. 2007); Lady Deborah's, Inc. v. VT Griffin Servs., Inc., 2007 U.S. Dist. LEXIS 95138 (N.D. Ga. 2007). As in the case before the court, a complaint should be dismissed if the allegations in the complaint fail to allege "enough facts to suggest, raise a reasonable expectation of, and render plausible the elements of the claim." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007). See also Ghee v. Retailers Nat'l Bank, No. 07-14128, 2008 U.S. App. LEXIS 6858 at **6-7 (11th Cir. 2008) (applying the "plausibility" standard).

## II. COUNTS I THROUGH IV OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE FACTS SUFFICIENT TO SHOW CONSPIRACY, COMBINATION OR CONCERTED ACTION.

Plaintiff's alleged claims of violation of § 1 of the Sherman Act in Counts I and II of its

3

Complaint require a showing of conspiracy, combination or other concerted action. 15 U.S.C.

§ 1 (1982). In applying the general pleading standards to a claim alleged under § 1 of the Sherman Act, the complaint must state sufficient factual matter to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. Bell Atlantic, 127 S.Ct. at 1965. An allegation of parallel conduct and a bare assertion of conspiracy are not sufficient to sustain an action. The facts must raise a suggestion of preceding agreement. Id. at 1966. Conduct which is as consistent with permissible competition as with illegal conspiracy does not, standing alone, infer an antitrust conspiracy. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 597 n. 21 (1986). To hold otherwise would risk chilling zealous competition. Id. at 593-94.

Plaintiff also alleges claims under § 2 of the Sherman Act in Counts III and IV of its Complaint against all of the Defendants based on the same allegations of concerted action. A conspiracy to monopolize under § 2 of the Sherman Act has the following elements:

(1) An agreement to restrain trade, (2) deliberately entered into with the specific intent of achieving a monopoly rather than a legitimate business purpose, (3) which could have had an anticompetitive effect, and (4) the commission of at least one overt act in furtherance of the conspiracy.

U.S. Anchor Mfg., Inc. v. Rule Indus., Inc., 7 F.3d 986, 1001 (11th Cir. 1993). A claim for conspiracy under § 2 will fail for the same reasons as would a claim for conspiracy under § 1. See Potters Med. Ctr. v. City Hosp. Ass'n, 800 F.2d 568, 574 (6th Cir. 1986).

For all of the reasons noted in the separate Motion to Dismiss filed by the Authority, which these Defendants join and incorporate by this reference, the Authority is not a proper party and Plaintiff's Complaint fails to assert a claim that the Authority is part of any conspiracy or concerted action. The only other parties to this claim are PPHS and PPMH. PPMH is a subsidiary of PPHS. It is well established that a subsidiary cannot conspire with its parent corporation for purposes of the antitrust laws. Copperweld Corp. v. Independence Tube Corp.,

4

467 U.S. 752, 771 (1984).

The only other entity referenced in the Complaint as having any involvement in Defendants' alleged activities is Phoebe Health Partners, Inc. ("PHP"), not a named party. The Complaint alleges that PPHS has a 50% controlling interest in PHP, and that PHP negotiated and executed managed care contracts as agent for PPMH and under the direction of Phoebe. Complaint ¶¶ 11, 58. However, nowhere does the Complaint allege that PHP is a co-conspirator or that the Plaintiff is relying on PHP as part of its claim of concerted activity. Thus, there are no allegations of the required conspiracy between "separate entities." Id. at 768.

## III.    COUNT I OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE ALLEGED ANTICOMPETITIVE ACTIVITY IS NOT A PER SE VIOLATION OF § 1 OF THE SHERMAN ACT.

To establish a § 1 violation of the Sherman Act, Plaintiff must prove the following elements: (1) a combination or some form of concerted action between at least two legally distinct economic entities, and (2) such conduct constituted an unreasonable restraint of trade either per se or under the rule of reason. Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 95-96 (2d Cir. 1998). Count I should be dismissed because vertical tying arrangements are not per se violations of § 1 as a matter of law.

While in Jefferson Parish Hospital Dist. No. 2 v. Hyde, 466 U.S. 2 (1984), the Court recognized that certain tying arrangements were per se illegal, Id. at 12-16, in that same opinion the Court also approved vertical tying arrangements involving hospitals and recognized the competitive benefits of vertical tying arrangements. Id. at 29. Absent price fixing between a supplier and distributor, vertical restraints are generally subject to the "rule of reason" analysis and are not per se illegal. Copperweld, 467 U.S. at 768; Business Electronics v. Sharp Electronics, 485 U.S. 717, 724, 726 (1988), Electronics Communications Corp. v. Toshiba America Consumer Products, Inc., 129 F.3d 240, 243 (2d Cir. 1997). Palmyra has not pleaded

5

price fixing.

Starting with Jefferson, the Supreme Court has continued to clarify its view of tying arrangements and how they should be analyzed under the antitrust laws. In Illinois Tool Works, Inc. v. Independent Ink, Inc., 547 U.S. 28 (2006), the Court reviewed its history of tying cases and noted that its early disapproval of tying arrangements had substantially diminished and that tying arrangements may well be pro-competitive. Id. at 35-38. The Court went on to eliminate altogether evaluation of tying arrangements under the per se rule:

> While some such arrangements are still unlawful, such as those that are the product of a true monopoly or a marketwide conspiracy, see, *e.g. United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 145-146, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), that conclusion must be supported by proof of power in the relevant market rather than by a mere presumption thereof. (Footnote omitted)

Id. at 39-41. The Court concluded by stating:

> Today, we reach the same conclusion, and therefore hold that, in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.

Id. at 46. Consequently, such arrangements should be evaluated under the rule of reason. Id. at 39-41. Accord: Sheridan v. Marathon Petroleum Co., 530 F.3d 590, 593-94 (7th Cir. 2008).

See discussion of rule of reason in Brief Point IV, infra pp. 6-7.

In addition, non-price restrictions are also generally analyzed under the rule of reason. Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984). Exclusive dealing contracts are not illegal per se and are evaluated under the rule of reason. Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 333-35 (1961). For all of these reasons, a per se analysis is not applicable and Count I should be dismissed as a matter of law.

## IV. COUNTS I AND II OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE FACTS THAT CREATE A PLAUSIBLE INFERENCE OF COERCION.

Count II asserts a claim under § 1 of the Sherman Act based on the same allegations as

Count I, except under the rule of reason. The rule of reason requires evidence of an unreasonable restraint on competition, which involves an inquiry into the actual effect on competition in the relevant market. Jefferson, 466 U.S. at 17-18, 29. The elements of an illegal tying arrangement are as follows: (1) two separate and distinct products, (2) actual coercion by seller that forces buyer to take the tied product, (3) seller's market power in the tying product or ability to force the buyer to take the tied product, (4) anticompetitive effect in the tied product market, and (5) more than an insubstantial amount of interstate commerce affected by tying arrangement in the tied product market. See, e.g., Jefferson Parish, 466 U.S. at 12-18; Tic-X-Press v. Omni Promotions Co. of Georgia, Atlanta Coliseum, Inc., 815 F.2d 1407, 1414 (11th Cir. 1987). Coercion is an essential element:

> Our cases have concluded that the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such "forcing" is present,... the Sherman Act is violated.

Jefferson Parish, 466 U.S. at 12 (emphasis added). Thus, before considering a rule of reason analysis, Palmyra must allege facts that make it plausible that Defendants used their alleged market power in the tying market to coerce commercial insurers to enter into exclusive contracts for the alleged tied product markets that they otherwise would not have been willing to enter into. See Aquatherm Industries v. Florida Power & Light, 145 F.3d 1258, 1263 (11th Cir. 1998).

The Complaint makes mere conclusory allegations that the Defendants coerced Blue Cross and CIGNA to enter into exclusive managed care contracts for all acute care services with PPMH. Complaint ¶¶ 72, 77. The Complaint fails to allege any facts that present a plausible claim for coercion. All it alleges is that these insurers negotiated agreements that contained an exclusivity provision. There is no allegation that PPMH threatened not to provide the alleged tying services if these insurers did not enter into exclusive agreements, nor is there any allegation

7

establishing a causal connection between the negotiations with Blue Cross and CIGNA and the required intent to exclude Palmyra from the market or with Palmyra's alleged damages.

Even vigorous negotiation of an attractive contract does not amount to forcing or coercing a customer to buy tied products that the buyer does not want, as the following cases show. One may use "strong persuasion, encouragement, or cajolery to the point of obnoxiousness to induce" action, but an antitrust violation only occurs if it goes beyond persuasion and forces the customer to buy the tied product in order to obtain the tying product. Bob Maxfield, Inc. v. American Motors Corp., 637 F.2d 1033, 1037 (5th Cir. 1981). See also T. Harris Young & Assocs. v. Marquette Elecs., 931 F.2d 816, 823 (11th Cir. 1991).

What constitutes sufficient "force" to establish an illegal tying arrangement is more than mere bundling of products. Zschaler v. Claneil Enters, Inc., 958 F. Supp. 929 (D. Vt. 1997). In Webb v. Primo's, Inc., 706 F. Supp. 863 (N.D. Ga. 1988), the Northern District of Georgia held that because there was no evidence that the defendant prevented the plaintiff from using an alternative supplier, the evidence was insufficient to establish "coercion." Id. at 868. See also ValuJet Airlines, Inc. v. Trans World Airlines, Inc., 1995 U.S. Dist. LEXIS 21532, *15-16 (N.D. Ga. 1995) (holding negotiations consistent with competitive goals does not constitute conspiracy or an unreasonable restraint of trade). Similarly, courts have rejected claims of antitrust violations arising out of an insurer and health care provider negotiating for discounted fees on behalf of the insurer's subscribers. Kartell v. Blue Shield of Massachusetts, Inc., 749 F.2d 922, 924-29 (1st Cir. 1984); see also Austin v. Blue Cross & Blue Shield of Alabama, 903 F.2d 1385, 1389 (11th Cir. 1990).

Phoebe's negotiation with Blue Cross to obtain exclusivity as an in-network provider in order to obtain greater patient volume is a justifiable business purpose. See Complaint ¶ 42. Negotiations to obtain such contracts are not "coercive;" they are part of competitive goals of

8

businesses (i.e. providing the best quality of healthcare at the most affordable prices). See Complaint ¶¶ 40-41. Further, exclusive contracts as such are not considered a restraint of trade and do not support a claim for antitrust violation. Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1488 (9th Cir. 1991); see also St. Mary's Hosp. of Athens v. Radiology Professional Corp., 421 S.E.2d 731, 737 (Ga. Ct. App. 1992) (a non-antitrust case holding that hospitals have the "authority to establish exclusive relationships with physicians in a given specialty...").

Other jurisdictions have addressed exclusive dealing agreements between hospitals and third party payors and have tended to favor the permissibility of such contracts. See Nelson Mullins, *Exclusionary Practices and Private Litigation: Current Developments in the Health Care Area*, March 29, 2005; Women's Clinic v. St. John's Health Sys., Inc., 252 F. Supp. 2d 857, 866 (W.D.Mo. 2002) (holding an agreement between hospital and its payors "is not the type of 'exclusive' agreement with which the antitrust laws is concerned"). It was noted that nowhere in the agreements do they prevent the payor from paying for out-of-network services. Id. at 865-66. Further, payors' ability to cancel the contract on relatively short notice, i.e., twenty to ninety days, "indicates the benign nature of any exclusive effect." Id. at 866. Likewise, the contract attached as Exhibit C to the Complaint provides for termination upon ninety days notice.

The Complaint itself notes that the negotiation of managed care contracts between hospitals and commercial insurers and claim administrators is part of the normal course of business in the health industry. Complaint ¶¶ 40-43. Nowhere in the Complaint does Plaintiff allege that PPMH ever threatened to not enter into managed care contracts. Thus, the only issue was the terms of the contracts. The only alleged coercion is that the hospital would have required a higher reimbursement rate if it had not been granted an exclusive contract. Complaint ¶ 52. However, logically, this is an entirely reasonable business position since both parties get

something they want. The insurer gets a contract with more lucrative terms that it can use to sell its plan to customers. Like Palmyra, the hospital wants a contract as in-network provider because it tends to steer commercially insured patients to the hospital and increase its volume of patients. Complaint ¶ 42. Neither party is forced to take something it did not want. If PPMH had true market power and could have forced exclusivity, then it should also have been able to insist on exclusivity with no change in the reimbursement rate.

## V. COUNTS I THROUGH IV OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF DOES NOT HAVE STANDING TO BRING AN ANTITRUST CLAIM.

Standing is a question of law determined by the court examining the allegations of the complaint. Austin v. Blue Cross, 903 F.2d at 1387; Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1448 (11th Cir. 1991). Antitrust standing requires two inquiries: (1) whether the plaintiff has suffered an antitrust injury; and (2) whether the plaintiff is an efficient enforcer of the antitrust laws. Id. at 1449-51. Further, in order to establish antitrust standing, plaintiff must establish a causal link to the injury in addition to showing that it is a proper party. Austin, 903 F.2d at 1389. For claims for injunctive relief under 15 U.S.C. § 26, standing requires the same showing of antitrust injury and causation, but the court is "less concerned" about the efficient enforcer prong. Todorov, 921 F.2d at 1452.

### A. Plaintiff Failed to Plead An Antitrust Injury.

Antitrust injury is: "injury of the type the antitrust laws were intended to prevent and that flows from that which makes Defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). The policy behind this inquiry is the oft-repeated observation that the antitrust laws were enacted for the protection of competition, not to protect competitors. Id. at 488; Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962). Another important step in the analysis is that the court must identify the relevant market affected. Robles

v. Humana Hosp. Cartersville, 785 F. Supp. 989, 997, fn.5 (N.D. Ga. 1992).

Palmyra has failed to adequately allege the size or nature of the product market. Nothing in the Complaint alleges that commercial insurers negotiate managed care contracts for separate medical services as opposed to all acute care services. In this context, there are no tying and tied services because they are not separate products to the insurers. Palmyra alleges that Phoebe captured seventy percent of the acute care services market (Complaint ¶ 51), but this is a patient market. The alleged exclusive contracts do not force patients to buy services they would otherwise forego. See Kochert v. Greater Lafayette Health Services, 372 F. Supp. 2d 509, 515 (N.D. Ind. 2004). To what extent Palmyra being foreclosed from being a Blue Cross in-network provider has any effect on competition is based on pure speculation, not plausible allegations.

Palmyra makes conclusory allegations or implies that, if Blue Cross and other insurers did not have exclusive contracts with Phoebe, reimbursement rates would be lower resulting in lower costs to insurers and patients and Palmyra would have greater income. See for example Complaint ¶¶ 2, 4, 62, 69. However, no plausible grounds are alleged to support these conclusory allegations. The Complaint alleges that PPMH negotiated lower reimbursement rates than it would have required if the contract was not exclusive. Complaint ¶ 52. Thus, exclusivity leads to lower rates, a pro-competitive result that is good for patients.

There is no basis in the Complaint to assume that if the contracts were not exclusive, Phoebe (or Palmyra) would grant the same low reimbursement rates or that Palmyra can offer comparable services and patient care. Palmyra does not allege it has been foreclosed from providing services to patients. Indeed, Palmyra admits in the Complaint that it cannot offer all of the services offered by Phoebe. Complaint ¶¶ 22-24. An antitrust plaintiff cannot recover where his damages were caused by his own business shortcomings and failure to compete effectively. See Read v. Med. X-Ray Ctr., P.C., 110 F.3d 543, 545-46 (8th Cir. 1997); Robles, 785 F. Supp.

at 999 (holding that Plaintiff's Sherman Act claims did not rest on a showing of anti-competitive impact, but merely on the fact that Plaintiff was a disappointed competitor).

This case is analogous to <u>Austin v. Blue Cross</u>, 903 F.2d 1385 (11th Cir. 1990). Patients filed an antitrust suit alleging that Blue Cross conspired with hospitals by negotiating contracts whereby the hospitals discounted their normal charges to Blue Cross members, and consequently, patients who were uninsured or insured by companies other than Blue Cross paid higher prices. <u>Id.</u> at 1386. Dismissing the complaint for lack of antitrust standing, the Court found that the complaint failed to allege that Blue Cross played any role in the decision the hospitals made to set rates for others who were not insured or insured by other insurers. <u>Id.</u> at 1389-90. Further, the Court held that Blue Cross' bargaining to obtain discounts for its customers from hospitals did not constitute a restraint of trade, but actually promoted competition. <u>Id.</u> at 1391. <u>See also</u> <u>Travelers Ins. Co. v. Blue Cross of W. Pennsylvania</u>, 481 F.2d 80, 84 (3rd Cir. 1973) (holding under similar facts that Blue Cross had done no more than what all rational businesses do, "i.e., get the best deal possible.").

Patients are free to choose other medical care providers as well as either Palmyra or Phoebe and, thus, competition in the marketplace is not harmed and there is no injury. <u>See</u> Complaint ¶ 41. Further, from the perspective of the commercial insurers, Phoebe's exclusive contract is not an interference with Palmyra's freedom to compete because the insurers choose who to contract with. The antitrust laws do not dictate with whom companies can or cannot contract. <u>Monsanto</u>, 465 U.S. at 761. The Complaint fails to establish a causal link between the alleged exclusive contracts and any alleged harm to the marketplace or to Palmyra. As in <u>Austin</u>, while Phoebe plays a role in negotiating the managed care contracts, it does not control the terms to which the insurers will agree or which health providers with whom the insurers are willing to contract.

As noted above, even if the alleged exclusive contracts caused harm to Palmyra's bottom line, this fact alone does not constitute antitrust injury. It is not a violation of the antitrust laws for a business entity to obtain monopoly power as the result of a superior product, business acumen or historical accident. United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966).

B.     Palmyra Is Not An Efficient Enforcer.

The second prong of standing is whether the Plaintiff is an efficient enforcer of the antitrust laws. These factors include:

> The directness of the injury and whether there "exists an identifiable class of persons whose self-interest would motivate them to vindicate the public interest in antitrust enforcement", Id.; (2) the nature of the damages; (3) the importance of avoiding duplicative recoveries; and, (4) whether the plaintiff can enforce an antitrust judgment efficiently and effectively.

Robles, 785 F. Supp. at 999, quoting from and citing to Todorov, 921 F.2d at 1451-52. Again, the court's finding in Robles is similar to the analysis applicable to the case at bar: "Dr. Robles' only interest is that *he* be allowed to compete in Bartow County, not that patients receive quality services at competitive prices." Robles, 785 F. Supp. at 999 *(Emphasis in original)*. See also Med. Sav. Ins. Co. v. HCA, Inc., 2005 U.S. Dist. LEXIS 20206, *24-25 (M.D. Fl. 2005), aff'd 2006 U.S. App. LEXIS 16430 (11th Cir. 2006) (holding that even assuming an antitrust injury was established, the patients, as direct purchasers of the medical services, would be the efficient enforcer rather than the insurer who was claiming that the hospitals were overcharging rates).

Likewise, Palmyra's Complaint essentially states that it has not been allowed to compete in the relevant geographic market to the extent that it would like. Palmyra is not a patient/consumer of medical services, and its first interest is its profitability rather than vindicating the public interest in antitrust enforcement.

## VI.    COUNT III OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE OF INSUFFICIENT PLEADINGS TO STATE A PLAUSIBLE CLAIM FOR MONOPOLIZATION.

13

Count III alleges a claim of monopolization. Monopolization requires a showing that a defendant either unfairly attained or maintained monopoly power. Monopoly power consists of the power to control prices or exclude competition. U.S. v. Grinnell Corp., 384 U.S. at 570-71. There are neither plausible allegations of actual exclusion of competition nor plausible allegations of price control on the part of Phoebe in the Complaint.

Palmyra alleges that Defendants achieved and maintained monopolies through the same coercive exclusive agreements alleged as a basis for their other claims. Complaint ¶ 84. However, as previously discussed, Palymra has failed to adequately allege coercion or that it has suffered an antitrust injury. See Brief Points IV and V, infra pp. 6-13.

Nor as a matter of law can Palmyra base its claim of monopoly on allegations that Phoebe achieved or maintained monopoly power as a result of the Georgia Certificate of Need ("CON") laws and the Georgia Dept. of Community Health ("DCH") denying Palmyra's application for a CON in these areas. Complaint ¶¶ 17-24. These actions are exempt from application of the antitrust laws pursuant to the state action exception and the Noerr-Pennington doctrine.

The CON process was established pursuant to state law and DCH is charged with administering the program and applying the statute. O.C.G.A. § 31-6-1, et seq.; Dep't of Cmty. Health, Div. of Health Planning v. Gwinnett Hosp. Sys., Inc., 586 S.E.2d 762, 764-66 (Ga. App. 2003). Thus, it falls within the state action exemption established by Parker v. Brown, 317 U.S. 341 (1943). See discussion of the exemption in the Authority's Motion to Dismiss and Brief.

The Noerr-Pennington doctrine protects the rights of freedom of expression and resort to governmental processes. Eastern R.R. Presidents Conference v. Noerr Motor Freight, 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965). The doctrine provides immunity and prevents the imposition of antirust liability on individuals or entities attempting to

influence judicial and administrative actions and extends to all departments of the government. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

Under the Noerr-Pennington doctrine, a defendant's attempts to prevent the granting of a CON by lawfully attempting to induce state administrative and judicial action favorable to itself and detrimental to a competitor is not a violation of the antirust laws. St. Joseph's Hosp., Inc. v. Hosp. Auth. of America, 795 F.2d 948, 955 (11th Cir. 1986). Thus, Defendants' alleged opposition to Palmyra's application for CON approval for a cardiac catheterization laboratory and obstetrics services are immune from antitrust under the Noerr-Pennington doctrine.

## VII. COUNT IV OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE OF INSUFFICIENT PLEADINGS TO STATE A PLAUSIBLE CLAIM FOR ATTEMPTED MONOPOLIZATION.

The elements of attempted monopolization under § 2 of the Sherman Act are: (1) that defendant possess the specific intent to achieve monopoly power by predatory or exclusion conduct, (2) that defendant in fact committed such anticompetitive conduct and (3) there existed a dangerous probability that the defendant might succeed. U.S. Anchor Mfg., Inc. v. Rule Indus., Inc., 7 F.3d 986, 993 (11th Cir. 1993). Section 2 can be applicable to scrutiny of single firms, but only when it poses a danger of monopolization. Copperweld Corp., 467 U.S. at 767-68. The policy concern is the need to not detrimentally effect robust competition. Id.

Plaintiff's Complaint bases its attempted monopolization claim on the same alleged anti-competitive conduct on which it bases its other antitrust claims: the Defendants' allegedly using their market power in the tying market to coerce commercial insurers and claim administrators to agree to exclusive managed care contracts for the tied services. Complaint ¶ 93. Therefore, the same arguments set forth in Brief Points II, IV and V are equally applicable to Palmyra's attempted monopolization claim. See infra pp. 3-5, 6-13.

## VIII. THE STATE LAW CLAIMS IN COUNTS V AND VI SHOULD BE DISMISSED.

A.    Supplemental Jurisdiction.

In any civil action of which the district courts have original jurisdiction, the courts also have supplemental jurisdiction over all other claims that form the same case or controversy. 28 U.S.C.S. § 1367(a). A court may decline to exercise supplemental jurisdiction over a claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C.S. § 1367 (c) (2008) (Emphasis added). Generally, a court should dismiss state law claims when federal claims are dismissed, though the decision to exercise jurisdiction over state law claim is discretionary. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In Gibbs, the Supreme Court stated factors for the Court to consider when deciding whether to exercise supplemental jurisdiction over state law claims, including: (1) judicial economy; (2) convenience; (3) fairness to the parties; and (4) whether state issues substantially predominate. Id. at 726-27. Applying these factors to the case at bar leaves little doubt the dismissal of the federal claims warrants dismissal of the state law claims in Counts V and VI. Since it would be a pre-answer dismissal, minimal judicial resources and resources of the parties have been expended. The parties are all located in Albany, Georgia, so convenience of the parties is not a factor. The state claims are derivative of the federal claims and dismissal of the federal claims should warrant outright dismissal of the state law claims.

B.    Plaintiff Failed to Adequately Plead a Plausible Claim for Tortious Interference with Business Relations.

Count V of the Complaint asserts a state law claim for tortious interference with business relations based on the alleged tying arrangement. Plaintiff must show the following four

16

elements: (1) defendant acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) to induce a third party or parties not to enter into or continue a business relationship with the plaintiff; (4) for which the plaintiff suffered some financial injury. Perimeter Realty v. GAPI, Inc., 533 S.E.2d 136, 144-45 (Ga. Ct. App. 2000).

Conduct in furtherance of legitimate business interests with ancillary effects of terminating an existing or potential business relationship of another is not wrongful or improper conduct. Forehand v. Perlis Realty Co., 400 S.E.2d 644, 647 (Ga. Ct. App. 1990) (holding that a competing commercial leasing business' action in inducing a lessee to relocate its business did not amount to tortious interference because the defendant's actions were only in the interest of fair competition); Campbell v. Carroll, 174 S.E.2d 375, 378 (Ga. Ct. App. 1970). Unless a plaintiff demonstrates that the defendant acted improperly through actions that generally involve predatory tactics, such as the use of physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions, wrongful conduct is not established. Disaster Servs., Inc. v. ERC P'ship., 492 S.E.2d 526, 529-30 (Ga. Ct. App. 1997), quoting American Buildings Co. v. Pascoe Bldg. Systems, 392 S.E.2d 860 (Ga. 1990); see also Sommers Co v. Moore, 621 S.E.2d 789, 791-92 (Ga. Ct. App. 2005). As discussed at length in Brief Points IV and V, see infra pp. 6-13, Palmyra failed to plead a plausible claim for coercion or any other improper conduct that would meet the first element of the cause of action for tortious interference with business relations.

C. Plaintiff Has Failed To Plead a Plausible Violation of the Georgia Constitution.

Article III, § 6, ¶ 5(c) of the Georgia Constitution sets forth the public policy of the state against contracts which may have the effect of or which are intended to have the effect of defeating or lessening competition or encouraging a monopoly. Georgia law prohibits contracts that are general restraints of trade and such contracts are deemed unlawful and void. O.C.G.A.

17

§ 13-8-2 (a) (2) (2008). However, not all restraints of trade are unconstitutional.

Courts will only hold a contract unlawful if it is clearly injurious to the public interest. Porubiansky v. Emory Univ., 275 S.E.2d 163, 165 (Ga. Ct. App. 1980), aff'd Emory Univ. v. Porubiansky, 282 S.E.2d 903 (Ga. 1981); see also Ferrero v. Associated Material Inc., 923 F.2d 1441, 1447-48 (11th Cir. 1991). In applying a "rule of reason" analysis, a court will hold a restraint valid if it is reasonable in light of the interests of the parties and the public and the contract is valid in other respects. Id. at 1447; Durham v. Stand-by Labor of Georgia, Inc., 198 S.E.2d 145, 148 (Ga. 1973); Wedgewood Carpet Mills, Inc. v. Color-Set, Inc., 254 S.E.2d 421, 424 (Ga. Ct. App. 1979).

As these state law claims are derivative claims of the antitrust claims in the Complaint (See Complaint ¶¶ 97-98, 102-103), arguments in favor of dismissing Counts I-IV are equally applicable. Because Palmyra failed to plead sufficient facts to meet the high burden of establishing that the alleged exclusive contracts are a restraint on trade, or lessen competition or are clearly and conclusively injurious to the public, Count VI of the Complaint must be dismissed. See infra pp. 6-13.

## IX. PLAINTIFF'S CLAIMS ARE TIME BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

### A. Antitrust Causes of Action Are Subject to a Four-Year Statute of Limitations.

Plaintiff's action is brought pursuant to 15 U.S.C. §§ 15 and 26. Under 15 U.S.C. § 15b, any action to enforce any cause of action under § 15 must be commenced within four years after the cause of action has accrued. See Sulmeyer v. Coca Cola Co., 515 F.2d 835, 842, fn.9 (5th Cir. 1975). The same statutory period applies to equitable relief in aid of a legal right if the legal right is barred by the statute. Russell v. Todd, 309 U.S. 280, 289 (1940); see also Farbenfabriken Bayer, A.G. v. Sterling Drug, Inc., 197 F.Supp. 627, 629 (D.N.J. 1961).

18

The Complaint is time-barred by the four-year limitations period because the contracts alleged to be illegal, namely the exclusive contracts, had fixed terms upon their signing. Courts have held that when the terms of the contract are fixed upon signing, the statute of limitations period begins to run from the point in time the contracts were entered into and any alleged damages resulting from the unlawful contract are ascertainable from that point. El Paso v. Darbyshire Steel Co., Inc., 575 F.2d 521, 523 (5th Cir. 1978); see also Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714-15 (11th Cir. 1984); Armbrister v. Roland Int'l Corp., 667 F. Supp. 802, 809 (M.D. Fla. 1987) (holding that antitrust injuries are set in motion by a contract that fixed the rights and liabilities of the parties at its inception).

Palmyra alleges in the Complaint that due to Phoebe's exclusive contracts with commercial insurers, it has suffered injury; particularly, loss of revenue from losing in-network status with Blue Cross. Complaint ¶ 67. Phoebe allegedly entered into its exclusive contract with Blue Cross in 2000. Complaint ¶ 52. At that point, the terms of the contract were fixed. Any benefits that Phoebe may have received subsequent to the initial signing of the contract would not revive the statute of limitations period as the act of receiving continued benefits would not be the cause of any new damage. Thus, the four-year statute of limitation ran in 2004, long before the filing of Palmyra's Complaint.

B.    Tortious Interference with Business Relations.

Any action regarding an allegation of tortious interference with business must be brought within four years. O.C.G.A. § 9-3-31 (2008); Taylor v. Greiner, 275 S.E.2d 737, 740 (Ga. Ct. App. 1980); Kidd v. First Commerce Bank, 591 S.E.2d 369, 372 (Ga. Ct. App. 2003). The statute of limitations begins to run on the date when the plaintiff could first maintain an action to a successful result. Worrill v. Pitney-Bowes, Inc., 197 S.E.2d 848, 850 (Ga. Ct. App. 1973). More specifically in a tort action, if the act causing the damage is itself an invasion of some right

of the plaintiff and constitutes a legal injury giving rise to a cause of action, the statute of limitations begins to run at the time the act is committed, however slight the damage. See <u>Hunt</u> <u>v. Star Photo Finishing Co.</u>, 153 S.E.2d 602, 605 (Ga. Ct. App. 1967); <u>U.S. Anchor</u>, 7 F.3d at 1005, fn.30, quoting <u>Fox v. Ravinia Club</u>, 414 S.E.2d 243, 244 (Ga. Ct. App. 1991). Thus, the analysis is the same. The alleged wrongful act was entering into an exclusive contract with Blue Cross. The statute of limitations ran in 2004.

     C.     <u>Georgia Constitutional Claim.</u>

Count VI, based upon alleged violations of the GA Constitution, Art. 3, § 6, ¶ 5 and O.C.G.A. § 13-8-2, is premised upon allegations that the exclusive contracts have caused antitrust injuries to Palmyra. The statute of limitations for oral contracts is four years. O.C.G.A. § 9-3-25. When the contract that forms the basis of the action is in writing, O.C.G.A. § 9-3-24 is applicable which establishes a six-year statute of limitations period. <u>Muscogee County Board of</u> <u>Education v. Boisvert</u>, 396 S.E.2d 303, 306 (Ga. Ct. App. 1990). Even if the alleged exclusive contract between PPMH and Blue Cross is in writing and the six-year statute applies, the suit is time-barred as the injuries claimed by Palmyra allegedly began in 2000.

<strong>CONCLUSION</strong>

For all of the above reasons, Palmyra's Complaint should be dismissed in its entirety.

Respectfully submitted this 26th day of August, 2008.

               <u> /s/ Karin A. Middleton           </u>
               Karin A. Middleton
               Georgia Bar No. 011235
               Baudino Law Group, PLC
               2547 LaFayette Plaza Drive, Suite E
               Albany, GA 31707
               Telephone: (229) 883-0051
               Facsimile: (229) 888-6190
               E-mail: middleton@baudino.com

*/s/ Denise Cleveland-Leggett*

Denise Cleveland-Leggett
Georgia Bar No. 445397
E-mail: leggett@baudino.com

Amy J. McCullough
Georgia Bar No. 278073
E-mail: McCullough@baudino.com

Baudino Law Group, PLC
400 Colony Square, Suite 2020
Atlanta, GA 30361
Telephone: (404) 685-8199
Facsimile: (404) 685-8286

ATTORNEYS FOR DEFENDANTS PHOEBE
PUTNEY MEMORIAL HOSPITAL, INC. AND
PHOEBE PUTNEY HEALTH SYSTEM, INC.

**OF COUNSEL:**

E. Ralph Walker
Pro Hac Vice No. 842161
E-mail: walker@baudino.com

David J. Darrell
Pro Hac Vice No. 842166
E-mail: darrell@baudino.com

Baudino Law Group, PLC
2600 Grand Avenue, Suite 300
Des Moines, Iowa 50312
Telephone: (515) 282-1010
Facsimile: (515) 282-1066

ATTORNEYS FOR DEFENDANTS PHOEBE
PUTNEY MEMORIAL HOSPITAL, INC. AND
PHOEBE PUTNEY HEALTH SYSTEM, INC.

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| PALMYRA PARK HOSPITAL, INC., ) | |
| d/b/a PALMYRA MEDICAL CENTER, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | |
| ) | CIVIL ACTION FILE NO.: |
| PHOEBE PUTNEY MEMORIAL ) | 1:08-CV-000102-WLS |
| HOSPITAL, INC.; PHOEBE PUTNEY ) | |
| HEALTH SYSTEM, INC.; AND ) | |
| HOSPITAL AUTHORITY OF ALBANY/ ) | |
| DOUGHERTY COUNTY, ) | |
| ) | |
| DEFENDANTS. ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2008 the foregoing pleading was filed

electronically using CM/ECF system automatically serving the following attorneys of record via

email:

William H. Hedrick
127 North Westover Blvd.
Albany, GA 31707
Telephone: (229) 883-7463
Facsimile: (229) 434-1581
E-mail: williamhedrick@bellsouth.net

M. Russell Wofford, Jr.
King & Spalding, LLP
1180 Peachtree Street NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
E-mail: rwofford@kslaw.com

Jeffrey S. Spigel
King & Spalding, LLP
1700 Pennsylvania Avenue NW, Suite 200
Washington, D.C. 20006-2706
Telephone: (202) 626-2626
Facsimile: (202) 626-3737
E-mail: jspigel@kslaw.com

Christine A. Hopkinson
1180 Peachtree Street NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
E-mail: chopkinson@kslaw.com

Edgar B. Wilkin, Jr.
Perry & Walters, LLP
P.O. Box 71209
Albany, GA 31708-1209
Telephone: (229) 439-4000
E-mail: ewilkin@perrywalters.com

Further, I certify that on the date first written above, the following attorneys were served

a true copy of the foregoing pleading via regular United States post:

John Passarelli
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
E-mail: John.Passarelli@KutakRock.com

James Sulentic
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
E-mail: James.Sulentic@KutakRock.com

Dated this 26th day of August, 2008.

*/s/ Karin A. Middleton*
Karin A. Middleton
Georgia Bar No. 011235
Baudino Law Group, PLC
2547 LaFayette Plaza Drive, Suite E
Albany, GA 31707
Telephone: (229) 883-0051
Facsimile: (229) 888-6190
E-mail: middleton@baudino.com