IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| PALMYRA PARK HOSPITAL, INC., d/b/a/ PALMYRA MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.; PHOEBE PUTNEY HEALTH SYSTEM, INC.; AND HOSPITAL AUTHORITY OF ALBANY/DOUGHERTY COUNTY,<br><br>Defendants. | Case No. 1:08-CV-102-WLS<br><br>**DEFENDANT HOSPITAL AUTHORITY OF ALBANY/DOUGHERTY COUNTY'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

## I. INTRODUCTION

Defendant Hospital Authority of Albany/Dougherty County ("Hospital Authority"), by and through its counsel and pursuant to Middle District of Georgia LR 7.1, respectfully submits this Brief in Support of its Motion to Dismiss the Complaint of Plaintiff, Palmyra Park Hospital, Inc., ("Palmyra") for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

As outlined below, Palmyra's Complaint against Hospital Authority should be dismissed as a matter of law for two reasons. First, the Hospital Authority is immune as a matter of law from antitrust liability by virtue of the state action immunity doctrine. Second, Palmyra has failed to allege (and cannot allege) facts sufficient to give rise to a claim for relief under Plaintiff's federal antitrust claims (Counts I through IV) or Plaintiff's pendent State law claims

(Counts V and VI). Accordingly, the Court should dismiss the Complaint with prejudice and without leave to amend.

## II. NATURE OF THE CASE

Palmyra filed a Complaint against Phoebe Putney Memorial Hospital, Inc. ("PPMH"), Phoebe Putney Health System, Inc. ("PPHS") (collectively referred to as "Phoebe Putney") and the Hospital Authority. The Hospital Authority is a "public body corporate and politic" of Albany-Dougherty County created in and for Albany-Dougherty County, Georgia pursuant to O.C.G.A. § 31-7-72. Phoebe Putney is a Georgia non-profit hospital organization operating in Albany, Georgia.

In its Complaint, Palmyra asserts six claims for relief: violations of the Sherman Act, 15 U.S.C. §§ 1, 2 (Counts I through IV); tortious interference with business relations (Count V); and violations of the Georgia Constitution Article 3, § 6 and O.C.G.A. § 13-8-2 (Count VI).

Palmyra's claims against Defendants are premised on the same basic allegations. According to Palmyra, PPMH offers certain services that, until recently, Palmyra has not been able to offer under Georgia's Certificate of Need laws, namely acute care obstetrics, neonatology and cardiovascular services. Consequently, Palmyra alleges that PPMH has market power in these three areas.

The "Illegal Conduct" alleged by Palmyra in the Complaint consists of the use by PPMH of this market power to negotiate and execute a number of contracts pursuant to which PPMH either expressly or defacto secures exclusive managed-care relationships. Palmyra also asserts that non-party Phoebe Health Partners ("PHP") has negotiated and executed such managed-care contracts with commercial insurers and claim administrators on behalf of and as an agent for Phoebe Putney. Complaint ¶ 11.

Specifically, Palmyra alleges that Defendants forced Blue Cross Blue Shield of Georgia ("BCBSGA") to agree to make its contract exclusive for inpatient services. Complaint ¶ 56. Palmyra also alleges that another insurer, CIGNA, is also considering entering into an exclusive managed-care contract with Defendants. Complaint ¶ 56. Palmyra further maintains Defendants have coerced other commercial insurers and claim administrators to contract for hospital services through Phoebe Health Partners. Complaint ¶ 58. Palmyra also alleges that the local Public Employees' Plan has entered into an exclusive contract with Defendants. Complaint ¶ 59, Exhibit C.

While the Hospital Authority owns all assets of Phoebe Putney, the allegations of the Complaint confirm that such assets and all hospital operations are under the control of PPMH. *See* Complaint ¶ 7. Specifically, the Complaint makes it clear that PPMH or its agent PHP (i) is solely responsible for negotiation and execution of all contractual relations with managed-care organizations, and (ii) dictates the terms and conditions on which PHP permits commercial insurers and claim administrators access to Phoebe Putney. *See* Complaint ¶¶ 7, 11. It is also critical to note, for purposes of this motion, that the "**Hospital Authority cannot countermand, approve or revise PPMH's decisions in these and other management areas during the term of the Lease. PPMH, in short, controls all assets and operations at Phoebe Putney**." Complaint ¶ 7 (emphasis added).

## III. STANDARD OF REVIEW

"Under the Federal Rules, a defendant may file a motion under Rule 12 before filing an answer to a complaint." *Greenberg v. National Geographic Soc.*, 488 F.3d 1331, 1340 (11th Cir. 2007). A complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) in the event it fails to state a claim upon which relief may be granted. *Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir. 1992). When ruling on a motion to dismiss, the Court must

accept the complaint's allegations as true and liberally construe the complaint in the light most favorable to the plaintiff. *Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004). Plaintiff's obligation to provide grounds for entitlement to relief, however, requires more than conclusory allegations. It is well-settled that "unsupported conclusions of law or of mixed fact and law" are not sufficient to withstand a dismissal for failure to state a claim. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted). A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

To survive a motion to dismiss, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A plaintiff has a duty to provide the grounds upon which a particular claim rests under Federal Rule of Civil Procedure 8, and this duty compels a plaintiff to supply, at a minimum, the necessary facts and grounds that will support his right to relief. *Id.* at 1964-65. A complaint should be dismissed if the allegations in the complaint fail to allege "enough facts to suggest, raise a reasonable expectation of, and render plausible" the elements of the claim. *Watts v. Fl. Int'l Univ.*, 495 F.3d 1289, 1297 (11th Cir. 2007); *Bell Atlantic Corp.*, 127 S. Ct. at 1968. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic Corp.*, 127 S. Ct. at 1968.

In a fact-intensive antitrust case, dismissal on the pleadings is also appropriate under Rule 12 where a doctrine applies which provides immunity for the alleged conduct. *See Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1235 (11th Cir. 2005). Taking all the facts alleged in Palmyra's Complaint as true, and considering them under the applicable standard

of review described above, Palmyra's Complaint fails to state a claim for which relief may be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV. ARGUMENT

### A. PLAINTIFF'S COMPLAINT AGAINST HOSPITAL AUTHORITY SHOULD BE DISMISSED BECAUSE HOSPITAL AUTHORITY IS IMMUNE FROM ANTITRUST LIABILITY PURSUANT TO THE STATE ACTION DOCTRINE

#### *1. Government Instrumentalities And Subdivisions Are Immune From Federal Antitrust Liability*

The Complaint acknowledges the Hospital Authority is a creation of Georgia's Hospital Authorities Law, O.C.G.A. §§ 31-7-70, *et seq*. The law is clear that governmental entities acting pursuant to state law are immune from operation of the antitrust laws. In *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court found the Sherman Act, 15 U.S.C. § 1, *et seq*. (1982), was enacted to prohibit *private* restraints on trade rather than anticompetitive actions by states or official action directed by a state. *Parker*, 317 U.S. at 350-51. Accordingly, the Supreme Court in *Parker* established that states are immune from federal antitrust law for their actions as sovereign entities. *Id*. at 350-51.

In *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 41-47 (1985), the Supreme Court extended the *Parker* doctrine, also known as the state action immunity doctrine, to provide immunity to both instrumentalities and political subdivisions of states whose actions are pursuant to a "clearly articulated" state policy to displace competition. More specifically, state action immunity attaches to such an entity if the following three requirements are met: (1) the entity is a political subdivision of the state; (2) the state has authorized the political subdivision to perform the challenged action through statute; and (3) the state has clearly articulated a policy authorizing anticompetitive conduct. *See also City of Columbia v. Omni Outdoor Adver.*, 499 U.S. 365, 370-73 (1991); *Bankers Ins. Co. v. Florida Residential Prop. and Cas. Joint Underwriting*

*Assoc.*, 137 F.3d 1293, 1298 (11th Cir. 1998); *F.T.C. v. Hosp. Bd. of Dirs. of Lee County*, 38 F.3d 1184, 1188 (11th Cir. 1994); *Crosby v. Hosp. Auth. of Valdosta and Lowndes County*, 93 F.3d 1515, 1532 (11th Cir. 1996). Each of these three requirements is analyzed below in the context of the present case.

### 2. *The Hospital Authority is An Instrumentality of the State of Georgia for Purposes of State-Action Immunity*

In *Crosby v. Hospital Authority of Valdosta and Lowndes County*, 93 F.3d 1515, 1521 (11th Cir. 1996), the Eleventh Circuit conclusively determined that a hospital authority created under Georgia's Hospital Authorities Law, O.C.G.A. §§ 31-7-70 *et seq*., is a governmental entity or "political subdivision" of Georgia and, accordingly, is immune from liability under the Sherman Act. The *Crosby* Court held the *Parker* doctrine, as extended by the Supreme Court in *Town of Hallie*, *supra*, provides the same immunity to actions of local governmental entities and political subdivisions of the state as it does to actions of the state itself.

Courts have consistently found hospital authorities to be "political subdivisions" of the State of Georgia for state action exemption purposes because of their governmental nature.[1] By statute, a hospital authority is "deemed to exercise public and essential governmental functions and shall have all the powers necessary or convenient to carry out and effectuate the

---

[1] "Georgia courts have consistently found hospital authorities to be 'instrumentalities' of the state." *Williams-Mason v. Reliance Standard Life Ins. Co.*, No. Civ. A. CV 206-124, 2006 WL 1687760, at *4 (S.D. Ga. June 16, 2006). *See Thomas v. Hosp. Auth. Of Clarke County*, 440 S.E.2d 195, 196 (Ga. 1994) ("Since a hospital authority, though an instrumentality of government, is not, in any sense, an agency or department of the state, the nature of its function is irrelevant[.]"); *Randolph County Hosp. Auth. v. Johnson*, 450 S.E.2d 318, 318-19 (1994) (quoting *Thomas, supra,* with approval); *Cox Enters. v. Carroll City/County Hosp. Auth.*, 273 S.E.2d 841, 845 (Ga. 1981) ("[A hospital authority] is clearly not a municipal corporation as such, or a county, but merely their instrumentality."); *Calhoun County Hosp. Auth. v. Walker*, 421 S.E.2d 777, 778 (Ga. 1992) (A "hospital authority is an instrumentality of a subdivision of the state."); *see also Adeduntan v. Hosp. Auth. of Clarke County*, No. 3:04-CV-65, 2005 WL 2074248, at *7 n.9 (M.D. Ga. Aug. 25, 2005) ("Hospital Authority . . . . is not . . . . subject to Plaintiffs' antitrust claims as an instrumentality, agency, or political subdivision of [the county.]").

purposes . . . . " O.C.G.A. § 31-7-75 (2007).[2] Among their many "government-like" attributes, hospital authorities are created as a "public body corporate and politic," O.C.G.A. § 31-7-72(a) (2007), provided with the same exemptions and exclusions from taxes as cities and counties for the operation of facilities, O.C.G.A. § 31-7-72(e) (2007), have board members who are appointed by the governing body of the county or municipal corporation and are considered "public officers,"[3] are subject to the Georgia Sunshine Laws, 1980 Op. Att'y Gen. No. U80-6, are authorized to issue tax-exempt revenue anticipation certificates, O.C.G.A. § 31-7-75(16) (2007), and possesses the power to acquire private property through eminent domain. O.C.G.A. § 31-7-75(12) (2007). Because Georgia has chosen to define and empower hospital authorities with government-like attributes, hospital authorities are deemed political subdivisions of the state for purposes of applying the state action exemption.[4]

### *3. Georgia Has Authorized the Hospital Authority to Acquire and Lease Hospitals*

The conduct of the Hospital Authority challenged by Palmyra is plainly set out in Paragraphs 7 and 8 of the Complaint. Palmyra points to the execution of the Lease and Transfer Agreement dated December 11, 1990 (the "Lease") pursuant to which the maintenance, control and operation of the Phoebe Putney hospital facility generally was transitioned to PPMH for the term of the Lease. Palmyra challenges the failure of the Hospital Authority to terminate the Lease early and take over operation and management of the hospital, and alleges, "In this way the Hospital Authority has furthered the anticompetitive scheme described below." Complaint ¶ 8. The question under the second requirement in *Town of Hallie* is whether the conduct described above is authorized under Georgia's Hospital Authority Law.

---

[2] *See also Martin v. Hospital Authority of Clarke County*, 449 S.E.2d 827 (Ga. 1994) (Georgia Supreme Court summarizing factors that illustrate a hospital authority's governmental nature and held that a hospital authority was not subject to punitive damages).

[3] *Richmond County Hosp. Auth. v. Richmond County*, 336 S.E.2d 562, 567 (Ga. 1985).

[4] Under the Local Government Antitrust Act, 15 U.S.C. § 34, *et seq.*, Georgia hospital authorities are also entitled to claim immunity from damages.

Hospital authorities in Georgia are granted broad powers to carry out and effectuate their public and essential governmental functions. Among the many powers granted to them is the power to "acquire by purchase, lease, or otherwise and to operate projects." O.C.G.A. § 31-7-75 (4) (2007). Additionally, the Georgia General Assembly has authorized hospital authorities to "form and operate, either directly or indirectly, one or more networks of hospitals, physicians, and other health care providers and to arrange for the provision of health care service through such networks." O.C.G.A. § 31-7-75(27) (2007).

The Georgia statute at issue in the present case further specifies that a hospital authority may lease projects for operation by others for the maximum period of 40 years provided the following requirements are satisfied: (1) the lease must promote the public health needs of the community; (2) the authority must retain sufficient control over any project leased to ensure that the lessee does not obtain more than a reasonable rate of return on its investment; and (3) the project must operate on a non-profit basis. O.C.G.A. § 31-7-75(7) (2007). Thus, a broad scope of power is granted to hospital authorities with regard to leasing hospital projects for operation by others and this power is only limited by the three aforementioned requirements. *Richmond County Hosp. Auth.*, 336 S.E.2d at 565. The court in *Richmond* further specifically held that where the legislature has conferred a right and duty to make decisions, such as the right to enter into and continue operating under leases with others, the decision by the authority is given discretion and is only reviewed for a clear abuse of discretion. In addition, O.C.G.A. § 31-7-96 provides: "[t]his article, being necessary for the welfare of the citizens of the state, shall be liberally construed to effect the purposes thereof; and insofar as this article may be inconsistent with any other law, whether by charter of any political subdivision of the state or otherwise, this article shall be controlling." Courts have held that where the legislature has conferred on

governmental entities the right and duty to make certain decisions, the state must not interfere with such decisions as made unless the governmental unit has clearly abused its discretion. *Richmond County Hosp. Auth.*, 336 S.E.2d at 566 (holding that a hospital authority validly exercised its power to lease its hospital to four private corporations for a period of forty years under state law).

The Hospital Authorities Law of Georgia clearly authorized the Hospital Authority to enter into the Lease. The case law and statutory language cited above also make it clear the Hospital Authority is authorized to exercise its discretion to determine whether to terminate the Lease and that such decision may only be reviewed for a clear abuse of discretion. The Complaint does not allege a clear abuse of discretion. As such, the second requirement for the application of state action immunity under *Town of Hallie* is satisfied.

#### ***4. Anticompetitive Conduct was a Foreseeable Result Under the Georgia Hospital Authorities Law***

The third requirement for obtaining state action immunity identified in *Town of Hallie* is the applicable state statute must have "clearly articulated" a state policy authorizing anticompetitive conduct. The court explained, however, that the phrase "clearly articulated" does not require that the legislature explicitly state in the statute that the political subdivision may engage in anticompetitive activities; rather, it only requires that anticompetitive conduct be a foreseeable result of the powers granted to the political subdivision. *Town of Hallie*, 471 U.S. at 41-43. *See also Hosp. Bd. of Dirs. of Lee County*, 38 F.3d at 1192 (holding that when the Board was originally created there was only one hospital in existence in the county and the legislature knew at the time it expanded the power of the Board to acquire hospitals that anticompetitive consequences were foreseeable). The Eleventh Circuit has further clarified that anticompetitive conduct must only be reasonably anticipated rather than an inevitable, ordinary,

or routine outcome of a statute. *Commuter Transp. Sys., Inc. v. Hillsborough County Aviation Auth.*, 801 F.2d 1286 (11th Cir. 1986); *Bolt v. Halifax Hosp. Med. Ctr.*, 980 F.2d 1381 (11th Cir. 1993).

In *Askew v. DCH Regional Health Care Authority*, 995 F.2d 1033, 1040 (11th Cir. 1993), the Eleventh Circuit determined that the anticompetitive effects of the hospital authority's conduct was anticipated because the hospital authorities law in Alabama granted the hospital authority the authority to carry out its function to the full extent of its powers. The court in *Jackson, Tennessee Hospital Company, LLC. v. West Tennessee Healthcare*, 414 F.3d 608, 614 (6th Cir. 2005) also dismissed antitrust claims brought against a Tennessee hospital authority on the grounds the "Tennessee legislature invested public hospital corporations with very broad powers to ensure their continued viability; authorized them to exercise many powers, such as contracting for services and acquiring property, that could easily lead to anti-competitive consequences; and then specifically stated that such activities could be undertaken ['regardless of the competitive consequences thereof']."

Similarly, the Georgia Hospital Authorities Law specifically provides that a hospital authority may enter into leases with hospitals to operate hospitals for the public welfare. Day-to-day management and operations of the hospital are duties that the hospital authority clearly may delegate to the lessee (in this case, Phoebe Putney). As such, management and operational decisions, such as the decision to enter into exclusive contract arrangements with commercial insurers and claims administrators, are duties delegated to the hospital. Arguably, it is foreseeable or reasonable to anticipate that granting a hospital authority the power to lease

hospitals with the knowledge that the day-to-day operational decisions will be made by the hospital and its officers will result in potential anticompetitive effects.[5]

In *Crosby*, the court specifically stated that the health care business and operations of a hospital are competitive in nature and applied the state action immunity to the hospital authority's actions. *Crosby*, 93 F.3d at 1525. In doing so, the court found that the State of Georgia had clearly articulated a policy to displace competition. *Id.* at 1534 (holding that it was at least foreseeable, and most certainly reasonably anticipated, that the Georgia statutory provision at issue would enable a hospital authority to engage in anticompetitive conduct through its peer review activities). *See also Sweeney v. Athens Reg'l Med. Ctr.*, 705 F. Supp. 1556, 1563 (M.D. Ga. 1989) (finding state action immunity applied to a hospital authority's decision to deny staff privileges to a nurse midwife, the court noted that Georgia had clearly displaced competition with regulation in the area of privileging decisions). Accordingly, given the competitive nature of the health care industry and operations of a hospital, it is foreseeable and reasonable to anticipate that anticompetitive effects may result from the Hospital Authority's exercise of its right to enter into a lease for the operations of a hospital.

## B. THE COMPLAINT AGAINST THE HOSPITAL AUTHORITY SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT ANY CLAIM FOR RELIEF IN COUNTS I THROUGH VI

### *1. Federal Antitrust Claims*

The only allegations made in the Complaint as a basis for asserting a claim against the Hospital Authority is that the Hospital Authority, a creation of Georgia's Hospital Authorities Law, O.C.G.A. §§ 31-7-70, *et seq.*, owns the assets of PPMH and leases them to PPMH under the Lease, pursuant to which PPMH controls all of the assets and the operations of the hospital.

---

[5] The Georgia General Assembly has conferred plenary contracting powers on Georgia hospital authorities and declared "*hospital authorities are acting pursuant to state policy and shall be immune from antitrust liability* to the same degree and extent as enjoyed by the State of Georgia." O.C.G.A. § 31-7-72.1 (emphasis added).

*See* Complaint ¶ 7. Further, the Complaint alleges the Hospital Authority retains the right to terminate the lease and reassert control over the hospital under certain circumstances. *See* Complaint ¶ 8. Finally, the Complaint alleges the Hospital Authority is aware the other Defendants have allegedly engaged in anticompetitive behavior, in violation of the antitrust laws, and has failed to terminate the Lease and reassert control over the hospital's operations. *Id.* These are the only allegations in which the Complaint alleges the Hospital Authority has participated in the other Defendants' alleged anticompetitive scheme.

Thus, the Complaint's only allegation of anticompetitive conduct on the part of the Hospital Authority is purely passive; namely, its failure to exercise any rights it might have to terminate the Lease and prevent the other Defendants from continuing to operate the hospital. As discussed below, this kind of passive failure to act is not the kind of concerted activity addressed by the antitrust laws. In addition, the Complaint fails to allege the Hospital Authority had any independent interest in participating in the alleged anticompetitive activities or that it benefited from these alleged anticompetitive activities.

In applying the general pleading standards to a claim alleged under Section 1 of the Sherman Act, the Supreme Court has held a complaint must state sufficient factual matter to suggest that an agreement was made. This requires sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of any legal agreement. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). An allegation of parallel conduct and a bare assertion of conspiracy are not sufficient because parallel conduct without more does not suggest conspiracy and an allegation of agreement at some identified point does not supply facts adequate to show illegality. *Id.* at 1966. The facts must raise a suggestion of preceding agreement, "not merely parallel conduct that could just as well be independent action." *Id.*

Conduct which is as consistent with permissible competition as with illegal conspiracy does not, standing alone, infer an antitrust conspiracy. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 597 n.21 (1986). To hold otherwise would risk chilling zealous competition. *Id.* at 593-94; *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 762-63 (1984).

These same arguments would apply to any allegations of concerted activity with respect to a claim of monopolization or attempted monopolization under Section 2 of the Sherman Act. Although the actions of a single party can constitute a violation of Section 2 of the Sherman Act, there are no allegations in the Complaint that the Hospital Authority (as opposed to PPMH) monopolized or attempted to monopolize the relevant market. Quite the contrary, the Complaint expressly alleges the Hospital Authority transferred full control of the assets and operation of the hospital to PPMH. Complaint ¶ 7.

The court in *Harold Friedman, Inc. v. Kroger Co.*, 581 F.2d 1068 (3d Cir. 1978), found that a party's role as landlord under a lease and its refusal to breach that lease were not sufficient grounds on which concerted action could be found. The court identified the following factors in determining whether the alleged conspirators were part of a combination in restraint of trade: (1) all members of the combination knew of the defendant's purpose to restrain trade; (2) at least two members of the combination benefited by the restraint of trade and, in that sense, shared a common purpose in restraining trade; (3) the agreement by two members of the combination actually restrained trade, as opposed to merely facilitating the restraint; and (4) at least two members of the combination intended to restrain trade. *Id.* at 1073. *See also Kreuzer v. Am. Acad. of Periodontology*, 516 F. Supp. 1034, 1037 (D.D.C. 1981).

Applying these same factors to the allegations asserted against the Hospital Authority demonstrates that there is insufficient basis to assert the Hospital Authority was a participant in any concerted activity. Beyond a bare allegation of knowledge, there are no allegations that the Hospital Authority knew of any alleged purpose on the part of the other Defendants to restrain trade. Palmyra failed to plead that the Hospital Authority would benefit in any way from any alleged restraint of trade or share any common purpose in restraining trade. As can be plainly seen from the terms of the Lease attached to the Complaint as Exhibit A, the payments the Hospital Authority received under the Lease did not change if the other Defendants were successful in restraining trade or achieving a monopoly. The Lease was entered into in 1990, approximately ten years before the Complaint alleges the other Defendants commenced their activities in restraint of trade. Thus, the agreement embodied in the Lease was collateral to any alleged restraint of trade. Finally, there are no allegations of any facts in support of any intent on the part of the Hospital Authority to restrain trade.

Finally, allegations of conspiracy must tend to exclude independent action. The Supreme Court stated in *Monsanto Company v. Spray-Rite Service Corp*oration, 465 U.S. 752, 768 (1984): "The correct standard is that there must be evidence that tends to exclude the possibility of independent action by the manufacturer and distributor. That is, there must be direct or circumstantial evidence that reasonably tends to prove the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective."

In its Complaint, Palmyra simply alleges that the Hospital Authority was a landlord that accepted the fruits of the lease it entered into ten years before any of the actions alleged to give rise to this action. This is plainly insufficient to allege the necessary element of conspiracy.

### *2. Tortious Interference With Business Relations*

In support of its tortious interference claim in Count V of the Complaint, Palmyra alleges "*Defendants*' targeting of Palmyra for exclusion from the tied markets through their *exclusive contracts* with commercial insurers and claim administrators is improper." Complaint, Count V, ¶ 98 (emphasis added). Palmyra further claims that "through these *exclusive contracts, Defendants* induced commercial insurers and claim administrators not to enter into or continue business relationships with Palmyra." Complaint, Count V, ¶ 100 (emphasis added). As such, the linchpin of Palmyra's tortious interference claim is the negotiation and execution of exclusive managed-care contracts by PPMH.

In order to recover for tortious interference with business relations, Palmyra must demonstrate the following:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Int'l Brominated Solvents Ass'n v. Am. Conference of Gov't Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1384 (M.D. Ga. 2005) (J. Fitzpatrick) (quoting *Dalton Diversified, Inc. v. AmSouth Bank*, 605 S.E.2d 892, 897-98 (Ga. App. 2004)). "'The exercise of an absolute legal right is not and cannot be considered an interference with a contractual or potential contractual relationship[.]'" *Wood v. Archbold Med. Ctr., Inc.*, No. 6:05CV53, 2006 WL 1805729, at *6 (M.D. Ga. Jun. 29, 2006) (J. Lawson) (quoting *Dalton Diversified*, 605 S.E.2d at 898).

The allegations of the Complaint, which the Court must accept as true on a motion to dismiss, irrefutably establish that "the Hospital Authority *cannot* countermand, approve or revise PPMH's decisions" to "negotiate[ ] all relationships with managed-care organizations."

Complaint ¶ 7 (emphasis added). It is "*PPMH* [who] . . . controls *all assets and operations* at Phoebe Putney." *Id*. (emphasis added) "Non-party Phoebe Health Partners . . . has negotiated and executed managed-care contracts for hospital services with commercial insurers and claim administrators" as Phoebe Putney's agent. Complaint ¶ 11. On the face of the Complaint, the Hospital Authority's alleged conduct is limited to "*not* exercis[ing] its right to terminate the Lease or otherwise take over Phoebe Putney's management." Complaint ¶ 8 (emphasis added). Because Palmyra's own allegations make it clear that the Hospital Authority did not and could not participate in the activity on which Palmyra's tortious interference claim is based, Count V must fail.

In addition, the Hospital Authority's alleged *in*action or passive failure to terminate the Lease does not constitute "improper action or wrongful conduct" on the part of Hospital Authority to "act[ ] purposely and with malice with the intent to injure" with respect to the exclusive contracts. As such, Palmyra cannot "render plausible" the requisite elements for tortious interference and this claim should be dismissed as a matter of law.

***3. Georgia Constitution Article 3, Section 6, Paragraph 5 and O.C.G.A. § 13-8-2***

The state court claims embodied in Count VI of the Complaint are based on the same allegations and are derived from the federal antitrust claims involved in Counts I through IV, which are discussed above. If the federal antitrust claims are dismissed, then these claims should be dismissed as well. In Count VI, Palmyra alleges "*Defendants* have engaged in *exclusive contracts*," "*Defendants*' *exclusive contracts* specifically and purposely prevent Palmyra from entering into competitive contracts with commercial insurers and claims administrators," and "*Defendants*' *agreements and practices* have directly insulated them from competition in the tied markets[.]" Complaint ¶¶ 103, 104, 107 (emphasis added). Again, this is the same alleged illegal conduct on which Palmyra's federal antitrust and tortious interference claims are based.

According to the Complaint, such alleged conduct is violative of Article III, § 6, ¶ 5 of the Georgia Constitution and O.C.G.A. § 13-8-2.

Article III, § 6, ¶ 5 of the Georgia Constitution provides that the General Assembly shall not have the power to authorize any contract or agreement which may have the effect of defeating or lessening competition, or encouraging a monopoly, which are hereby declared to be unlawful and void. Section 13-8-2 of the Georgia Code in turn provides, in pertinent part, that "[a] contract which is against the policy of the law cannot be enforced" and includes a nonexclusive list of contracts that are against public policy. The public policy of the State of Georgia is created by Georgia's Constitution, laws and judicial decisions. *Edwards v. Grapefields, Inc.*, 599 S.E.2d 489, 493 (Ga. App. 2004). "A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law." *Id*. (citation omitted).

As set forth above, Palmyra's own allegations unequivocally establish that the "Hospital Authority *cannot* countermand, approve or revise PPMH's decisions" to "negotiate[ ] all relationships with managed-care organizations" because "*PPMH* . . . controls *all assets and operations* at Phoebe Putney" and agent "Phoebe Health Partners . . . negotiate[s] and execute[s] managed-care contracts for hospital services with commercial insurers and claim administrators." Complaint ¶¶ 7, 11 (emphasis added).

In short, the claims in Count VI of Palmyra's Complaint are based on purported "illegal activity" that Palmyra unequivocally admits the Hospital Authority had no authority or control over or participation in. Palmyra's cavalier use of the collective term "Defendants" in Count VI

is unsubstantiated, inconsistent with the specific allegations in Paragraphs 7 and 11 of the Complaint, and fails, by a wide margin, to nudge Palmyra's claim across the line from conceivable to plausible. *See Bell Atlantic Corp.*, 127 S. Ct. at 1968. Because Palmyra fails to adequately state a claim for relief against the Hospital Authority for violations of the Georgia State Constitution and O.C.G.A. § 13-8-2, Count VI should be dismissed.

## V. CONCLUSION

For all the reasons set forth above and the reasons noted in Phoebe Putney's separate Motion to Dismiss, which Hospital Authority joins and incorporates by reference, Palmyra's Complaint against the Hospital Authority should be dismissed in its entirety.

Respectfully submitted this 26th day of August, 2008.

HOSPITAL AUTHORITY OF
ALBANY/DOUGHERTY COUNTY, Defendant

By s/ Edgar B. Wilkin, Jr.

Edgar B. Wilkin, Jr., Bar No. 759500
Perry & Walters, LLP
212 North Westover Boulevard
Albany, GA 31708
Telephone (229) 439-4000
Facsimile (229) 436-1417
ewilkin@perrywalters.com

and

John P. Passarelli, *Pro Hac Vice* application forthcoming
James M. Sulentic, *Pro Hac Vice* application forthcoming
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102-2186
Telephone (402) 346-6000
Facsimile (402) 346-1148
john.passarelli@KutakRock.com
james.sulentic@KutakRock.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Attorneys for Plaintiff*

William H. Hedrick
williamhedrick@bellsouth.net

King & Spalding, LLP
M. Russell Wofford, Jr.
Christine A. Hopkinson
Jeffrey S. Spigel
rwofford@kslaw.com
chopkinson@kslaw.com
jspigel@kslaw.com

*Attorneys for Defendant Phoebe Putney*

Baudino Law Group, PLC
David J. Darrell
Karin A. Middleton
Ralph Walker
Denise Cleveland-Leggett
darrell@baudino.com
middleton@baudino.com
walker@baudino.com
leggett@baudino.com

s/Edgar B. Wilkin, Jr.

Edgar B. Wilkin, Jr., Bar No. 759500
Perry & Walters, LLP
212 North Westover Boulevard
Albany, GA 31708
Telephone (229) 439-4000
Facsimile (229) 436-1417
ewilkin@perrywalters.com