# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| **Palmyra Park Hospital, Inc.,** ) | |
| **d/b/a Palmyra Medical Center,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | File No. 1:08-cv-00102-WLS |
| ) | |
| **Phoebe Putney Memorial Hospital, Inc.** ) | |
| **and Phoebe Putney Health System, Inc.,** ) | |
| ) | |
| **Defendants.** ) | |

## PALMYRA MEDICAL CENTER'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PHOEBE PUTNEY'S MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. THE FACTS .................................................................................................................... 2

III. ARGUMENT AND ANALYSIS ..................................................................................... 3

    A. Phoebe Putney Concedes the Existence of the *Per Se* Tying Claim that Palmyra Alleges. ................................................................................................................. 3

    B. Palmyra Has Alleged More than Sufficient Facts Supporting An Agreement and Coercion. ............................................................................................................. 4

        1. *Iqbal* Changes Nothing: Palmyra Must Only Allege Enough Facts to Render Its Tying Claim Plausible. ......................................................................... 4

        2. Palmyra Adequately Alleges an Agreement in the Form of a Contract. ................. 6

        3. Palmyra Adequately Alleges Coercion. .................................................. 8

    C. Phoebe Putney's Newly Raised Issues Violate the Federal Rules and Contradict Its Promises to this Court. ................................................................................. 11

    D. Palmyra Has Alleged Plausible Product Markets. ....................................... 12

    E. Palmyra's Section 2 Claims Meet *Twombly's* Plausibility Standard. ......................... 13

        1. *Twombly* Does Not Require Palmyra to Allege Phoebe Putney's Precise Share of Each Alleged Market. ......................................................... 14

        2. Palmyra's Claims Do Not Require Allegations of Foreclosure from a Market Palmyra Has Not Alleged Is Relevant. ................................................ 15

    F. Palmyra Adequately Pleads Tortious Interference and a Violation of the Georgia Constitution, and Its Claims Are Not Barred by the Statutes of Limitations. ............ 16

IV. CONCLUSION ............................................................................................................ 17

## I. INTRODUCTION

Phoebe Putney's supplemental brief goes on for the maximum length permitted by this Court, yet provides no new authority supporting its arguments for dismissal. Phoebe Putney instead takes 20 pages to urge this Court to: (1) ignore the same controlling Supreme Court and Eleventh Circuit precedent for the same unjustifiable reasons that Phoebe Putney offered over two years ago, (2) dismiss at least four claims that Palmyra has not even made, and (3) disregard the Eleventh Circuit's opinion resolving, among other issues, the plausibility of Palmyra's allegations about Phoebe Putney's coercion. For these reasons this Court should deny Phoebe Putney's renewed motion.

In just rehashing arguments that it offered in its initial motion, Phoebe Putney has failed to provide what it promised the Court. Phoebe Putney obtained leave to file its supplemental brief in part by promising that it would address important changes wrought by the passage of time and the dismissal of the Hospital Authority that affect "the substantive issues raised in [its] original motion to dismiss." Phoebe Putney's brief makes no attempt to identify *any* such changes. Moreover, in 20 pages Phoebe Putney cites only **one** new case, *Iqbal v. Ashcroft*, 129 S. Ct. 1937 (2009), a non-antitrust decision that changes nothing about how this Court should resolve Phoebe Putney's over two-year-old motion. Phoebe Putney has utterly failed to do what it said it would do: provide this Court with additional purported bases for its previous arguments flowing from the passage of time, the Hospital Authority's dismissal, or new authority.

Even more disturbingly, Phoebe Putney has done what the Federal Rules, and its promises to this Court and to Palmyra's counsel, obligate it *not* to do. The Federal Rules prohibit Phoebe Putney from raising issues now that were "available to [it] but omitted from its earlier motion." Consistent with this obligation, Phoebe Putney assured this Court and Palmyra's counsel that Phoebe Putney would limit its filing to issues "identified in Phoebe's

original Motion to Dismiss" and supporting papers. Now, however, Phoebe Putney raises a host of new issues fully available to it two years ago. Apart from lacking any merit, these new arguments violate the Federal Rules of Civil Procedure, contradict Phoebe Putney's prior representations to this Court, and flout further assurances made directly to Palmyra's counsel. This Court should disregard them.

Because Palmyra prefers not to burden the Court with a supplemental brief that just restates authorities already cited to this Court, Palmyra limits its submission to new authorities that further justify denying Phoebe Putney's motion, and to new issues raised by Phoebe Putney in its supplemental brief. Where appropriate, Palmyra also directs the Court to its previous citations of authority.

## II. THE FACTS

On March 31, 2009, this Court granted Phoebe Putney's motion to dismiss Palmyra's Complaint, finding that Palmyra lacked antitrust standing to bring the action. Order (Dkt. 44) at 16. Palmyra appealed that decision, and on April 29, 2010 the Eleventh Circuit reversed the dismissal. *Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291 (2010).

Rather than answer the Complaint and allow discovery to move forward, Phoebe Putney asked this Court for permission to renew its motion to dismiss on all previously asserted grounds other than standing, and to file a supplemental brief limited to those grounds. Assuring the Court and Palmyra that it sought only to raise issues "identified in Phoebe's original Motion to Dismiss and supporting Brief and Reply Brief filed with this Court," Phoebe Putney claimed that supplemental briefing was necessary "given that almost two years have passed, the fact the [sic] Hospital Authority is no longer a party, and the further clarification of the issues as a result of the extensive briefing before the Eleventh Circuit Court of Appeals." Defs.' Br. in Support of Mot. to Renew (Dkt. 71) at 6, 9. On that basis, and consistent with Rule 12(g)'s bar to raising issues

in the renewed motion that could have been raised earlier, this Court granted Phoebe Putney's request. Order (Dkt. 74) at 3.

### III. ARGUMENT AND ANALYSIS

**A. Phoebe Putney Concedes the Existence of the *Per Se* Tying Claim that Palmyra Alleges.**

After originally claiming that the Supreme Court had somehow "eliminate[d] altogether evaluation of tying arrangements under the *per se* rule," Phoebe Putney now acknowledges that the Supreme Court has *not* "abandon[ed] the *per se* rule for tying." *Compare* Defs.' 2008 Br. (Dkt. 12) at 6 *with* Defs.' Supp. Br. (Dkt. 76) at 6. In its later concession, Phoebe Putney cites two U.S. Supreme Court cases. Defs.' Supp. Br. at 6 (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 9 (1984) as stating "'it is far too late' … to abandon the per se rule for tying" and *Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 39-41, 46 (2006) as stating "that for all tying arrangements, a plaintiff must prove defendant's market power in the tying market in order to prove a *per se* violations [sic] of §1 of the Sherman Act").

Although Phoebe Putney does not mention them, several decisions since its initial motion confirm the existence of the *per se* tying claim that Palmyra alleges.[1] *See In re Webkinz Antitrust Litig.*, No. 08-1987, 2010 WL 4168845, *1, *6 (N.D. Cal. Oct. 20, 2010) (denying motion to dismiss *per se* tying claim) (attached as Exh. 2);[2] *Datel Holdings LTD v. Microsoft Corp.*, No. 09-05535, 2010 WL 1691790, *21 (N.D. Cal. Apr. 23, 2010) (same) (attached as Exh. 3); *Booklocker.com, Inc. v. Amazon.com, Inc.*, 650 F. Supp. 2d 89, 98 (D. Me. 2009) (same). These cases reaffirm that Phoebe Putney can be liable for a *per se* violation of Section 1 where Palmyra can demonstrate:

---

[1] Palmyra has previously cited to this Court additional authorities confirming the existence of a *per se* cause of action for tying. Plf.'s 2008 Br. at 11-13.
[2] Exhibit 1 was attached to Palmyra's September 18, 2008 Consolidated Brief in Opposition to Defendants' Motions to Dismiss. See the attached Index of Exhibits.

3

    (1)    separate tying and tied products;

    (2)    coercion, or a tie "conditioning" the purchase of one product on the purchase of another;

    (3)    Phoebe Putney's economic power in the tying markets; and

    (4)    the tying arrangement's effect on a "not insubstantial" amount of interstate commerce.

*See Jefferson Parish*, 466 U.S. at 9; *Tic-X-Press, Inc. v. The Omni Promotions Co. of Ga.*, 815 F.2d 1407, 1415 (11th Cir. 1987).

Despite its own concession and an unbroken line of cases acknowledging the continuing validity of *per se* tying claims, Phoebe Putney argues that a *per se* analysis is "not applicable" here because certain *other types* of vertical restraints and non-price restrictions are "generally subject to the rule of reason." Defs.' Supp. Br. at 7. Palmyra, however, has not alleged some other type of vertical restraint. It has, as Phoebe Putney admits, "alleg[ed] … 'tying arrangements' requiring various insurers to deal exclusively with Phoebe." Defs.' Supp. Br. at 1. For the first time in its supplemental brief, but not the last, Phoebe Putney asks the Court to dismiss a claim that Palmyra has not alleged.

**B.    Palmyra Has Alleged More than Sufficient Facts Supporting An Agreement and Coercion.**

    **1.    *Iqbal* Changes Nothing: Palmyra Must Only Allege Enough Facts to Render Its Tying Claim Plausible.**

Palmyra's complaint need only contain a "short and plain statement" of its tying claim "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Court already has before it extensive briefing on how the Supreme Court has interpreted Rule 8 to apply to antitrust cases. *See* Plf.'s 2008 Br. at 3 (citing *Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true")). That interpretation of Rule 8 has not changed since Phoebe Putney filed its initial motion.

*Iqbal*, the only new authority that Phoebe Putney cites anywhere in its brief, simply restates *Twombly's* reinterpretation of Rule 8, and applies it to non-antitrust claims. 129 S. Ct. 1949 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The case concerned allegations by a Pakistani national, Javaid Iqbal, arrested in the U.S. as part of a law enforcement effort after the September 11, 2001 attacks. Mr. Iqbal alleged that a former U.S. Attorney General and the Director of the FBI subjected him to harsh confinement conditions in order to discriminate against him on the basis of his religion and national origin, rather than in order to investigate possible terrorist suspects. The Supreme Court reversed the lower courts' denial of the government officials' motion to dismiss because Mr. Iqbal's complaint alleged no facts suggesting the officials' discriminatory motivation. *Id.* at 1949-52. Nowhere does *Iqbal* suggest a change in the *Twombly* standard under which this Court decided Phoebe Putney's initial motion, and nowhere in Phoebe Putney's brief does it identify how *Iqbal* should change this Court's analysis of the remaining issues. In Phoebe Putney's own words, *Iqbal* simply "applied and interpreted" *Twombly* in a case involving non-antitrust claims. Defs.' Supp. Br. at 2-3.

Nothing, including *Iqbal*, requires Palmyra to allege highly specific facts, or to prove its claims at the pleading stage. *See Twombly*, 550 U.S. at 570 ("we do not require heightened fact pleading of specifics"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (partially reversing dismissal because trial court not permitted to "decide whose version [of the facts] to believe, or which version is more likely than not"). Instead, Palmyra "must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *See Swanson*,

614 F.3d at 404. Palmyra has satisfied Rule 8 if, based on the facts alleged, Phoebe Putney's anticompetitive behavior is plausible — i.e., it "could … have happened." *Id*.

## 2. Palmyra Adequately Alleges an Agreement in the Form of a Contract.

Section 1 of the Sherman Act prohibits "[e]very ***contract***, combination …, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1 (emphasis added). The statute thus addresses concerted behavior effected through agreements between independent entities. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 753 (1984).

In support of the agreement necessary for a Section 1 claim, Palmyra alleges a series of contracts between Phoebe Putney and Blue Cross Blue Shield of Georgia, the Public Employees' Health Plan ("PEP"), and CIGNA, and even attaches one such contract to its Complaint. Complaint, ¶¶ 2, 56, 59-60 & Exh. A. As with the *per se* nature of Palmyra's tying claim, Phoebe Putney acknowledges these allegations of specific contracts. Defs.' Supp. Br. at 2 ("Palmyra alleges that in 2000, PPMH used its market power in the above three areas to force BCBS to agree to an exclusive managed care contract with PPMH to make PPMH its only in-network hospital in Albany for eight other 'tied' services." (citing Compl. ¶ 52)).

Courts have long held that such contracts establish the vertical agreement necessary to state a tying claim.[3] *See MCA TV, Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1279-81 (11th Cir. 1999) (affirming district court's finding that licensing agreement was a tying arrangement and *per se* illegal under the Sherman Act, but reversing the finding of no antitrust injury and remanding for a determination of damages); *United States v. Microsoft*, 253 F.3d 34, 84-85 (D.C. Cir. 2001); *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns*,

---

[3] "Every sale reflects an agreement of some sort." X Phillip E. Areeda, Herbert Hovenkamp, & Einer Elhauge, ANTITRUST LAW, ¶ 1752f1 (2d ed. 2004).

6

*Inc.*, 63 F.3d 1540, 1548 (10th Cir. 1995).[4] Alleging specific contracts, and not to mention attaching one as Palmyra has, more than satisfies the Supreme Court's plausibility rule. *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (allegations of an "agreement," while border-line conclusory, "might well be sufficient in conjunction with a more specific allegation — for example, identifying a written agreement….").[5] Palmyra's Complaint includes just such a specific allegation. And if, as alleged, Phoebe Putney entered into contracts with Blue Cross Blue Shield of Georgia and others, the necessary agreement not only "could … have happened," it did happen. *See Swanson*, 614 F.3d at 404.

As with its argument against the *per se* analysis of Palmyra's tying claim, Phoebe Putney urges the Court to dismiss the Complaint because it does not include allegations of a *different agreement* than the one Palmyra alleges: a horizontal agreement between co-conspirators demonstrable through indirect evidence. *See* Defs.' Supp. Br. at 5 ("there are no allegations of the required conspiracy"). Phoebe Putney thus cites *Twombly* and other cases to suggest that Palmyra should be required to allege more than the existence of a contract to meet the requirement of an agreement under Section 1. *Id.* at 4-5. These cases have nothing to do with allegations of vertical agreements that create an illegal tying arrangement -- *agreements that Phoebe Putney admits that Palmyra has alleged*. Defs.' Supp. Br. at 10 ("[e]ven if Phoebe's arrangements with BCBS, CIGNA or the PEP were otherwise coercive …"). Once again Phoebe Putney urges this Court to dismiss a claim — a horizontal conspiracy between competitors — that Palmyra has not alleged.

---

[4]  Palmyra has previously cited other authorities confirming that contracts can supply the agreement required by Section 1. Plf.'s 2008 Br. at 9-10 (citing *Tic-X-Press*, 815 F.2d at 1418; *Systemcare, Inc. v. Wang Labs. Corp.*, 17 F.3d 1137, 1142-43 (10th Cir. 1997)).

[5]  *Twombly* cites with approval *DM Research's* requirement that an antitrust plaintiff make more than conclusory assertions to survive a motion to dismiss. 550 U.S. at 557.

### 3. Palmyra Adequately Alleges Coercion.

Phoebe Putney argues that all tying claims require a single form of coercion: an articulated refusal to sell the tying and tied products separately under any circumstances. Defs.' Supp. Br. at 9. For understandable reasons, Phoebe Putney cites no authority supporting this proposition.

The Eleventh Circuit has recognized tying where the facts suggest an ability to dictate the buyer's choice as a practical matter, such as where a party with market power forces a choice between two undesirable options. *See Tic-X-Press,* 815 F.2d at 1418 (affirming judgment for the plaintiff, including on its tying claim, because "coercion may be established by showing that the facts and circumstances surrounding the transaction *as a practical matter* forced the buyer into purchasing the tied product") (emphasis supplied).[6] Other well-respected authorities have similarly refused to define coercion so narrowly. X Phillip E. Areeda, Herbert Hovenkamp, & Einer Elhauge, ANTITRUST LAW, ¶ 1752e (2d ed. 2004) ("a tying 'agreement' or 'condition' is present when the defendant has utilized customers' desire for its product *A* to constrain improperly their choice between its product *B* and that of its rivals. … the improper constraint 'coerces' or 'forces' those choices").

The Eleventh Circuit's order reversing the earlier dismissal of Palmyra's claims in fact confirms the plausibility of Phoebe Putney's alleged coercion. That court opined that all normal "competitive pressures disappear if a hospital achieves market power for some services, *as Palmyra alleges Phoebe Putney has in the markets for acute-care obstetrics and neonatology*

---

[6] Palmyra has previously cited other authorities finding coercion where the would-be monopolist could impose an unwanted choice without actually refusing to sell the products separately under any circumstances. Plf.'s 2008 Br. at 14-16 (citing, inter alia, *Cascade Health Solutions v. PeaceHealth*, 515 F. 3d 883, 915 (9th Cir. 2008) (reversing grant of summary judgment for dominant hospital because "[t]he substantial market power PeaceHealth possessed as a result of being the exclusive provider of tertiary services in Lane County creates a possibility that PeaceHealth was able to force unwanted purchases of primary and secondary services.")).

8

*and cardiac catheterization laboratories.*" *Palmyra Park Hosp.*, 604 F.3d at 1301 (emphasis supplied). With normal competitive pressures eliminated, the court observed that Phoebe Putney has two options for how to handle its market power for specific services: (1) it can impose "higher, monopoly reimbursement rate[s] on the services over which [the hospital] has market power" or (2) it can "leverage its market power over the monopolized services … to demand more favorable terms from insurers for other medical services." *Id.* Under the second option, Phoebe Putney could demand higher reimbursement rates on both the tying **and** the tied products "so long as the total cost presented to the insurers does not exceed the cost the insurers would face under the [first option, the] monopoly pricing scheme." *Id.* Assuming that Phoebe Putney sets its prices at this point ("just less than the costs under the threatened monopoly rate"), then insurance companies may not be "significantly harmed" in the short run, and may even be "indifferent," because they pass any increased cost onto policy holders through higher premiums. *Id.* at 1301-1302. Finally, "Palmyra alleges results consistent with this tying behavior in its complaint: Phoebe Putney has market power in certain medical services markets, it leveraged that power to force Blue Cross (among other insurers) to exclude Palmyra from its provider network, shortly thereafter Palmyra lost its in-network status with Blue Cross, and Palmyra's revenues from treating Blue Cross policy holders subsequently dropped from $24 million to $6 million." *Id.* at 1302-1303.

      The Eleventh Circuit thus concluded that: (1) assuming the truth of Palmyra's factual allegations, Phoebe Putney could set the total price of the tying and tied products lower than the monopoly price for the tying products; (2) it could thereby plausibly "leverage[ its] power" to induce, or coerce, the insurers to pay higher rates for all services, not just the tying ones; (3) although coerced, insurers could be "indifferent" to Phoebe Putney's pricing scheme because

9

they can pass on most of the increased cost and suffer no competitive disadvantage; and (4) as a result insured persons are deprived of choice and are forced to pay "marginally higher" premiums for insurance. Competition in general, and "almost certainly" competitors like Palmyra, are injured as a result. *Id.* at 1304. According to the Eleventh Circuit, the coercion alleged "could have happened." *See Swanson*, 614 F.3d at 404. *Twombly* requires no more.

The Eleventh Circuit's resolution of the coercion issue binds this Court. Under the law-of-the-case doctrine, this Court must hew not only to the Eleventh Circuit's ultimate holding, "but also as to issues decided necessarily by implication." *United States v. Arias*, No. 10-12418, 2010 WL 4110670, *1 (11th Cir. Oct. 20, 2010) (attached as Exh. 4). An issue is decided by "necessary implication" if a party's argument to the contrary would be "inconsistent" with "the holding stated or result." *United States v. Jordan*, 429 F.3d 1032, 1036 (11th Cir. 2005). Here, the Eleventh Circuit expressly based its standing decision on a detailed discussion of "the market in which the parties operate and who would bear the costs of a tying arrangement like the one Palmyra alleges." *Palmyra Park Hosp.*, 604 F.3d at 1300. In that discussion the court "examin[ed] how a hospital with market power in some markets could increase its profits, who bears the cost of those additional profits, and how those incentives affect the various parties' decisionmaking processes." *Id*. That analysis was critical to the decision because, as the Court itself noted, "[o]nly after reviewing this dynamic can we determine whether Palmyra has antitrust standing." *Id*. As is discussed further below, through this market analysis the Eleventh Circuit explained how Palmyra's allegations about Phoebe Putney's pricing structure plausibly state a *per se* tying claim. This determination is part of the law of the case to which the Court must adhere. *See Jordan*, 429 F.3d at 1036.

10

C.  **Phoebe Putney's Newly Raised Issues Violate the Federal Rules and Contradict Its Promises to this Court.**

Despite the prohibition imposed by the Federal Rules, Phoebe Putney's representations in its briefing in support of its motion to renew the motion to dismiss, and its separate assurances to Palmyra's counsel, Phoebe Putney now raises arguments that could have been — but were not — raised in its initial briefing. Concerning Palmyra's Section 1 claim, these new arguments include Palmyra's supposed failures to properly allege the relevant product market and Phoebe Putney's exclusive dealing. *See* Defs.' Supp. Br. at 10-12. Against Palmyra's Section 2 claims, Phoebe Putney argues for the first time that Palmyra fails to allege Phoebe Putney's market shares in each of the tied product markets, Palmyra's foreclosure from the market for managed care contracts, and that the agreements between Phoebe Putney and certain insurers are anticompetitive. *Id*. at 15-16.

The Court should not consider these new arguments. The Federal Rules obligated Phoebe Putney to raise all of its objections and defenses to the Complaint in a single motion. Fed. R. Civ. P. 12(g)(2). The arguments that Phoebe Putney now raises for the first time were unquestionably "available to [it] but omitted from its earlier motion." *Id*. For this reason alone, the Court should not consider them. *See Miller v. M.D. Science Labs, LLC*, No. 10-60956, 2010 WL 4102908, *1 (S.D. Fl. Oct. 18, 2010) (denying motion to dismiss in part because of defendant's "attempt to add to its original motion to dismiss additional arguments that were available to [the defendant] but omitted from its earlier motion") (attached as Exh. 5).

The Court also should not consider these new arguments because in seeking leave to file its brief Phoebe Putney told the Court that it was "not requesting a second motion to dismiss," and would address only issues "identified in Phoebe's original Motion to Dismiss and supporting Brief and Reply Brief filed with this Court." Defs.' Br. in Support of Mot. to Renew

at 6, 9. Compounding its misrepresentation, Phoebe Putney also assured Palmyra's counsel that it did not "anticipate that we will raise 'new' grounds in the motion to dismiss." Nov. 2, 2010 Email from K. Middleton to R. Wofford, attached as Exh. 6. Having misled this Court about the scope of the supplemental brief it intended to file, and having similarly prevented Palmyra from alerting the Court to Phoebe Putney's intentions ahead of time, Phoebe Putney now raises issues found nowhere in its original motion. The Court should not reward Phoebe Putney for its misbehavior, and should decline to consider these arguments for these reasons as well.

**D.      Palmyra Has Alleged Plausible Product Markets.**

Palmyra has alleged tying and tied product markets defined by the hospital services rendered to commercially insured patients. Compl. ¶¶ 16-35. Phoebe Putney seeks dismissal in part because Palmyra has failed to allege facts establishing separate markets for each hospital service. Whether these product markets are plausible turns on whether Palmyra could ultimately prove that demand within one alleged market could differ from demand within the others. *Jefferson Parish*, 466 U.S. at 19 ("the answer to the question whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items").

Consistent with this precedent, Palmyra alleges that (1) hospital patients can, and do, seek the tied products independently of the tying products; (2) Palmyra cannot compete to provide the tying products because of regulatory prohibitions; and (3) Palmyra has competed, and is prepared to again compete effectively, to provide commercially insured patients with the tied products. Compl. ¶¶ 5-6, 17-19, 26-35. Palmyra also alleges how each product market is defined, that each is not substitutable for another, and that there is no price elasticity or interchangeability of products provided to commercially insured patients, on the one hand, and to other patients on the other hand. Compl. ¶¶ 16-19, 26-35. This is all the case law requires. *See U.S. Anchor Mfg. v.*

*Rule Indus.*, 7 F.3d 986, 995 (11th Cir. 1993) ("The reasonable interchangeability of use or the cross-elasticity of demand between a product and its substitutes constitutes the outer boundaries of a product market for antitrust purposes."); *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008) ("An antitrust complaint … survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. And since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial."). The Department of Justice has, moreover, recently embraced an important element of Palmyra's market definition: its limitation to services provided to commercially insured patients. *See* Oct. 18, 2010 Complaint, *United States v. Blue Cross Blue Shield of Mich.*, ¶¶ 19-24 (copy attached as Exh. **7**).

E. **Palmyra's Section 2 Claims Meet *Twombly's* Plausibility Standard.**

To plausibly state a claim for monopolization, Palmyra must allege Phoebe Putney's monopoly power in a relevant market, and its acquisition and maintenance of that monopoly power through anticompetitive means. *See Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1293-94 (11th Cir. 2004); *Microsoft*, 253 F.3d at 50. To state an attempt to monopolize claim, Palmyra must allege facts showing anticompetitive conduct, a specific intent to monopolize, and a dangerous likelihood of monopolization. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

The Court should deny Phoebe Putney's motion first because all of the arguments offered against the Section 2 claims could have been, but were not, raised in Phoebe Putney's initial motion. Second, the Court should deny the motion because, as derivative of Palmyra's Section 1

13

claim, the Section 2 claims are plausible for the reasons outlined earlier.[7] Third, and as described in detail below, Palmyra has alleged facts that render its Section 2 claims plausible.

### 1. *Twombly* Does Not Require Palmyra to Allege Phoebe Putney's Precise Share of Each Alleged Market.

Phoebe Putney argues that Palmyra's Section 2 claims are implausible because Palmyra alleges only Phoebe Putney's overall 70% market share, instead of its precise market share for each *separate* tied product market. Defs.' Supp. Br. at 15. Tellingly, Phoebe Putney cites no authority requiring allegations of precise market share at the pleading stage, before discovery.

Instead, Palmyra must allege that Phoebe Putney either has, or threatens to obtain, monopoly power in the tied product markets. *See supra* at 13. Market share is just one factor this Court may consider in determining whether Phoebe Putney possesses monopoly power or threatens a dangerous likelihood of achieving it; others include the market shares of competitors, the strength and capacity of competitors, the potential for entry, and the historic intensity of competition in the market. *U.S. Anchor Mfg.*, 7 F.3d at 994 (citing *Int'l Tel. & Tel. Corp.*, 104 F.T.C. 208, 412 (1984)). Moreover, because Palmyra's allegations of the relevant product market survive a motion to dismiss as long as they are not facially unsustainable, the same is true of allegations about Phoebe Putney's share of the alleged markets. *See Newcal*, 513 F.3d at 1044-45 (reversing dismissal of Section 1 and Section 2 claims, and holding that neither the relevant market nor market power must be pled with specificity).

The absence of specific market-share data at the pleading stage thus does not make Palmyra's claims implausible if, as alleged: (1) Phoebe Putney dominates or threatens to dominate the markets for the tied products through coercive contracts with insurers, (2) Phoebe

---

[7] Phoebe Putney also argues for the third time against a claim that Palmyra has not alleged: that Phoebe Putney cannot be liable for monopolizing the *tying* product markets. Defs.' Supp. Br. at 15. Palmyra alleges monopolization and attempted monopolization of the *tied* products. Compl. ¶¶ 83, 91.

Putney has a market share of approximately 70% for all acute care services, and (3) Palmyra is the only practical alternative source of those tied products within the geographic market. Compl. ¶¶ 6, 51, 53. Were plaintiffs required to plead specific market shares of the kind that Phoebe Putney suggests, many plaintiffs could avoid dismissal only by first obtaining information from defendants, and then hiring economists to analyze the defendants' own data. *Twombly* suggests no such impractical requirement because a "short and plain statement of the claim showing that the pleader is entitled to relief" continues to suffice. Fed. R. Civ. P. 8(a)(2). At most, Phoebe Putney's insistence on more specific market-share data raises a factual issue to be addressed after discovery, at summary judgment. *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 1:09-md-2089-TCB, 2010 WL 3290433, *9 (N.D. Ga. Aug. 2, 2010) (denying motion to dismiss Section 1 claim and holding that "[t]he standard to overcome a motion for summary judgment is considerably more rigorous than the standard applicable to a motion to dismiss") (attached as Exh. 8). Palmyra's Complaint more than satisfies Rule 8, and the Court should reject Phoebe Putney's arguments to the contrary.

    **2.    Palmyra's Claims Do Not Require Allegations of Foreclosure from a Market Palmyra Has Not Alleged Is Relevant.**

Phoebe Putney further argues that Palmyra's Section 2 claims fail because Palmyra does not allege facts showing that Phoebe Putney's exclusive contracts with insurers have unreasonably restrained competition by foreclosing Palmyra from the market for managed care contracts in general. Defs.' Supp. Br. at 16. Palmyra, however, has not alleged that Phoebe Putney's exclusive agreements have foreclosed it from some market for managed care contracts. Palmyra has alleged that Phoebe Putney's exclusive contracts have foreclosed it from competing in various markets for the tied products. Compl. ¶¶ 84-88, 91-95. For the fourth time, Phoebe Putney urges the Court to dismiss claims that Palmyra has not alleged.

**F. Palmyra Adequately Pleads Tortious Interference and a Violation of the Georgia Constitution, and Its Claims Are Not Barred by the Statutes of Limitations.**

Phoebe Putney again challenges the plausibility of the "first element" of Palmyra's claim for tortious interference by contending ─ exactly as it did in its original brief ─ that Palmyra can only establish wrongful conduct by proving "that [Phoebe Putney] acted improperly through actions that involve predatory tactics," and therefore Palmyra has not adequately alleged "coercion or any improper conduct." *Compare* Defs.' Supp. Br. at 17 *with* Defs.' 2008 Br. at 16-17. Phoebe Putney's overly narrow definition of "wrongful conduct" contradicts Georgia law.

Georgia law recognizes that conduct taken "with malice with the intent to injure" is sufficient wrongful conduct to plead a claim of tortious interference. *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, No. 09-cv-2575, 2010 WL 2302184, *8-9 (N.D. Ga. June 7, 2010) (attached as Exh. 9).[8] Malice includes "any unauthorized interference, or any interference without legal justification or excuse." *Id*. As discussed above, Palmyra has alleged precisely the kind of conduct on Phoebe Putney's part that more than satisfies this pleading standard. Compl. ¶¶ 58-60, 62. Further, because as Phoebe Putney claims, Palmyra's "state law claims are derivative of the antitrust claims," Palmyra's state law claims survive dismissal. *See* Defs.' Supp. Br. at 18.

Because Phoebe Putney simply repeats its arguments against Palmyra's claim under the Georgia Constitution and under the federal and state statutes of limitations, and no new authority known to Palmyra addresses those issues, Palmyra refers the Court to the authority previously cited. *See* Plf.'s 2008 Br. at 18-21, 25-26.

---

[8] Palmyra has previously cited other authorities explaining that Palmyra has alleged a plausible tortious-interference claim. Plf.'s 2008 Br. at 24-25 (citing *Sommers Co. v. Moore*, 275 Ga. App. 604, 606 (2005)).

## IV. CONCLUSION

Palmyra's Complaint sets out plausible and compelling claims not subject to dismissal. The Court should deny Phoebe Putney's motion to dismiss. Should the Court decide to grant any part of Phoebe Putney's motion, however, Palmyra requests that the Court grant it leave to amend its Complaint.

Dated this 1st day of December, 2010.

Respectfully submitted,

*/s/ William H. Hedrick*
William H. Hedrick
Georgia Bar No. 343250
127 North Westover Boulevard
Albany, Georgia 31707
(229) 883-7463
(229) 434-1581 (fax)

*/s/ Christine A. Hopkinson*
W. Ray Persons
Georgia Bar No. 573525
M. Russell Wofford, Jr.
Georgia Bar No. 773002
Christine A. Hopkinson
Georgia Bar No. 142106
KING & SPALDING, LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309
(404) 572-4600
(404) 572-5100 (fax)
email of filer: chopkinson@kslaw.com

*Attorneys for Palmyra Park Hospital, Inc., d/b/a Palmyra Medical Center*

**OF COUNSEL:**

Jeffrey S. Spigel
KING & SPALDING, LLP
1700 Pennsylvania Ave. NW, Suite 200
Washington, D.C. 20006-2706
(202) 737-0500
(202) 626-3737 (fax)

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2010, I filed the foregoing **PALMYRA MEDICAL CENTER'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PHOEBE PUTNEY'S MOTION TO DISMISS,** with exhibits and an Index of Exhibits, using the CM/ECF system, which will automatically send electronic notice of such filing to the following counsel of record:

| | |
|---|---|
| Karin A. Middleton<br>BAUDINO LAW GROUP, PLC<br>2547 LaFayette Plaza Drive, Suite E<br>Albany, Georgia 31707<br>middleton@baudino.com | Edgar Baughn Wilkin, Jr.<br>PERRY & WALTERS, L.L.P.<br>P.O. Box 71209 / 212 N. Westover Boulevard<br>Albany, Georgia 31708-1209<br>ewilkin@perrywalters.com |
| Denise Cleveland-Leggett<br>Amy McCollough<br>BAUDINO LAW GROUP, PLC<br>1201 Peachtree Street, NE, Ste. 2020<br>Atlanta, Georgia 30361<br>leggett@baudino.com<br>mccullough@baudino.com | James Sulentic<br>John Passarelli<br>KUTAK ROCK LLP<br>1650 Farnam Street<br>Omaha, Nebraska 68102<br>james.sulentic@kutakrock.com<br>john.passarelli@kutakrock.com |
| David J. Darrell<br>Ralph Walker<br>Jan D. Gibson<br>BAUDINO LAW GROUP, PLC<br>2600 Grand Avenue, Suite 300<br>Des Moines, Iowa 50312<br>darrell@baudino.com<br>walker@baudino.com<br>gibson@baudino.com | *Attorneys for the Hospital Authority of Albany/Dougherty County* |
| *Attorneys for Phoebe Putney Memorial Hospital, Inc. and Phoebe Putney Hospital System, Inc.* | |

                                                 */s/ Christine A. Hopkinson*
                                                 Christine A. Hopkinson
                                                 Georgia Bar No. 142106